UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMILIO GARCIA,

      *Plaintiff*,

     v.

ROC NATION LLC; HOT GIRL TOURING, LLC; MEGAN THEE STALLION ENTERTAINMENT, INC.; MEGAN THEE STALLION; and DOES 1 THROUGH 10, inclusive,

      *Defendants*.

Civil Action No.  1:24-cv-07587-GHW

**(ORAL ARGUMENT REQUESTED)**

**DEFENDANTS MEGAN THEE STALLION, HOT GIRL TOURING, LLC, AND
MEGAN THEE STALLION ENTERTAINMENT, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.......................................................................................3

LEGAL STANDARD ..................................................................................................5

ARGUMENT ...............................................................................................................6

I.    THE FAC IMPERMISSIBLY RELIES ON GROUP PLEADING...................................6

II.   THE CALIFORNIA CLAIMS (COUNTS XI - XVIII) SHOULD BE DISMISSED AND THE NEW YORK CLAIMS (COUNTS I-X) LIMITED, BECAUSE THEY DO NOT APPLY EXTRATERRITORIALLY......................................................................7

    A.    The California Claims Should Be Dismissed.........................................................7

    B.    The New York Claims Should Be Limited .........................................................10

III.  THE FAC'S CALIFORNIA AND NEW YORK LABOR LAW CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT AN EMPLOYEE...........................11

IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION ........................14

V.    PLAINTIFF'S RETALIATION CLAIMS (COUNTS II, V, VII & VIII) SHOULD BE DISMISSED...............................................................................................18

    A.    Plaintiff Fails To Allege Any Protected Activity ...............................................18

    B.    Plaintiff Fails to Allege the Requisite Causal Connection..................................22

CONCLUSION..........................................................................................................26

## TABLE OF AUTHORITIES

**Page**

### Cases

*Acala v. Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*,
222 A.D.3d 706 (2d Dep't 2023) ...................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................5

*Bacchus v. N.Y.C. Dep't of Educ.*,
137 F. Supp. 3d 214 (E.D.N.Y. 2015) ..........................................................21

*Barker v. McFerran*,
2024 WL 2031640 (N.D. Cal. May 6, 2024) .................................................24

*Bautista v. PR Gramercy Square Condo.*,
642 F. Supp. 3d 411 (S.D.N.Y. 2022) ..........................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................5, 6

*Belton v. Borg & Ide Imaging, P.C.*,
512 F. Supp. 3d 433 (W.D.N.Y. 2021).........................................................16

*Bivens v. Inst. for Cmty. Living*,
2016 WL 11701799 (S.D.N.Y. Feb. 3, 2016) ...............................................14

*Bledsoe v. Delta Air Lines, Inc.*,
2024 WL 1142321 (E.D.N.Y. Mar. 15, 2024) ..........................................16, 17

*Bliss v. MXK Rest. Corp.*,
220 F. Supp. 3d 419 (S.D.N.Y. 2016) .......................................................15, 16

*Boparai v. Shinseki*,
2012 WL 2994078 (E.D. Cal. July 20, 2012) ................................................17

*Borawski v. Abulafia*,
140 A.D.3d 817 (2d Dep't 2016) .................................................................21

*Buchanan v. N.Y.C.*,
556 F. Supp. 3d 346 (S.D.N.Y. 2021) ..........................................................18

*Campagna v. Language Line Servs., Inc.*,
2012 WL 1565229 (N.D. Cal. May 2, 2012) ..................................................7

*Campbell v. Arco Marine, Inc.*,
    42 Cal. App. 4th 1850 (1996) ..........................................................................7

*Capak v. St. Execs Mgmt.*,
    2021 WL 2666007 (S.D.N.Y. June 29, 2021) ...................................................6

*Casalino v. N.Y.S. Catholic Health Plan, Inc.*,
    2012 WL 1079943 (S.D.N.Y. Mar. 30, 2012) ................................................15

*Clarson v. City of Long Beach*,
    132 A.D.3d 799 (2d Dep't 2015) ...................................................................21

*Collison v. WANDRD, LLC*,
    737 F. Supp. 3d 231 (S.D.N.Y. 2024)............................................................13

*Cox v. German Kitchen Ctr. LLC*,
    2023 WL 8648839 (S.D.N.Y. Dec. 14, 2023) ................................................11

*Dejesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013) ............................................................................13

*Dynamex Opers. West, Inc. v. Superior Court*,
    4 Cal. 5th 903 (2018).....................................................................................11

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008) ...........................................................11

*Edwards v. Costco Wholesale Corp.*,
    2021 WL 3130043 (C.D. Cal. July 23, 2021)............................................10, 13

*Emamian v. Rockefeller Univ.*,
    971 F.3d 380 (2d Cir. 2020) ..........................................................................14

*Flaherty v. Dixon*,
    2023 WL 2051861 (S.D.N.Y. Feb. 16, 2023)................................................14

*Forrest v. Jewish Guild for the Blind*,
    3 N.Y.3d 295 (2004)......................................................................................16

*Franco v. Am. Airlines, Inc.*,
    2024 WL 1054865 (S.D.N.Y. Feb. 16, 2024)................................................20

*Frost v. Lentex Co., LLC*,
    2022 WL 17968058 (S.D.N.Y. Dec. 27, 2022) .............................................11

*Fruchtman v. N.Y.C.*,
    129 A.D.3d 500 (1st Dep't 2015)..................................................................20

*Glob. Network Commc'ns, Inc. v. N.Y.C.*,
  458 F.3d 150 (2d Cir. 2006) .......................................................................................11

*Gonsalves v. Infosys Techs., LTD.*,
  2010 WL 1854146 (N.D. Cal. May 6, 2010) ...........................................................7, 9

*Gonzalez v. EVG, Inc.*,
  13 A.D.3d 486 (1st Dep't 2014) ................................................................................20

*Gorman v. Covidien, LLC*,
  146 F. Supp. 3d 509 (S.D.N.Y. 2015) .......................................................................22

*Greathouse v. JHC Sec. Inc.*,
  784 F.3d 105 (2d Cir. 2015) ...............................................................................18, 19

*Hardwick v. Auriemma*,
  116 A.D.3d 465 (1st Dep't 2014) ..............................................................................10

*Herrington v. Metro-North Commuter R. Co.*,
  118 A.D.3d 544 (1st Dep't 2014) ........................................................................19, 21

*Herskowitz v. State*,
  222 A.D.3d 587 (1st Dep't 2023) ........................................................................19, 22

*Hoffman v. Parade Pubs.*,
  15 N.Y.3d 285 (2010) ................................................................................................10

*Hollington v. CDM Fed. Programs Corp.*,
  2023 WL 2457057 (S.D.N.Y. Mar. 10, 2023) ......................................................23, 25

*Ingrassia v. Health & Hosp. Corp.*,
  130 F. Supp. 3d 709 (E.D.N.Y. 2015) .......................................................................11

*King v. Aramark Servs. Inc.*,
  96 F.4th 546 (2d Cir. 2024) .......................................................................................10

*Lambert v. Trump Int'l Hotel & Tower*,
  304 F. Supp. 3d 405 (S.D.N.Y. 2018) .......................................................................23

*Li v. SMJ Constr. Inc.*,
  2022 WL 4463225 (S.D.N.Y. Sept. 26, 2022) ...........................................................13

*Loza v. Intel Ams., Inc.*,
  2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) .............................................................8

*Luo v. AIK Renovation Inc.*,
  2023 WL 8113437 (S.D.N.Y. Nov. 22, 2023) ............................................................18

*MacSweeney v. ING Life Ins. & Annuity Co.*,
    2011 WL 4839086 (S.D.N.Y. Oct. 12, 2011) ....................................................................11

*Maldonado Juarez v. Butterfield Catering Inc.*,
    2020 WL 6945944 (S.D.N.Y. Nov. 25, 2020) ..................................................................13

*Medina v. Ricardos Mechanical, Inc.*,
    2018 WL 3973007 (E.D.N.Y. Aug. 20, 2018) ............................................................ 19, 21

*Melman v. Montefiore Med. Ctr.*,
    946 N.Y.S.2d 27 (1st Dep't 2012) ..................................................................................14

*Mendoza v. Cornell Univ.*,
    215 A.D.3d 590 (1st Dept. 2023) ....................................................................................13

*Mestizo v. H2 Candy & Nuts, Inc.*,
    2019 WL 2212153 (S.D.N.Y. April 8, 2019) ......................................................... 19, 20, 21

*Monachino v. Bair*,
    769 F. Supp. 2d 431 (S.D.N.Y. 2011) ............................................................................15

*Morrelli v. Corizon Health, Inc.*,
    2018 WL 6201950 (E.D. Cal. Nov. 28, 2018) ...............................................................9, 13

*Nesbeth v. N.Y.C. Mgmt. LLC*,
    2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ........................................................................6

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*,
    2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ....................................................................9

*Oman v. Delta Air Lines, Inc.*,
    9 Cal. 5th 762 (2020) ........................................................................................................7

*Paparella v. Plume Design, Inc.*,
    2022 WL 2915706 (N.D. Cal. July 25, 2022) ...................................................................8

*Pinero v. Long Is. State Veterans Home*,
    375 F. Supp. 2d 162 (E.D.N.Y. 2005) ............................................................................22

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir. 2007) ..............................................................................................5

*Priyanto v. M/S Amsterdam*,
    2009 WL 175739 (C.D. Cal. Jan. 23, 2009) .....................................................................7

*Reed v. Paramo*,
    2019 WL 5191695 (S.D. Cal. Oct. 15, 2019) ...................................................................9

*Reno v. Baird*,
   18 Cal. 4th 640 (1998).............................................................................................8

*Rivera v. PLS Check Cashers of New York, Inc.*,
   2024 WL 263218 (S.D.N.Y. Jan. 24, 2024) .......................................................17

*Robertson v. Cnty. of Alameda*,
   2016 WL 3194333 (N.D. Cal. June 9, 2016) ......................................................17

*Romano v. A360 Media, LLC*,
   2023 WL 348459 (S.D.N.Y. Jan. 20, 2023) ................................................. 17, 18

*Ruixuan Cui v. E. Palace One, Inc.*,
   2019 WL 4573226 (S.D.N.Y. Sept. 20, 2019) ............................................. 11, 12

*Saleem v. Corp. Transp. Grp., Ltd.*,
   854 F.3d 131 (2d Cir. 2017) ....................................................................... 11, 12

*Samuels v. Urb. Assembly Charter Sch. for Computer Sci.*,
   2024 WL 4008165 (S.D.N.Y. Aug. 30, 2024) ....................................................18

*Shapiro v. State*,
   217 A.D.3d 700 (2d Dep't 2023) ........................................................................14

*Shepherd v. BCBG Max Azria Grp., Inc.*,
   2012 WL 4832883 (S.D.N.Y. Oct. 11, 2012) .....................................................21

*Smith v. Vera Inst. of Just., Inc.*,
   2023 WL 11879682 (E.D.N.Y. Aug. 11, 2023).....................................................10

*Soloviev v. Goldstein*,
   104 F. Supp. 3d 232 (E.D.N.Y. 2015) ...............................................................17

*Starr v. Sony BMG Music Ent.*,
   592 F.3d 314 (2d Cir. 2010) ...............................................................................6

*Stickler v. IBM, Inc.*
   2024 WL 3952639 (S.D.N.Y. Aug. 26, 2024) ....................................................24

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) .......................................................................................7

*Tharpe v. Diablo Valley Coll. (Contra Costa)*,
   2012 WL 629138 (N.D. Cal. Feb. 27, 2012) ......................................................24

*Tierney v. Capricorn Invs., L.P.*,
   189 A.D.2d 629 (1st Dep't 1993)........................................................................11

*Uttarwar v. Lazard Asset Mgmt. LLC*,
    2024 WL 1251177 (S.D.N.Y. Mar. 22, 2024) .................................................................. 14

*Voris v. Lampert*,
    7 Cal. 5th 1141 (2019) ....................................................................................................... 11

*Ward v. Cohen Media Publications LLC*,
    2023 WL 5353342 (S.D.N.Y. Aug. 21, 2023) ............................................................. 18, 24

*Waters v. Jacobsen*,
    2020 WL 1527054 (N.D.N.Y. Mar. 31, 2020) ............................................................. 23, 25

*Watkins v. First Student, Inc.*,
    2018 WL 1135480 (S.D.N.Y. Feb. 28, 2018) ...................................................................20

*Whitlach v. Premier Valley, Inc.*,
    86 Cal. App. 5th 673 (2022) ..............................................................................................11

*Yost v. Everyrealm, Inc.*,
    657 F. Supp. 3d 563 (S.D.N.Y. 2023) ................................................................ 14, 15, 17

*Zhang v. Centene Mgmt. Co., LLC*,
    2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023) .............................................................. 18, 21

*Zheng-Smith v. Nassau Health Care Corp.*,
    486 F. Supp. 3d 611 (E.D.N.Y. 2020) ...............................................................................15

## **Rules / Statutes**

Cal. Gov't Code § 12940(j)(1) ...............................................................................................17

California Business & Professions Code § 17200, *et seq.* ........................................................8

California's Fair Employment and Housing Act ("FEHA") ...................................... 5, 7, 8, 9, 17

N.Y. Exec. Law § 296(1)(a) ...................................................................................................14

N.Y. Exec. Law § 296(7) ........................................................................................................20

N.Y. Lab. Law § 651 ..............................................................................................................11

N.Y. Lab. Law § 215 ..............................................................................................................18

N.Y. Lab. Law § 740 ..............................................................................................................18

Federal Rule of Civil Procedure 8(a) .......................................................................................6

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1, 5, 11

N.Y.C. Admin. Code §§ 8-107 *et seq.*......................................5, 10, 13, 14, 15, 16, 17, 18, 19, 20

Defendants Megan Thee Stallion (Megan Pete), Hot Girl Touring, LLC ("HGT"), and Megan Thee Stallion Entertainment, Inc. (collectively, the "Pete Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss the amended complaint (Dkt. No. 88, the "FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Emilio Garcia's ("Plaintiff") FAC, which asserts **nineteen** causes of action under two States' laws against four defendants, fails to adequately state any claim for relief under the myriad California and New York statutes it seeks to invoke. Instead, Plaintiff impermissibly relies on a kitchen-sink group-pleading approach, making either conclusory allegations or failing to make any allegations against specific Defendants. When stripped down to its well-pled facts, the FAC alleges episodic instances of purportedly harassing conduct unmoored to any alleged protected characteristic and a complaint that Plaintiff should have been paid more. But the scandalous tale of harassment that Plaintiff spins fails to distract from his claims' lack of merit— Plaintiff's services were not terminated because of any retaliation or discrimination, but because he repeatedly misrepresented the work he performed, the time he spent on it, and the expenses he incurred. His attempt to rewrite history with this complaint should be dismissed.

*First*, the FAC is replete with impermissible group pleading. Rather than specifying what each Defendant has done to warrant its inclusion in this lawsuit, Plaintiff makes undifferentiated allegations that all four Defendants engaged in various unlawful conduct. This is improper.

*Second*, Plaintiff's California claims (Counts XI-XIX) should be dismissed and his New York claims (Counts I-X) limited, because none of the statutes he relies on applies extraterritorially. To avail himself of either state's laws, Plaintiff—a Texas resident—must allege unlawful conduct within the state's territorial boundaries. But the FAC does not allege that Plaintiff suffered any harassment in California, that any alleged wage violations occurred there,

1

that he was terminated there, or even that he suffered harm there. His California-based claims should be dismissed. Similarly, the FAC alleges only one incident of purported harassment that occurred in February 2022 in New York City. Should the Court determine that his New York claims are properly pled—they are not—they should be limited to this incident only.

*Third*, Plaintiff cannot seek relief under New York's Labor Law (Counts XVII-X) or California's Labor Code (XIII-XVIII) because relief is only available to employees. Plaintiff's conclusory allegations fail to adequately allege employee status and are belied by his well-pled facts raising an inference that he was an independent contractor, consistent with his classification as such under the agreement he executed with HGT (the "Agreement" or "Agmt.").

*Fourth*, regardless of extraterritoriality, Plaintiff's New York and California claims for discrimination (Counts I, III-IV, VI) and harassment (Counts XI-XII) must allege discriminatory animus. They do not. Indeed, Plaintiff does not claim that any purported acts of harassment or discrimination (i.e., that he was yelled at, given "dirty looks," or put in uncomfortable situations), or the changes to his pay structure, decrease in bookings, or termination of his services were done *because of* his protected characteristic.

*Finally*, Plaintiff's retaliation claims, to the extent he can avail himself of the statutes asserted, are ripe for dismissal. All of the instances in which Plaintiff purportedly "opposed" any unlawful conduct are too vague and nonspecific to legally constitute protected activities. And he fails to adequately assert a causal connection or retaliatory motive—i.e., that the adverse outcome resulted *from* those complaints.

## FACTUAL BACKGROUND[1]

Plaintiff, a Texas resident, alleges he worked as Ms. Pete's "personal" cameraman from 2019 through 2023 when his services were terminated.  (FAC ¶¶ 5, 22.)  During this engagement, Plaintiff alleges that he accompanied Ms. Pete to various locations, including foreign countries and strip clubs across the United States.  (*Id.* ¶¶ 23, 30, 32-93.)

During this approximately four year period, Plaintiff claims he was subjected to discrimination, harassment, and retaliation by Ms. Pete and the Pete Defendants because of his sex, weight, and disability.  In support, Plaintiff alleges three instances of purported harassment. (*Id.* ¶¶ 32-93.)

First, he asserts that on February 15, 2022, Ms. Pete purportedly "required" him to attend a New York City strip club to celebrate her birthday (the "New York Incident").  (*Id.* ¶¶ 32-46.)[2] There, after Plaintiff made an "innocuous comment," Ms. Pete allegedly "shot Plaintiff a sinister look … so malignant that he had never seen [her] express before," and refrained from engaging with Plaintiff thereafter.  (*Id.* ¶¶ 41-43.)  Plaintiff contends that he "opposed" this behavior by returning to the SUVs parked outside for the remainder of the night.  (*Id.* ¶ 45.)  Second, in June 2022 in Ibiza, Spain (the "Ibiza Incident"), Plaintiff alleges that he witnessed Ms. Pete and others engage in "group sex" in a car, and in a purported effort to "oppose" this conduct, he "continued to play music on his phone" and "looked out the window."  (*Id.* ¶¶ 47-81.)  Later that evening, during dinner, Plaintiff asserts that Ms. Pete verbally criticized him for eating.  (*Id.* ¶¶ 67-78.)[3]

---

[1]   The Pete Defendants accept the allegations in the FAC as true solely for purposes of this Motion and reserve their rights to contest them in the future, and indeed deny them in their entirety.

[2]   Plaintiff vaguely contends that he attended "dozens of trips" to strip clubs with Ms. Pete in New York, California, Georgia, and abroad.  (FAC ¶ 35.)

[3]   The FAC also broadly alleges that at unspecified times and in unspecified locations, Ms. Pete purportedly "forbid anyone from eating around her" and that individuals in her "entourage" were required to "eat in secret."  (FAC ¶¶ 23-27.)

The next morning, Plaintiff claims that Ms. Pete asked if he was in the car the prior evening, he confirmed he was, and allegedly told her "he did not appreciate" and "opposed such unlawful conduct." (*Id.* ¶ 80.) Finally, in August 2022 in Portugal (the "Portugal Incident"), Plaintiff claims Ms. Pete forbade him from leaving a hotel room and allegedly threw a remote control at him. (*Id.* ¶¶ 89-90.) Plaintiff asserts that Ms. Pete denied throwing the remote, but challenged him to confront her. (*Id.* ¶ 93.)

After the Ibiza Incident, Plaintiff was allegedly booked less frequently. (*Id.* ¶¶ 82-85, 95.) And in August 2022, he claims Defendants altered his compensation structure from a monthly rate to a pay-per-task system. (*Id.* ¶ 94.) At an unspecified time in 2023, Plaintiff purportedly confided in "Alex"—an alleged employee of Ms. Pete's—about supposed "unlawful pay practices," and unidentified acts of retaliation. (*Id.* ¶¶ 69, 97.) Thereafter in June 2023, while Plaintiff was at his home in Texas, he allegedly received a FaceTime call during which Ms. Pete confronted him about his desire to quit, told him not to confide in "Alex," and allegedly called him a "lazy bitch." (*Id.* ¶¶ 101-07.) Plaintiff contends that he "engage[d] in protected activity" on this call by "opposing" "unlawful wage practices," "reducing his hours," and "ongoing harassment," including "being labeled a 'bitch' as a gay man." (*Id.* ¶¶ 102-04.) "Shortly after" that call—though Plaintiff does not specify when—Defendants informed him that his services were no longer needed due to a "change in creative direction." (*Id.* ¶ 109.)

In August 2023, after his termination, Plaintiff claims he was engaged to perform photography services in California by an unidentified production company for a music video, but was cut the day before. (*Id.* ¶¶ 112-14.) Plaintiff blames Ms. Pete for this lost opportunity, claiming she was in the music video and purportedly "blackballed" him from the entertainment industry. (*Id.* ¶ 116.)

On January 14, 2025, Plaintiff filed his FAC, reasserting nine California-based claims (Counts XI–XIX) from his original complaint filed on April 23, 2024 (Dkt. No. 1-1), adding ten new causes of action under New York law—bringing the grand total of his claims to ***19 causes of action***—and alleging two entirely new incidents of purported harassment. (*Id.* ¶¶ 32-46, 88-93.) Plaintiff asserts the following New York causes of action: discrimination, retaliation, and aiding and abetting discrimination under New York State's Human Rights Law, N.Y. EXEC. LAW §§ 296 *et seq.* ("NYSHRL") (Counts I-III) and New York City's Human Rights Law, N.Y.C. ADMIN. CODE §§ 8-107 *et seq.* ("NYCHRL") (Counts IV-VI), and under New York State's Labor Law ("NYLL"), whistleblower retaliation, *id.* § 740 (Count VII), retaliation, *id.* § 215 (Count VIII), failure to pay proper wages and overtime, *id.* §§ 663 & 198 (Count IX), and failure to provide wage notice and pay statements, *id.* §§ 194 & 195 (Count X). Plaintiff's California claims assert harassment and failure to protect and remedy harassment under California's Fair Employment and Housing Act ("FEHA") (Counts XI-XII), misclassification, failure to provide meal and rest periods, failure to pay overtime, inaccurate wage statements, waiting time penalties, and retaliation in violation of California's Labor Code (Counts XIII-XVIII), and unlawful and unfair activities in violation of California's Business and Professional Code (Count XIX).

## LEGAL STANDARD

Rule 12(b)(6) dismissal is proper if the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Facial plausibility" requires well-pled facts that together "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing a claim's plausibility, a Court need not credit "mere conclusory statements," "[t]hreadbare recitals of the elements of a cause of action," or give "effect to legal conclusions couched as factual allegations." *Id.*; *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,

507 F.3d 117, 121 (2d Cir. 2007).  Similarly, "a formulaic recitation of the elements of a cause of action will not do."  *Capak v. St. Execs Mgmt.*, 2021 WL 2666007, *2 (S.D.N.Y. June 29, 2021). If the allegations have not "nudged [plaintiff's] claims across the line from conceivable to plausible," then the pleading is deficient.  *Twombly*, 550 U.S. at 570; *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010).

## ARGUMENT

## I.      THE FAC IMPERMISSIBLY RELIES ON GROUP PLEADING

Rather than specify which Defendants engaged in what conduct to warrant their inclusion in this lawsuit, Plaintiff makes undifferentiated allegations about all four Defendants engaging in purported unlawful acts.  But "it is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes, … [as it] fails to give each defendant fair notice of the claims against it."  *Nesbeth v. N.Y.C. Mgmt. LLC*, 2019 WL 110953, *3 (S.D.N.Y. Jan. 4, 2019).  Plaintiff does just that.  He fails to identify which of the Pete Defendants hired him (FAC ¶ 22) or terminated him (*id.* ¶ 109), and vaguely refers to "Defendants'" practices without specifying which of them did what.  (*Id.* ¶¶ 48, 152-54, 157-58.)  And the *only* allegation that identifies HGT by name is in the parties section, even though HGT is the party with whom he entered into the Agreement to provide services as an independent contractor.  (*Id.* ¶ 7.)  Tellingly, some of the FAC's allegations reference individuals who are not even parties to this action.  (*Id.* ¶ 13 ("[T]he Defendant entities were and now are related to … and/or alter egos of each other and *Weiner* … [and] all of the Defendant entities are mere shell and sham entities … used by *Weiner*")[4]

---

[4]      Plaintiff's miscue underscores the FAC's copy-and-paste nature and further detracts from any plausible inference that he was an employee, as it does not reflect facts concerning Plaintiff's relationship with Defendants or their relationship to one another.  *See, supra*, III.

(emphasis added).)  This pleading approach fails to give Defendants requisite notice and violates Rule 8(a).

## II.    THE CALIFORNIA CLAIMS (COUNTS XI - XVIII) SHOULD BE DISMISSED AND THE NEW YORK CLAIMS (COUNTS I-X) LIMITED, BECAUSE THEY DO NOT APPLY EXTRATERRITORIALLY

Plaintiff's nine California-based claims (Counts XI-XVIII) are subject to dismissal because they do not apply extraterritorially.  Plaintiff is a Texas citizen but fails to plead a single fact alleging that any of the purported unlawful conduct occurred *in California*.  He cannot avail himself of its law's protections.  And as New York law likewise does not apply extraterritorially, Plaintiff's remaining ten causes of action (Counts I-X) should be limited to conduct he alleges occurred in New York.

### A.    The California Claims Should Be Dismissed

California's FEHA, Labor Code, and Business and Professions Code do not apply extraterritorially to non-California citizens for conduct occurring *outside* the boundaries of the State.  *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852 (1996) (FEHA "not intended to apply to non-residents where … tortious conduct took place out of this state's territorial boundaries"); *Gonsalves v. Infosys Techs., LTD.*, 2010 WL 1854146, *5-7 (N.D. Cal. May 6, 2010) (dismissing with prejudice because FEHA not interpreted "as covering all employees who perform some job duties or manage some clients in California, [where] no connection exists between" California activities and discrimination); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1197 (2011) (same for California overtime laws); *Priyanto v. M/S Amsterdam*, 2009 WL 175739, *7 (C.D. Cal. Jan. 23, 2009) ("California has little or no interest in applying its wage laws to nonresidents who perform work outside of California."); *see Campagna v. Language Line Servs., Inc.*, 2012 WL 1565229, *3 (N.D. Cal. May 2, 2012) (similar); *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 774 (2020) (dismissing wage claim as statute "contains no indication that the employer of an out-of-

state worker must report fractions of wages earned during brief trips to the state, [and] attempt to calculate the fraction of wage deductions attributable to these sojourns").[5]

As a Texas citizen, (FAC ¶ 5) Plaintiff can only avail himself of California law if he alleges "that he was either employed in California or that the discriminatory conduct occurred in California." *Paparella v. Plume Design, Inc.*, 2022 WL 2915706, *3 (N.D. Cal. July 25, 2022). The FAC does neither.

The FAC is devoid of any nexus to California that would entitle Plaintiff to relief.[6] For example, his FEHA claim purports to arise from the Ibiza Incident—but that is well beyond California's border. (FAC ¶¶ 206-08.) Likewise, he cannot recover for the New York and Portugal Incidents. (*See id.* ¶¶ 33-46, 82-93, 202.) Similarly, the FaceTime call he had with Ms. Pete wherein she allegedly "labeled [Plaintiff] a 'bitch' as a gay man" (*id.* ¶ 104), does not support a FEHA claim: Plaintiff answered the call in Texas and does not allege where Ms. Pete placed it. (*Id.* ¶ 99.)[7] Taken together, Plaintiff fails to allege any conduct in California that gives rise to FEHA's protections. *Loza v. Intel Ams., Inc.*, 2020 WL 7625480, *4 (N.D. Cal. Dec. 22, 2020) ("absen[t] any allegation showing a nexus between California and plaintiff's termination, plaintiff—a resident of Texas—cannot invoke the protection of FEHA").

Plaintiff otherwise fails to assert *factual* allegations demonstrating that he was employed in California or performed work there sufficient to state a claim under its Labor Code or FEHA.

---

[5] The California Business & Professions Code § 17200, *et seq.*, claim is predicated on violations of the FEHA and Labor Code, and thus fails for the same reasons.

[6] Plaintiff's allegations (FAC ¶¶ 22-31) that at unspecified times and in unspecified locations, Ms. Pete purportedly forbid him and others from eating in front of her are insufficient, as they are not tethered to any location, let alone California.

[7] The alleged August 22 pay structure alteration (FAC ¶¶ 94, 208), is not harassment under California law. *Reno v. Baird*, 18 Cal. 4th 640, 646–47 (1998) (personnel-related decisions like compensation or job assignments "do not come within the meaning of harassment").

The FAC contains *three* California-based allegations:  (1) at unspecified times he accompanied Ms. Pete to "strip clubs … in California" among other locations like New York and Atlanta (FAC ¶ 35); (2) that he "spent a substantial amount of time working in both California" and New York and "most of his working time" in New York, except when he was in California, and suffered harm in both locations (*id.* ¶ 32); and (3) following his termination, he lost a gig with an unnamed production company in Los Angeles, claiming Ms. Pete interfered with that opportunity, (*id.* ¶ 112-16.)[8]  But the allegations that pre-date his termination are too conclusory to support his claims because he does not assert how frequently or when he worked in California or attended strip clubs there, whether he was subject to harassment there, and if so what the specific conduct was, or what harm he suffered.  And standing alone, the single incident of a lost job opportunity post-termination is insufficient to invoke California law.  *Gonsalves*, 2010 WL 1854146, *5-7 (FEHA does not "cover[] all employees who perform some job duties or manage some clients in California").

In any event, Plaintiff provides no factual allegations related to (1) the specific work he performed in California, (2) whether he is missing wages or statements related to that work, (3) whether he missed meal or rest periods related thereto, or (4) any other reason why he would be entitled to relief under California law.  Absent such allegations, the FEHA or Labor Code claims fail and should be dismissed.  *See e.g.*, *Morrelli v. Corizon Health, Inc.*, 2018 WL 6201950, *4

---

[8]    Plaintiff also asserts, "on information and belief," that "Defendants" were located in California when they made the decision to terminate Plaintiff.  (FAC ¶ 6.)  But that is conclusory and need not be accepted as true.  Moreover, Plaintiff asserts Ms. Pete told him the "corporate Defendants—who are based in New York … books her people," further confounding where his termination took place.  (*Id.* ¶¶ 105, 109.)  In any event, allegations based "on information and belief" cannot state a claim absent factual support.  *See Reed v. Paramo*, 2019 WL 5191695, *8 (S.D. Cal. Oct. 15, 2019) (allegations insufficient as "conclusory and …based on 'information and belief,' without providing 'the factual basis for the belief'"); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 2017 WL 6059299, *7 (N.D. Cal. Dec. 7, 2017) ("[n]aked assertions made upon information and belief and devoid of further factual enhancement are insufficient to state a claim").

(E.D. Cal. Nov. 28, 2018) (dismissing wage claims where allegations "merely" "track the statutory language" without "any factual detail to support a reasonable inference that Defendant failed to pay the minimum wages due for work performed."); *Edwards v. Costco Wholesale Corp.*, 2021 WL 3130043, *5 (C.D. Cal. July 23, 2021) (dismissing minimum wage claim absent "context regarding how many minutes or hours Plaintiff allegedly worked off the clock, or how often it allegedly happened").

### B.    The New York Claims Should Be Limited

Like its California counterparts, the NYCHRL, NYSHRL, and NYLL only apply to conduct that occurred within New York state's geographical boundaries. *See King v. Aramark Servs. Inc.*, 96 F.4th 546, 558-59 (2d Cir. 2024) (NYSHRL does not apply to extraterritorial conduct by foreign defendants); *Hardwick v. Auriemma*, 116 A.D.3d 465, 466 (1st Dep't 2014) (NYSHRL and NYCHRL "do not apply to acts … committed outside their respective boundaries"); *see also Hoffman v. Parade Pubs.*, 15 N.Y.3d 285, 291 (2010) ("'extraterritorial' provision underscores … that the law does not protect nonresident[s]"); *Smith v. Vera Inst. of Just., Inc.*, 2023 WL 11879682, *15 (E.D.N.Y. Aug. 11, 2023) (same for NYLL) (collecting cases). Here, the FAC's only connection to this State is the New York Incident.  (FAC ¶¶ 32-46.)  As Plaintiff and the Pete Defendants are foreign citizens and the balance of the conduct alleged in the FAC—including the Ibiza and Portugal incidents, his purported termination, and where he felt the effects of those acts and others—occurred outside of this state's territorial boundaries, New York law affords him no redress.  His New York claims should be limited to the New York Incident. *See King*, 96 F.4th at 558 (affirming dismissal of NYSHRL claim); *Hardwick*, 116 A.D.3d at 466 (focus "on whether the actions … alleged … had an impact within … boundaries of the City and State of New York"); *Smith*, 2023 WL 11879682, at *15-16 (recommending grant of motion to

10

dismiss NYLL claim absent "allegations … placing plaintiff in New York" during the complained-of conduct). But because those claims are not properly pled, *infra*, IV & V, dismissal is warranted.

## III. THE FAC'S CALIFORNIA AND NEW YORK LABOR LAW CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT AN EMPLOYEE

The FAC fails to assert nonconclusory allegations of employee status, and the well-pled facts it does contain run counter to such a claim. Indeed, those facts underscore his classification as an independent contractor, consistent with the terms of the Agreement.[9]

Recovery under the NYLL and the California Labor Code is available only to employees. *See Cox v. German Kitchen Ctr. LLC*, 2023 WL 8648839, *4 (S.D.N.Y. Dec. 14, 2023) ("NYLL … appl[ies] to 'employee[s],' not independent contractors."); *Frost v. Lentex Co., LLC*, 2022 WL 17968058, *5 (S.D.N.Y. Dec. 27, 2022) (same); *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017); N.Y. Lab. Law § 651; *Whitlach v. Premier Valley, Inc.*, 86 Cal. App. 5th 673, 683 (2022) (California's labor laws do not protect independent contractors) (citing *Dynamex Opers. West, Inc. v. Superior Court*, 4 Cal. 5th 903, 913 (2018)). The FAC fails to bring Plaintiff within this category of workers.

Plaintiff relies exclusively on boilerplate allegations of control in an attempt to assume an employee status he did not have. That will not do. *Ruixuan Cui v. E. Palace One, Inc.*, 2019 WL

---

[9] Plaintiff cannot plead around his Agreement: he had full knowledge of it, signed it, and presumably retained a copy of it. As such, it is integral to his FAC and can be considered by this Court. *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 715 (E.D.N.Y. 2015) (court can consider documents that "plaintiff relied on … to frame h[is] pleading"); *MacSweeney v. ING Life Ins. & Annuity Co.*, 2011 WL 4839086, *3 (S.D.N.Y. Oct. 12, 2011) (documents are integral to complaint if "the non-movant either" had possession of them or knew of them "when bringing suit"); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 217 (S.D.N.Y. 2008); *see also Glob. Network Commc'ns, Inc. v. N.Y.C.*, 458 F.3d 150, 157 (2d Cir. 2006) (exception "prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting"). This conclusion is bolstered by Plaintiff's assertion of wage-related claims (FAC ¶¶ 182-201, 253-304), which are "fundamentally contractual." *Voris v. Lampert*, 7 Cal. 5th 1141, 1148 (2019); *Tierney v. Capricorn Invs., L.P.*, 189 A.D.2d 629, 632 (1st Dep't 1993) ("cannot assert a statutory claim for wages … [absent] enforceable contractual right" thereto).

4573226, *7 (S.D.N.Y. Sept. 20, 2019) ("boilerplate allegations that an individual meets the various prongs of the economic reality test" "insufficient to survive a motion to dismiss"). Plaintiff claims he "received fringe benefits" (FAC ¶ 187), but never identifies what those benefits were. He claims Defendants set his work schedule, (*id.*) but never identifies what that schedule was. He claims he "was forbidden by Pete from working for anyone else" (*id.* ¶¶ 95, 98), but does not identify where or when he was told that (*id.* ¶ 133) or whether he either tried to get third-party work or was offered a third-party assignment that he turned down. Plaintiff's other allegations regarding direction and control likewise lack any factual substance. (*See e.g.*, *id.* ¶¶ 9-16, 18 (conclusory allegations of joint employer and alter ego status); *id.* ¶ 17 (bare recital that "Plaintiff was an 'Employee'" under relevant law); *id.* ¶¶ 123-29 (reciting California legal standard and conclusory allegations of control).)

Plaintiff's well-pled facts confirm his classification as an independent contractor. Preliminarily, he alleges that Defendants treated him as an independent contractor. (*Id.* ¶ 123.) And though he claims that he was "on Defendants' pay roll" (*id.* ¶ 187), he admits to invoicing Roc Nation for payment, something employees need not do. (*See e.g.*, *id.* ¶¶ 135, 208, 238.) He also admits that Ms. Pete engaged *other* cameramen (*id.* ¶ 84), suggesting a lack of exclusivity. These allegations are consistent with his Agreement, which contains no exclusivity clause. Under New York law, the Agreement "is pertinent to the parties' beliefs about the nature of the relationship." *Saleem*, 854 F.3d at 141. Thereunder, Plaintiff agreed to provide services "as an independent contractor" (Declaration of Joanna Menillo Ex. A ("Agmt.") ¶ 8) for $5,500 per month. (*Id.* ¶ 3.) And he agreed to be "solely responsible for" the payment of "all taxes required to be paid …, including payroll taxes or contributions[.]" (*Id.* ¶ 8.) He did "not have the right to execute any agreement or incur any obligation for which [HGT] … may be liable or otherwise

bound" (*id.*) nor did the Agreement grant the Pete Defendants exclusive control over the manner or means of Plaintiff's performance. (*Id.*) Moreover, both parties could terminate the Agreement at any time. (*Id.* ¶ 1.)

As Plaintiff's well-pled facts bely his conclusory allegations of employee status, dismissal of the NYLL and California Labor Code claims (Counts VII-X & XIV-XIX) is proper.[10] *Maldonado Juarez v. Butterfield Catering Inc.*, 2020 WL 6945944, *2-4 (S.D.N.Y. Nov. 25, 2020) (dismissing NYLL claim supported only by "formulaic" allegations "upon information and belief" concerning control that contained "none of the factual detail necessar[y] to show the economic reality"); *Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 243 (S.D.N.Y. 2024) (allegations that defendant could "hire, fire, and control … wages and working conditions of [p]laintiff" are "boilerplate and merely track certain factors of the economic reality test").

---

[10] Regardless of extraterritoriality and employee status, Plaintiff's wage claims under New York (Counts IX-X) and California law (Counts XVI-XIX), fail because they are conclusory (*id.* ¶¶ 138-46 (bare recitals of wage violations)) and devoid of factual support concerning the specific work performed and when, where, and how long it was performed. *See e.g.*, *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (affirming dismissal where plaintiff "alleged only that in 'some or all weeks' she worked more than 'forty hours' a week" and failed to "estimate her hours in any or all weeks or provide other factual context or content"); *Li v. SMJ Constr. Inc.*, 2022 WL 4463225, *3 (S.D.N.Y. Sept. 26, 2022) (allegations that "'major work locations'" were New York and of work "on 'more than ten construction sites" insufficient absent "dates or specific time periods" under NYLL); *see Mendoza v. Cornell Univ.*, 215 A.D.3d 590, 591 (1st Dept. 2023) (affirming dismissal of NYLL overtime claim absent "sufficient detail about the length and frequency of unpaid work"); *Morrelli v. Corizon Health, Inc.*, 2018 WL 6201950, *4 (E.D. Cal. Nov. 28, 2018) (dismissing Labor Code unpaid wages claim where "allegations here merely track the statutory language" without factual detail); *see, e.g.*, *Edwards v. Costco Wholesale Corp.*, 2021 WL 3130043, *5 (C.D. Cal. July 23, 2021) (dismissing minimum wage claim absent "context regarding how many minutes or hours Plaintiff allegedly worked off the clock, or how often it allegedly happened").

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR DISCRIMINATION

Regardless of extraterritoriality, Plaintiff's various theories of discrimination and a hostile work environment under the NYSHRL and NYCHRL (FAC ¶¶ 147-49, 159-61) fail to state a claim for relief.

Either theory under the NYSHRL and NYCHRL is subject to similar elements.  NYSHRL requires proof that plaintiff (1) has a protected characteristic; (2) is qualified for the job; (3) suffered adverse employment action; and (4) that action "occurred under circumstances giving rise to an inference of discrimination."  *See Shapiro v. State*, 217 A.D.3d 700, 701 (2d Dep't 2023); *see* N.Y. EXEC. LAW § 296(1)(a).  And NYCHRL claims differ only in that a plaintiff can show that he or she was treated "less well" than others, rather than adverse employment action.  *Acala v. Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.*, 222 A.D.3d 706, 707 (2d Dep't 2023); *see* N.Y.C. ADMIN. CODE § 8-107(1)(a).  A theory of hostile work environment is assessed— regardless of the statute—under NYCHRL's rubric of "less well" treatment.  *Flaherty v. Dixon*, 2023 WL 2051861, *12 (S.D.N.Y. Feb. 16, 2023) (citing *Emamian v. Rockefeller Univ.*, 971 F.3d 380, 390 (2d Cir. 2020)); *see Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 579 (S.D.N.Y. 2023). Regardless of the framing, however, such claims will fail absent a causal connection between the adverse employment action—or less well treatment—*and* plaintiff's protected characteristic. *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 40–41 (1st Dep't 2012) (must allege unlawful discrimination was "motivating factor" in unequal treatment); *Bivens v. Inst. for Cmty. Living*, 2016 WL 11701799, *1 (S.D.N.Y. Feb. 3, 2016) (same); *Yost*, 657 F. Supp. 3d at 579 (dismissing NYCHRL claim absent allegations that conduct "was 'because of'" "gender, sex, or sexual orientation").

Plaintiff's NYSHRL and NYCHRL claims do not make the requisite connection between an adverse employment action and his protected characteristic, an "axiomatic" predicate to relief.

*Uttarwar v. Lazard Asset Mgmt. LLC*, 2024 WL 1251177, *16 (S.D.N.Y. Mar. 22, 2024) (causal connection requirement "axiomatic"). As discussed *supra,* II, because these statutes do not apply extraterritorially, Plaintiff only states a claim if his allegations concerning the New York Incident are sufficiently pled. They are not.

Plaintiff asserts that in February 2022, he accompanied Ms. Pete and members of her "entourage" to a strip club for her 27th birthday, where he claims Ms. Pete began acting "provocative[ly]" with the dancers, making Plaintiff feel "extremely uncomfortable, embarrassed, and disgusted." (FAC ¶¶ 33-37.) During the evening, Plaintiff allegedly made an "innocuous comment" that caused Ms. Pete to give him a "sinister look … so malignant that he had never seen" before. (*Id.* ¶ 42.)[11] But Plaintiff does not claim that Ms. Pete "shot" him this look *because* of his sex, disability, or weight. No causal connection is established. *See e.g.*, *Monachino v. Bair*, 769 F. Supp. 2d 431, 442-43 (S.D.N.Y. 2011) (even assuming any of the alleged "conduct rose to an actionable level," hostile work environment claim fails because no "'linkage or correlation' between the conduct, on the one hand, and a protected characteristic, on the other"); *Yost*, 657 F. Supp. 3d at 579 (dismissal proper where complaint "does not supply any basis to infer [conduct] … had anything to do with [plaintiff's] 'gender' or 'sex'"); *Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 423 (S.D.N.Y. 2016) (dismissing NYSHRL and NYCHRL absent causal connection); *Casalino v. N.Y.S. Catholic Health Plan, Inc.*, 2012 WL 1079943, *7-9 (S.D.N.Y.

---

[11]    At most, on the merits this conduct amounts to a "petty slight" unrecoverable under a theory of hostile work environment, an affirmative defense the Pete Defendants will avail themselves of in their answer and at summary judgment should Plaintiff's FAC survive this motion. *See e.g.*, *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) ("[i]solated incidents of unwelcome verbal" conduct only "petty slights and trivial inconveniences … not actionable"); *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 624 (E.D.N.Y. 2020) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" generally insufficient to sustain hostile work environment).

Mar. 30, 2012) (NYCHRL hostile work environment claim that supervisor "berated [plaintiff] and frightened her" insufficient absent inference that the conduct occurred because of her gender).

Plaintiff's general allegation that he "was a gay man and not attracted to women" does not alter the outcome because it is entirely unconnected to the supposed "malignant" look he received. (FAC ¶¶ 34-42.)  Nor does this allegation support any potential argument that his attendance at the club is "less well" treatment—he claims Ms. Pete's "entourage" was there with him and he does not otherwise assert that he was required to attend *because* he is a gay man.  *Bliss*, 220 F. Supp. 3d at 423 ("cannot simply allege a series of offense racist and homophobic comments … point out that she is a woman, and thereby state a claim").  Relatedly, his naked assertion that he was subjected to a hostile work environment because of these characteristics (FAC ¶¶ 149, 157), will not suffice.  *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 443 (W.D.N.Y. 2021) ("naked assertions of discrimination without any specific factual allegation of a causal link … too conclusory to withstand a motion to dismiss"); *Bledsoe v. Delta Air Lines, Inc.*, 2024 WL 1142321, *3 (E.D.N.Y. Mar. 15, 2024) (complaint "silent with respect to any action or comment … that in any way implicat[es] race in the decision to terminate him" warranted dismissal).  In any event, the NYSHRL and NYCHRL are not "general civility code[s]," *Bledsoe,* 2024 WL 1142321, at *3, and "mere personality conflicts must not be mistaken for unlawful discrimination."  *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 309 (2004).  This alone warrants dismissal.

The remaining instances of purported discrimination and harassment alleged—***none of which occurred in New York*** and cannot serve to invoke its laws—are also devoid of any causal nexus.  Plaintiff does not allege that the reduction in his bookings (FAC ¶ 83-85), change in pay structure (*id.* ¶ 94), termination (*id.* ¶ 109), or the alleged acts by Ms. Pete of allegedly forbidding him—and others—from eating (*id.* ¶ 26-29), purportedly engaging in "group sex" in Ibiza in front

16

of him (*id.* ¶¶ 51-64), yelling at Plaintiff for eating in front of her in Ibiza (*id.* ¶ 75), or allegedly throwing a remote control at him in Portugal (*id.* ¶¶ 88-93), were done *because of* his protected characteristic. Indeed, Plaintiff alleges that Ms. Pete's comments and conduct concerning food were because of her own dieting regimen. (*Id.* ¶¶ 25-27, 75.) And Plaintiff's generalized assertion that Ms. Pete purportedly "held disdain for" him suggests that the other acts of purported "less well treatment" if true—they are not—were not because of his sex, disability, or weight, but because of "personality conflicts" the law does not regulate. *Bledsoe,* 2024 WL 1142321, *3; *Yost,* 657 F. Supp. 3d at 579 ("generalized hostility or generally uncivilized behavior … not actionable"). Further, the FAC states that "Defendants" terminated Plaintiff because of a "change in creative direction," a nondiscriminatory reason. (FAC ¶ 109.) In any event, the Agreement provides that "[e]ither party may terminate" it. (Agmt. ¶ 1.) *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249-50 (E.D.N.Y. 2015) (no causal allegations connecting termination to discriminatory motive warranted dismissal of NYSHRL and NYCHRL claims).[12]

As Plaintiff fails to allege a primary claim for discrimination under the NYCHRL and NYSHRL, so too go his aiding and abetting claims (Counts III & VI). They should be dismissed. *Rivera v. PLS Check Cashers of New York, Inc.*, 2024 WL 263218, *7 (S.D.N.Y. Jan. 24, 2024) ("precondition" to "valid aiding and abetting claim … is a demonstration of a valid primary claim for discrimination or retaliation"). To the extent Plaintiff claims the Pete Defendants aided and abetted their own behavior, that theory, too, fails. *Romano v. A360 Media, LLC*, 2023 WL 348459,

---

[12] For these reasons, Plaintiff's California-based harassment claims, if they were available to him—they are not, also fail. *See e.g.*, Cal. Gov't Code § 12940(j)(1) (prohibiting harassment of an employee "*because of*" a protected characteristic); *Robertson v. Cnty. of Alameda*, 2016 WL 3194333, *4 (N.D. Cal. June 9, 2016) (granting motion to dismiss FEHA claim due to lack of causal allegations); *Boparai v. Shinseki*, 2012 WL 2994078, *3 (E.D. Cal. July 20, 2012) (granting motion to dismiss where there were no facts showing harassment "was motivated by a hostile attitude due to … protected class").

at *13 (S.D.N.Y. Jan. 20, 2023) ("no aider-and-abettor liability as to [ ] corporate defendants for aiding and abetting their own conduct").

## V.    PLAINTIFF'S RETALIATION CLAIMS (COUNTS II, V, VII & VIII) SHOULD BE DISMISSED

Each of Plaintiff's retaliation claims, including his whistleblower retaliation claim— whether asserted under the NYSHRL, the NYCHRL, or the NYLL—requires pleading three functionally similar elements:  (1) a protected activity; (2) an act of retaliation or adverse employment action; and (3) a causal connection between the two.  *Ward v. Cohen Media Publications LLC*, 2023 WL 5353342, *13-14 (S.D.N.Y. Aug. 21, 2023) (NYSHRL and NYCHRL retaliation); *Zhang v. Centene Mgmt. Co., LLC,* 2023 WL 2969309, at *13 (E.D.N.Y. Feb. 2, 2023) (NYLL § 215 retaliation); *Samuels v. Urb. Assembly Charter Sch. for Computer Sci*., 2024 WL 4008165, *12 (S.D.N.Y. Aug. 30, 2024) (NYLL § 740 whistleblower retaliation).  While causation under NYSHRL requires "that the retaliation was a 'but-for' cause of the employer's adverse action," *Ward*, 2023 WL 5353342, *13-14, the NYCHRL only requires causation "(1) indirectly, … [where] the protected activity was followed closely by discriminatory treatment …; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Buchanan v. N.Y.C.*, 556 F. Supp. 3d 346, 367–68 (S.D.N.Y. 2021).  The FAC fails here.

### A.    Plaintiff Fails To Allege Any Protected Activity

To amount to a protected activity under New York law, the action must be made in opposition to the employer's unlawful *discrimination*; complaints about what the employee believes to be generalized "unlawful conduct" are not enough.  *Romano*, 2023 WL 348459, at *11 (dismissing NYCHRL and NYSHRL retaliation claims where complaints to human resources made no reference to discrimination).  And the complaint must have some level of specificity that puts the employer on notice to "take care to avoid action that might be seen as retaliatory."

*Greathouse v. JHC Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015); *Luo v. AIK Renovation Inc.*, 2023 WL 8113437, *5 (S.D.N.Y. Nov. 22, 2023) (must "put defendants on notice that he was challenging discriminatory conduct").[13]   "[V]ague complaints" will not do.  *Greathouse*, 784 F.3d at 116 (must be "sufficiently clear and detailed … in light of both the content and context, as an assertion of rights protected by [] statute and a call for their protection"); *Mestizo v. H2 Candy & Nuts, Inc.*, 2019 WL 2212153, *6 (S.D.N.Y. Apr. 8, 2019) (same for NYLL complaints); *Medina v. Ricardos Mechanical, Inc.*, 2018 WL 3973007, *7 (E.D.N.Y. Aug. 20, 2018) (same for NYSHRL and NYCHRL).

None of the acts Plaintiff purportedly undertook to "oppose" the alleged unlawful conduct constitutes a protected activity.  Read in the light most favorable to Plaintiff, he alleges he engaged in "protected activity" by:  telling Ms. Pete that he "did not appreciate" alleged conduct in Ibiza, Spain (FAC ¶ 80); complaining to "Alex" about Defendants' "payment practices" and alleged "acts of retaliation" (*id.* ¶ 97); and complaining to Ms. Pete about Defendants' "retaliatory acts of reducing his hours and ongoing harassment."  (*Id.* ¶¶ 102-04.)[14]  As described *supra*, II.B., only conduct alleged in New York is recoverable.  None of these purported protected activities took place in this State, but even assuming its law applies, they are legally infirm.

---

[13]    FLSA standards are applicable in the NYSHRL, NYCHRL, and NYLL contexts. *Mestizo v. H2 Candy & Nuts, Inc.*, 2019 WL 2212153, *5 (S.D.N.Y. April 8, 2019) (noting FLSA and NYLL standards nearly identical); *Herskowitz v. State*, 222 A.D.3d 587, 588 n.1 (1st Dep't 2023) (federal Title VII standards "highly instructive" on NYSHRL claims).

[14]    Plaintiff also alleges he "opposed" purportedly unlawful conduct when he (1) exited the club in New York City after receiving Ms. Pete's "malignant look" and waited in an SUV (FAC ¶ 44) and (2) looked away and continued to play music on his phone during the Ibiza Incident in an SUV (*id.* ¶ 65.)  But protected activity must be a complaint—whether oral or in writing— and neither of these actions put the Pete Defendants on notice of anything, let alone some discriminatory conduct.  *See Herrington v. Metro-North Commuter R. Co.*, 118 A.D.3d 544, 545 (1st Dep't 2014) (affirming dismissal as "salary review and increase" request not protected activity because "no allegation that she *informed* defendant that she was being underpaid because of her gender").

*First*, none of these acts are specific or sufficiently detailed.  Plaintiff's complaints to Ms. Pete about not "appreciat[ing]" conduct in Ibiza (FAC ¶ 80), to "Alex" about unidentified "pay practices" and "retaliation" (*id.* ¶ 97), and to Ms. Pete on FaceTime about vague reduction in hours and "ongoing harassment," (*id.* ¶ 102) are too generalized and ambiguous to constitute protected activities.  *See e.g. Gonzalez v. EVG, Inc.*, 13 A.D.3d 486, 486 (1st Dep't 2014) (written complaint about 'generalized harassment … too ambiguous to constitute protected activity"); *Watkins v. First Student, Inc.*, 2018 WL 1135480 *9-10 (S.D.N.Y. Feb. 28, 2018) (dismissal proper where no "clear articulation of facts indicative of illegality" for complaint "overtime hours were not being paid properly"); *Mestizo*, 2019 WL 2212153 at *6 ("complaints that their pay was too low" insufficient for protected activity under FLSA or NYLL).

*Second*, Plaintiff failed to complain of any *discriminatory conduct* when he made these complaints.  A protected activity must complain about something that violates these statutes—i.e., discriminatory conduct.  N.Y. Exec. Law § 296(7) (protected activity must "oppose[] any practices forbidden under this article"); N.Y.C. Admin. Code § 8-107(7) (protected activity must "oppose[] any practice forbidden under this chapter"); *see also Franco v. Am. Airlines, Inc.*, 2024 WL 1054865, *18 (S.D.N.Y. Feb. 16, 2024) ("complaining of conduct other than unlawful discrimination ... is simply not a protected activity subject to a [NYSHRL or NYCHRL] retaliation claim").  At the outset, Plaintiff effectively concedes that prior to 2023 he never complained about any alleged unlawful conduct:  indeed, by then, he was "stuck with the impossible choice of *remaining silent* […] or complaining to Defendants."  (FAC ¶ 95 (emphasis added).)

And none of his "complaints" reference his protected characteristics.  His description of the February 2022 conversations with Ms. Pete (FAC ¶ 80) never reference his sex, weight, or disability, let alone suggest that he told Ms. Pete he felt discriminated against or harassed *because*

*of* those factors. *Fruchtman v. N.Y.C.*, 129 A.D.3d 500, 501 (1st Dep't 2015) (complaints "no[t] referenc[ing] … [that plaintiff] was a female" or otherwise "implicat[ing] gender" not protected activity); *Herrington*, 118 A.D.3d at 545 (affirming dismissal where "no allegation that [plaintiff] informed defendant that she was being underpaid because of her gender"); *Borawski v. Abulafia*, 140 A.D.3d 817, 818 (2d Dep't 2016) (complaint "did not relate to discriminatory practices prohibited under the Executive Law;" thus, was not protected activity). Similarly, his disclosures to "Alex" (FAC ¶ 97)[15] make no reference to pay practices or purported retaliation being animated by some discriminatory intent. *See e.g. Clarson v. City of Long Beach*, 132 A.D.3d 799, 800 (2d Dep't 2015) ("testimony before … grand jury was unrelated to opposing or complaining about statutorily prohibited discrimination;" thus, not protected activity); *Medina*, 2018 WL 3973007, at *7 (complaint that "hours were wrong" not protected activity and noting that "working longer hours than originally agreed upon is not even a violation of the labor law"). Even when Plaintiff alleges he "bravely" faced Ms. Pete over FaceTime, he confronted her only about pay practices, hour reductions, and "ongoing harassment," such as "being labeled a bitch as a gay man," none of which he alleges put Defendants on notice that he believed they were engaging in discriminatory

---

[15] This "disclosure" is deficient for the independent reason that it occurred in 2023, well after Plaintiff asserts Defendants retaliated by changing his compensation structure in 2022. (FAC ¶¶ 94, 135.) How Plaintiff managed to engage in a protected activity regarding retaliation that was allegedly *already happening* is paradoxical. *See, e.g., Shepherd v. BCBG Max Azria Grp., Inc.*, 2012 WL 4832883, *4 n.6 (S.D.N.Y. Oct. 11, 2012) ("alleged employer acts that admittedly began prior to an employee's participation in a protected activity cannot be considered retaliatory employment actions"); *Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 247 (E.D.N.Y. 2015) ("continuation of a course of conduct that had begun before" complaint not "retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct.").

conduct.[16]  (FAC ¶¶ 102-04); *Zhang*, 2023 WL 2969309, at *17 (complaint "must identify the particular activities, policies or practices … employer allegedly engaged [in]").

### B.  Plaintiff Fails to Allege the Requisite Causal Connection

There is no causal connection between a protected activity and retaliatory conduct unless Plaintiff "show[s] that the protected activity was closely followed in time by the adverse action." *Herskowitz*, 222 A.D.3d 587, 588; *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 534 (S.D.N.Y. 2015) (for "employment action to be retaliatory, it must occur after the protected activity"). Plaintiff fails to meet this test.

Even if Plaintiff's actions constitute protected activities—they do not—his claim lacks the requisite causal connection to any adverse consequences.  Plaintiff alleges several "retaliatory" actions by Defendants, including yelling at him to spit his food out during dinner after the Ibiza Incident (FAC ¶ 75); requesting fewer of his services and altering his compensation structure under the Agreement (*id.* ¶ 84); purportedly throwing a remote control during the Portugal Incident (*id.* ¶¶ 90-93), and the termination of Plaintiff's engagement, (*id.* ¶ 109.)

The allegations surrounding these alleged acts are conclusory at best and insufficient to create the necessary causal link.  For example, Plaintiff does not even identify a protected activity that preceded the purported retaliatory act of admonishing Plaintiff to "spit his food out" during dinner in Ibiza (*id.* ¶ 75), let alone connect it to any such activity.  (*Id.* (claiming retaliation for "prior protected activity" without identifying what it was).)  *See Pinero v. Long Is. State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) ("no inference of retaliatory animus where the

---

[16]  Plaintiff's allegations regarding Ms. Pete's response to his complaints illustrate she was not put "on notice" of any challenge to discriminatory conduct or any "assertion of rights under statute."  *Mestizo*, 2019 WL 2212153, at *6.  Indeed, Ms. Pete's only response was to explain that "Roc Nation books her people," confirm that he and Ms. Pete "were good," and never even acknowledged any allegation of discriminatory conduct.  (FAC ¶¶ 105, 221.)

adverse employment action occurred prior to the protected activity"). Nor could he: the prior acts of alleged "opposition" were nonverbal and *not* complaints. *See supra* V.A. n.14. In any event, Plaintiff admits that the comments during dinner were "consistent with Pete's anger towards those who ate in her presence while she was dieting." (FAC ¶ 75.)

Similarly, Plaintiff makes the conclusory allegation that two months later, during the Portugal Incident, Ms. Pete was "clearly … both physically and mentally intimidating Plaintiff in an effort to keep him silen[t] about what took place in Ibiza, Spain, amongst other unlawful acts detailed herein." (*id.* ¶ 93.) But it is far from "clear" that the alleged conduct was in *any way* motivated by discriminatory animus, as Plaintiff provides no supporting factual allegations sufficient to create an inference concerning Ms. Pete's motivations.

And while Plaintiff claims that in August 2022, "Defendants altered Plaintiff's compensation structure from a monthly rate to a pay-per-task system for each assignment" and began to request "fewer services" from him (*id.* ¶¶ 84, 94), he does not allege facts that support an inference that this purported change in pay structure or reduction in bookings was in any way due to retaliatory animus for his statements to Ms. Pete in Ibiza. (*See id.* ¶¶ 94, 135.) In fact, Plaintiff alleges that Defendants were free to engage others for photography services, and provides no facts to support that their decision to do so was anything other than an exercise of that right. (*Id.* ¶¶ 84, 208.) Plaintiff's bare conclusory allegations do not support a causal connection between his "protected activity" in February and June 2022 and the alleged retaliation he experienced in August 2022. *Waters v. Jacobsen*, 2020 WL 1527054, *7 (N.D.N.Y. Mar. 31, 2020) ("[m]ere speculation … [of] retaliatory animus, without more, does not support a claim for retaliation"); *Hollington v.*

*CDM Fed. Programs Corp.*, 2023 WL 2457057, *8, 10 (S.D.N.Y. Mar. 10, 2023) ("retaliatory motive must be at least a 'substantial' or 'motivating factor'").[17]

Plaintiff's allegations concerning the termination of his services are similarly devoid of any facts supporting an inference that it was motivated—even in part—by Plaintiff's "protected activity" at any time during the previous two years.  While Plaintiff describes a FaceTime call with Ms. Pete that occurred "shortly" before his termination in which he "bravely" complained to her of allegedly "unlawful pay practices" and "ongoing harassment," Plaintiff himself alleges that Ms. Pete was expressing concern that *Plaintiff* would terminate the Agreement and, in response to his complaints, Ms. Pete only explained that "Roc Nation books her people."  (FAC ¶¶ 100-05.)  Moreover, according to Plaintiff, Ms. Pete ended the call confirming "***we're good***."  (*Id.* ¶ 221 (emphasis added).)  The context surrounding Plaintiff's termination further undercuts the existence of any retaliatory motivation—the termination followed a steady decline of work that began at least five months before the protected action, (*id.* ¶¶ 82-84), consistent with the reason provided to Plaintiff for his termination: a "change in creative direction."  (*Id.* ¶ 109.)  Even taking all the allegations in Plaintiff's favor, he does not allege a retaliatory motive.[18]

---

[17]    "[W]hile there is no bright line rule," courts generally find that "a span of two months [or less] between the protected activity and adverse employment action" can support causal inference for a retaliation claim under the NYSHRL.  *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018).  Notably, "evidence of temporal proximity alone is insufficient to demonstrate retaliation." *Stickler v. IBM, Inc*. 2024 WL 3952639 at *4 (S.D.N.Y. Aug. 26, 2024) (internal citation omitted).  *See also Ward v. Cohen Media Publications LLC*, 2023 WL 5353342, at *14 (dismissal where plaintiff failed to plead causal connection absent "more specificity in terms of timing" between protected activity and termination).

[18]    For the same reasons, even if Plaintiff could avail himself of California law—he cannot—his retaliation claim would fail because he does not allege a protected activity or a causal connection between that activity and some retaliatory conduct.  *See e.g.*, *Barker v. McFerran*, 2024 WL 2031640, *7 (N.D. Cal. May 6, 2024) (dismissing retaliation claim absent allegations related to "what protected activities Plaintiff believes were the subject of retaliation by Defendant" and "a causal link between any protected activity and the adverse action"); *Tharpe v. Diablo Valley Coll. (Contra Costa)*, 2012 WL 629138, *4 (N.D. Cal. Feb. 27, 2012) (failure to allege plaintiff

To the extent Plaintiff claims that the Pete Defendants retaliated against him *after* his termination (*id.* ¶¶ 110-22), he fails to allege any facts indicating that any of the Pete Defendants were even *involved* in the decision not to engage his services, let alone that they were motivated by retaliatory animus. *Waters*, 2020 WL 1527054 at *15. Moreover, Plaintiff's bare allegation that he was "blackballed" from the entertainment industry by Ms. Pete (FAC ¶ 116), cannot support a retaliation claim absent supporting facts. *See e.g.*, *Hollington*, 2023 WL 2457057, *8, 10 (allegation claiming "false[] disparag[ement] and defam[ation] [of plaintiff] in the industry was "conclusory" and provided "no evidence of … discrimination" or of adverse employment action for retaliation).

In sum, none of Plaintiff's allegations are sufficient to sustain his retaliation claims. They should be dismissed.

---

"engaged in protected activity" and "causal nexus between [that] activity and the adverse employment action" warranted dismissal).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiff's FAC in its entirety.


DATED:    February 12, 2025                QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP


                                           By:  _/s/ Joanna E. Menillo_____
                                           Alex B. Spiro
                                           Joanna E. Menillo
                                           alexspiro@quinnemanuel.com
                                           joannamenillo@quinnemanuel.com
                                           51 Madison Avenue, 22nd Floor
                                           New York, New York 10010-1601
                                           (212) 849-7000

                                           Mari F. Henderson (*pro hac vice*)
                                           Julian T. Schoen (*pro hac vice*)
                                           marihenderson@quinnemanuel.com
                                           julianschoen@quinnemanuel.com
                                           865 South Figueroa Street, 10th Floor
                                           Los Angeles, California 90017-2543
                                           (213) 443 3000

                                           *Attorneys for Defendants Megan Thee Stallion,*
                                           *Megan Thee Stallion Entertainment, Inc., and*
                                           *Hot Girl Touring, LLC*

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, Joanna Menillo, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 3(A) of Judge Gregory H. Woods' Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 8,558 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 3(A) of Judge Gregory H. Woods' Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 12th day of February, 2025 in New York, New York.


    _/s/ Joanna E. Menillo_
    Joanna E. Menillo