UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMILIO GARCIA, an Individual,

                    Plaintiff,

        -against-

ROC NATION LLC, a Delaware Business
Organization; HOT GIRL TOURING, LLC, a
Delaware Business Organization, MEGAN THEE
STALLION ENTERTAINMENT, INC., a
Delaware Business Organization, MEGAN THEE
STALLION, an Individual, and DOES 1 through
10, inclusive,

                    Defendants.

Civil Action No. 1:24-cv-07587-GHW

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS MEGAN THEE STALLION, HOT GIRL TOURING, LLC, AND
MEGAN THEE STALLION ENTERTAINMENT, INC.'S MOTION TO DISMISS
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

**VALIANT LAW**
Joseph Jeziorkowski, Esq.
William Knight IV, Esq.
*Attorneys for Plaintiff*
2 Westchester Park Drive, Suite 205
White Plains, New York 10604
914-730-2422



**WEST COAST TRIAL LAWYERS, APLC**
Ronald L. Zambrano, Esq. (*pro hac vice*)
*Attorneys for Plaintiff*
1147 South Hope Street
Los Angeles, CA 90015
213-927-3700

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................... 1

ALLEGATIONS AND FACTUAL BACKGROUND.................................................... 2

LIBERAL PLEADING STANDARD .......................................................................... 2

ARGUMENT ................................................................................................................ 2

I.    DEFENDANTS FAILED TO MOVE UNDER RULE 8(A) AND  IGNORED THE
NOTICE PLEADING STANDARD............................................................................. 2

II.    THE CALIFORNIA AND NEW YORK DISCRIMINATION CLAIMS ARE
PROPERLY PLEAD AS HARM OCCURRED IN BOTH LOCATIONS ................................. 3

    A.    FEHA Has Jurisdiction Over Acts That Occurred in California  Regardless of Whether
the Victim is a Non-Resident ................................................................... 4

    B.    The California Labor Code Protects Employees Who Work in  California Yet Reside
Outside of California ................................................................................ 5

    C.    The California Business and Professions Code Applies to Unlawful Acts Done in
California to Non-Residents ..................................................................... 6

    D.    The New York Claims are Proper as Harm Occurred in New York............................. 7

III.    PLAINTIFF WAS MISCLASSIFIED AS AN INDEPENDENT CONTRACTOR .......... 9

    A.    Extrinsic Evidence Should Not Be Considered ............................................. 9

    B.    Plaintiff was Misclassified Under New York Law........................................ 10

    C.    Plaintiff was Misclassified under California Law ......................................... 11

IV.    PLAINTIFF STATED CLAIMS UNDER THE NYSHRL and NYCHRL ...................... 11

    A.    Being Forced to Watch Megan Thee Stallion's Orgy is Sexual Harassment ............... 13

    B.    Plaintiff was Subjected to Disability and Weight Discrimination ............................. 15

    C.    Defendants' Aided and Abetted the Discriminatory and Unlawful Conduct ............... 16

V.    PLAINTIFF'S RETALIATION CLAIMS ARE PROPER ................................ 17

    A.    The Retaliation Claims Must Be Liberally Construed................................... 17

    B.    NYLL §§ 740 and 215 Provide Expansive Employee Protections ............................ 18

C.     A Causal Connection Existed as the Unlawful Acts Were Motivated by Defendants'
Discriminatory and Unlawful Conduct...................................................................... 19

VI.   ALTERNATIVELY, PLAINTIFF SHOULD BE AFFORDED LEAVE TO AMEND..... 21

CONCLUSION............................................................................................................. 22

CERTIFICATION OF WORD COUNT COMPLIANCE ........................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                              **Page(s)**

*Ajoku v New York State Off. of Temporary & Disability Assistance*,

   198 A.D.3d 437, 152 N.Y.S.3d 566 [1st Dept 2021] ................................................. 16

*Application Group, Inc. v. Hunter Group, Inc.*,

   (1998) 61 Cal.App.4th 881 ........................................................................................ 6

*Ashcroft v. Iqbal*,

   556 U.S. 662 (2009) ................................................................................................. 2

*Beharry v. Guzman*,

   823 N.Y.S.2d 195 (App. Div. 2nd Dept.)................................................................ 13

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544 (2007) ................................................................................................. 2

*Benitez v. Valentino U.S.A., Inc.*,

   2024 U.S. Dist. LEXIS 58224 (S.D.N.Y. Mar. 29, 2024)..................................... 10

*Bilitch v. N.Y.C. Health & Hosps. Corp.*,

   148 N.Y.S.3d 238 (App. Div. 2nd Dept.)............................................................... 13

*Buon v. Spindler*,

   65 F.4th 64 (2d Cir. 2023)....................................................................................... 12

*Callahan v. HSBC Sec. (USA) Inc.*,

   2024 U.S. Dist. LEXIS 47106 (S.D.N.Y. 2024) ................................................... 19

*Campbell v. Arco Marine, Inc.*,

   42 Cal.App.4th 1850................................................................................................. 4

*Carpenter v. City of Mount Vernon*,

   198 F. Supp.3d 272 (S.D.N.Y. 2016) .................................................................... 18

*Chambers v. Time Warner, Inc.*,

   282 F.3d 147 .......................................................................................................... 10

IV

| Case | Page(s) |
|---|---|

*Detweiler v. Robert Bump Constr., LLC*,

    2024 U.S. Dist. LEXIS 42588 (S.D.N.Y. 2024) ...................................................................... 19

*Diamond Multimedia Systems, Inc. v. Superior Court of Santa Clara County*,

    (1999) 19 Cal.4th 1036 .................................................................................................................. 6

*Diaz-Roa v. Hermes Law, P.C.*,

    2024 U.S. Dist. LEXIS 212472, at *96 (S.D.N.Y. Nov. 21, 2024)............................................ 8

*Diaz-Roa*,

    2024 U.S. Dist. LEXIS 212472, at *96 .................................................................................... 9

*DiNome v. Cordis US Corp.*,

    2024 U.S. Dist. LEXIS 149377, *13 ....................................................................................... 19

*Doolittle v. Bloomberg L.P.*,

    No. 22-CV-09136 (JLR), 2023 U.S. Dist. LEXIS 194764 (S.D.N.Y. Oct. 31, 2023) ............... 19

*Dynamex Operations West, Inc. v. Sup.Ct. (Lee)*,

    (2018) 4 C5th 903 ....................................................................................................................... 11

*Franze v. Bimbo Bakeries USA, Inc.*,

    826 F. App'x 74 (2d Cir. 2020) ............................................................................................... 10

*Harris v. Forklift Sys., Inc.*,

    510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).............................................................. 13

*Hazeldine v Beverage Media, Ltd.*,

    954 F.Supp. 697 (S.D.N.Y 1997)............................................................................................ 15

*Herskowitz v. State of N.Y.*,

    222 A.D.3d 587 (1st Dep't 2023) ............................................................................................ 17

*Hoffman v. Parade*,

    15 N.Y.3d 285 (2010) ................................................................................................................. 8

*Hudgins v. Neiman Marcus Group, Inc.*,

    (1995) 34 Cal.App.4th 1109 ....................................................................................................... 7

| Case | Page(s) |
|---|---|

*Hunter v. Barnes & Noble, Inc.*,

   2023 NY Slip Op 30638(U) (Sup. Ct.) ........................................................ 17, 20, 21

*Ibrahim v. Fid. Brokerage Servs. LLC*,

   2020 U.S. Dist. LEXIS 4264, at *14 (S.D.N.Y. Jan. 9, 2020) ................................ 15

*James v. Disney Studios Content*,

   2025 NY Slip Op 30235(U) (Sup. Ct.) ............................................................Passim

*Komorek v. Conflict Int'l, Inc.*,

   2024 U.S. Dist. LEXIS 641274 (S.D.N.Y. 2024) .................................................. 19

*La Porta v Alacra, Inc.*,

   142 A.D.3d 851, 38 N.Y.S.3d 20 [1st Dept 2016] ................................................ 16

*Littlejohn v. City of N.Y.*,

   795 F.3d 297 (2d Cir. 2015).................................................................................. 12

*McRedmond v Sutton Place Bar & Rest Inc.*,

   95 A.D.3d. 671 (1st Dep't 2021) .......................................................................... 16

*Melman v. Montefiore Med. Ctr.*,

   946 N.Y.S.2d 27 (App. Div. 1st Dept.)................................................................. 12

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,

   715 F.3d 102 (2d Cir. 2013).................................................................................. 17

*Mitchell v. Ceros, Inc.*,

   2022 U.S. Dist. LEXIS 43262 (S.D.N.Y. 2022) .................................................. 20

*Nesbeth v. N.Y.C. Mgmt., LLC*,

   2019 U.S. Dist. LEXIS 1830 (S.D.N.Y. Jan. 4, 2019)............................................ 3

NYCHRL. *Diaz-Roa*,

   2024 U.S. Dist. LEXIS 212472, at *87 ................................................................ 12

*Pakniat v. Moor*,

   145 N.Y.S.3d 30 (App. Div. 1st Dept.) .................................................................. 8

VI

**Case**                                                                                               **Page(s)**

*Palin v. New York Times Co.*,

   940 F.3d 804 (2d Cir. 2019) ................................................................................. 2

*Patane v. Clark*,

   508 F.3d 106 (2d Cir. 2007) ........................................................................... 13, 14

*People ex rel. DuFauchard v. U.S. Financial Management, Inc.*,

   (2009) 169 Cal.App.4th 1502 ............................................................................... 6

*People v. Los Angeles Palm, Inc.*,

   (1981) 121 Cal.App.3d 25 .................................................................................... 7

*Perez v. NES Med. Servs. of N.Y., P.C.*,

   203 A.D.3d 1089 ................................................................................................ 10

*Qorrolli v. Metro. Dental Assocs., D.D.S.- 255 Broadway, P.C.*,

   124 F.4th 115 (2d Cir. 2024) ............................................................................. 17

*Rackley v. Constellis, LLC*,

   2024 U.S. Dist. LEXIS 107433 (S.D.N.Y. 2024) .............................................. 18

*Ramos v Metro-N. Commuter R.R.*,

   194 AD3d 433 (1st Dep't 2021) ........................................................................ 15

*Ricciuti v. N.Y.C. Transit Auth.*,

   941 F.2d 119 (2d Cir. 1991) .............................................................................. 21

*Salahuddin v. Cuomo*,

   861 F.2d 40 (2d Cir. 1988) .................................................................................. 2

*Shapiro v. State*,

   217 A.D.3d (2d Dep't 2023) ............................................................................. 12

*Shaughnessy v. Scotiabank*,

   2024 U.S. Dist. LEXIS 57840 (S.D.N.Y. Mar. 29, 2024) ...................... 13, 18, 19

*Stoiber v. Honeychuck*,

   (1980) 101 Cal.App.3d 903 ................................................................................. 6

| Case | Page(s) |
|---|---|

*Sullivan v. Oracle Corp.*,
  (2011) 51 Cal.4th 1191 ................................................................................................ 5, 6

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506, 122 S. Ct. 992 (2002) ....................................................................... 12

*Syeed v. Bloomberg L.P.*,
  41 N.Y.3d 446 ............................................................................................................ 8, 9

*Terry v. Ashcroft*,
  336 F.3d 128 (2d Cir. 2003)...................................................................................... 13, 18

*Uttarwar v. Lazard Asset Mgmt. LLC*,
  2024 U.S. Dist. LEXIS 51499 (S.D.N.Y. Mar. 22, 2024)...................................... 12

*Ward v. Cohen Media Publ'ns LLC*,
  2023 U.S. Dist. LEXIS 147806 ................................................................................ 10

*Ward v. Cohen Media Publ'ns LLC*,
  2023 U.S. Dist. LEXIS 147806 (S.D.N.Y. Aug. 21, 2023) ....................................... 2

*Ward v. United Airlines, Inc.*,
  (2020) 9 Cal.5th 732 .................................................................................................... 5

*Ward*,
  2023 WL 5353342 ....................................................................................................... 13

*Wilkinson v. Times Mirror Corp.*,
  (1989) 215 Cal.App.3d 1034 ....................................................................................... 7

*Wooding v. Winthrop University Hospital*,
  2017 WL 2559942 (E.D.N.Y. 2017) ........................................................................ 20

| Statutes | Page(s) |
|---|---|

Cal. Lab Code § 1171(a) ................................................................................................. 5

California Business & Professions Code § 17200 ................................................... 6, 7

California Labor Code § 1171.5 ................................................................................................. 5

N.Y. Exec. Law § 296(1)(h) ................................................................................................... 13

N.Y. Exec. Law § 296-d ........................................................................................................ 18

N.Y. Exec. Law § 300 ............................................................................................................ 13

**Rules**                                                                                                  **Page(s)**

Fed. R. Civ. P. 15(a) .............................................................................................................. 21

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1, 2

**Other Authorities**                                                                                       **Page(s)**

N.Y.C. Admin. Code § 8-107 ................................................................................................. 15

N.Y.C. Admin. Code § 8-109(23) .......................................................................................... 18

## **PRELIMINARY STATEMENT**

Plaintiff, Emilio Garcia ("Plaintiff"), by and through counsel, Valiant Law and West Coast Trial Lawyers, APLC, respectfully submits this Memorandum of Law in Opposition to Defendants Megan Thee Stallion a/k/a Megan Pete ("Pete"), Hot Girl Touring, LLC, and Megan Thee Stallion Entertainment, Inc.'s (together herein, "Defendants"), Memorandum of Law in Support of their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

This case stems from egregious sexual harassment Plaintiff faced while working for Defendants.  Plaintiff, an employee or Pete, was trapped in a vehicle with his boss while she engaged in group sex with other women.  Plaintiff was humiliated, horrified and disturbed by this act.  Yet Defendants go to great lengths to justify, diminish, and altogether explain away what unquestionably constituted unlawful sexual harassment.  Plaintiff opposed the unlawful acts, yet was met with a campaign of further harassment and retaliation, which accelerated and culminated in the unlawful termination of his employment.

Defendants' pre-answer motion should be denied. Plaintiff alleged specific facts which unequivocally established viable discrimination, retaliation, and wage claims. At best, any arguments raised by Defendants relate to issues of fact, which must be denied at the pleading stage. Defendants' pre-answer motion should be denied at this early juncture because Plaintiff has not had an opportunity for complete discovery or depositions.  Indeed, the existence of essential facts depends upon knowledge exclusively within Defendants' or non-parties' possession which might be disclosed in discovery.

## ALLEGATIONS AND FACTUAL BACKGROUND

For sake of brevity for the Court, in lieu of a complete recitation of the factual background and allegations, Plaintiff incorporates, and respectfully refers to, the First Amended Complaint ("FAC") (*see* Dkt. No. 88).

## LIBERAL PLEADING STANDARD

When a party moves to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6), the standard is whether the allegations of the Complaint, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Importantly, the Complaint need not assert "detailed factual allegations," but must simply allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. In applying these liberal pleading standards, Plaintiff has certainly pleaded all causes of action.

## ARGUMENT

### I. DEFENDANTS FAILED TO MOVE UNDER RULE 8(A) AND IGNORED THE NOTICE PLEADING STANDARD

As a threshold matter, Defendants moved to dismiss solely under Rule 12(b)(6), yet argue the FAC should be dismissed due to alleged "group pleading." Their failure to move under Rule 8(a) alone renders this argument futile.

Further, notwithstanding the FAC does not utilize improper "group pleading," referencing "Defendants" as a group is not grounds for dismissal if the complaint's allegations, "still put[] the [] Defendants on notice 'of what the claim is and the ground upon which it rests.'" *Ward v. Cohen Media Publ'ns LLC*, 2023 U.S. Dist. LEXIS 147806, at *23 (S.D.N.Y. Aug. 21, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint should only be dismissed for violating Rule 8 when it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

The FAC alleges all Defendants were joint employers of Plaintiff and/or alter egos of one another and shared control over Plaintiff. (FAC ¶¶ 11 – 14.)  The FAC undoubtedly complies with Rule 8 because it exceeds a short and plain statement of the Plaintiff's claim to put Defendants on notice of the claims and the grounds upon which they rest.  Defendants' reliance on *Nesbeth v. N.Y.C. Mgmt., LLC*, 2019 U.S. Dist. LEXIS 1830 (S.D.N.Y. Jan. 4, 2019) is misplaced.  In that case, plaintiff's complaint contained "little coherence to the allegations" against 21 defendants – a stark contrast from the specific allegations here in the FAC.  *Nesbeth* is further distinguishable from the instant matter because the *Nesbeth* defendants moved for dismissal on this ground under Rule 8(a).

## II.  THE CALIFORNIA AND NEW YORK DISCRIMINATION CLAIMS ARE PROPERLY PLEAD AS HARM OCCURRED IN BOTH LOCATIONS

Defendants first moved to transfer this case from California to New York. Now, Defendants improperly attempt to use a choice of law provision as both a sword and a shield to leave Plaintiff without protection under the law.  Defendants cannot and should not have it both ways.

Defendants argue that Plaintiff's California claims should be dismissed because Plaintiff is a non-resident and California law does not apply extraterritorially. However, Plaintiff respectfully asserts that California law squarely applies to the claims arising from unlawful acts that occurred within the state, regardless of Plaintiff's Texas residency. California has a well-established interest in regulating conduct that takes place within its borders, particularly in employment-related matters, and this is not diminished by the plaintiff's place of residence. The California Fair Employment and Housing Act (FEHA), Labor Code, and Business and Professions Code provide robust protections to employees working in California, irrespective of where they live. Plaintiff has clearly demonstrated that Defendants, with significant ties to California—both in terms of business operations and the specific actions taken within the state—engaged in unlawful practices that merit redress under California law. As such, Defendants' attempt to evade California's jurisdiction and its laws must be rejected, and Plaintiff's claims should proceed in the California courts to hold Defendants accountable for their actions within the state.

3

**A. FEHA Has Jurisdiction Over Acts That Occurred in California**

**<u>Regardless of Whether the Victim is a Non-Resident</u>**

The California Fair Employment and Housing Act (FEHA) has jurisdiction over discriminatory acts that occur within California, even if the victim is a non-resident visiting the state. The FEHA does not impose a residency requirement on either the employer or the person aggrieved. *Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850, 1859. This means that FEHA can apply to discriminatory acts committed within California's territorial boundaries, regardless of the residency status of the victim. However, courts have drawn a line excluding non-residents from FEHA's protections when the tortious conduct occurs *outside* California, emphasizing that "the FEHA was not intended to apply to non-residents where, as here, the tortious conduct took place out of this state's territorial boundaries" (*Id*. at 1852). As such, **<u>the application of FEHA is not precluded when tortious acts occur in California to non-residents</u>**. *Campbell*, (1996) 42 Cal.App.4th at 1859-60.

Here, Plaintiff has sufficiently alleged that Defendants engaged in unlawful conduct in California. Plaintiff was required to accompany Defendant Pete to multiple strip clubs **in California as part of his job duties.** (FAC ¶ 35). Further, Plaintiff was employed in California for substantial periods, suffering harm in the state. (FAC ¶ 32). Additionally, Plaintiff lost work opportunities in Los Angeles due to interference by Defendants. (FAC ¶¶ 112-116).

Moreover, Plaintiff's employers Defendant Roc Nation LLC has a principal place of business located at 953 N. Sycamore Ave, Los Angeles, CA 90038. (FAC ¶ 6). And Defendant Megan Thee Stallion a/k/a Megan Pete resides in Los Angeles County and is an owner and principal of Hot Girl Touring, LLC and Megan Thee Stallion Entertainment, Inc. (FAC ¶ 9). Pete had the authority to direct the manner in which Plaintiff carried out his duties and did, in fact, exercise that authority. (FAC ¶ 9). Additionally, Defendants share a common business purpose, location, and management, acting as a unified operation to their mutual advantage. (FAC ¶¶ 10-12).

Accordingly, Plaintiff has sufficiently alleged facts establishing that unlawful employment practices occurred in California, subjecting Defendants to FEHA.

**B.  The California Labor Code Protects Employees Who Work in California Yet Reside Outside of California**

The Supreme Court of California has held that California's Labor Code, including overtime provisions, apply to work performed in California by nonresidents. *Sullivan v. Oracle Corp*. (2011) 51 Cal.4th 1191, 1206 (concluding that the California Labor Code's overtime provisions apply to nonresident employees for work performed in California). California Labor Code § 1171.5 explicitly states that all protections, rights, and remedies available under state law are available to all individuals employed in California, regardless of their immigration status, which implies that residency in another state does not disqualify an employee from these protections.[1] Further, workers are covered if they perform the majority of their work in California; but if they do not perform the majority of their work in any one state, they will be covered if they are based for work purposes in California. *Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 755–756.

Here, Plaintiff's employment in California entitles him to protections under the California Labor Code. Plaintiff worked in California on multiple occasions and was required to perform duties within the state under the direction of Pete and the corporate Defendants. (FAC ¶¶ 6-10, 32). Further, Plaintiff was subjected to Defendants' unlawful pay structure, including being misclassified as an independent contractor in violation of the California Labor Code. (FAC ¶¶ 123-137).

Defendants, as a unified business operation, exercised significant control over Plaintiff's employment. (FAC ¶¶ 6, 9-14). Defendant Pete maintained authority over Plaintiff's work and compensation. (FAC ¶¶ 9, 10). The corporate Defendants, sharing employees and management, jointly engaged in unlawful labor practices. (FAC ¶¶ 11-12). Plaintiff regularly worked over forty (40) hours per week and was required to work in excess of fifty (50) hours per week under Pete's

---

[1]        "All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state." Cal. Lab Code § 1171(a).

close scrutiny. (FAC ¶¶ 132, 246). Plaintiff's job duties did not qualify him as exempt for overtime purposes, yet he was denied overtime pay. (FAC ¶¶ 15, 140-142). Additionally, Plaintiff was denied meal and rest breaks and was not compensated properly due to inaccurate timekeeping by Defendants. (FAC ¶¶ 139, 144-145, 249).

As California law applies to work performed within the state, Plaintiff's sufficiently alleged claims under the California Labor Code must proceed.

### C.  The California Business and Professions Code Applies to Unlawful Acts Done in California to Non-Residents

California law may govern the conduct and activities occurring exclusively in California, even if the parties involved are not California residents. A*pplication Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 905 (concluding employees of California-based employers, performing services for California-based customers, are employed in California and, thus, engaged in a business or profession in California so as to enjoy the protection of the California Business and Protection Code). Any presumption against extraterritoriality does not preclude the application of California law to conduct that occurs in California, even where that conduct involves non-California residents. *People ex rel. DuFauchard v. U.S. Financial Management, Inc.* (2009) 169 Cal.App.4th 1502, 1518; *see Diamond Multimedia Systems, Inc. v. Superior Court of Santa Clara County* (1999) 19 Cal.4th 1036, 1059. Moreover, as previously mentioned, California's labor laws as applied to work performed in California by nonresidents, reinforce California's interest in regulating activities within its border. *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1206.

California Business & Professions Code § 17200 expresses California public policy against unfair competition and prohibits "wrongful business conduct in whatever context such activity might occur." *Application Group, Inc.*, 61 Cal.App.4th at 905 (quoting *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 927). California courts have recognized that an employer's business practices concerning its employees are within the scope of section 17200. *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1126; *Wilkinson v. Times Mirror Corp.* (1989) 215 Cal.App.3d 1034, 1052; *People v. Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 32–33.

Defendants engaged in unlawful business practices within California, including, among things, misclassifying Plaintiff and failing to provide proper wages and benefits. (FAC ¶¶ 226-252). Defendants also interfered with Plaintiff's ability to obtain employment in California, thereby violating California public policy. (FAC ¶¶ 112-116).

Given that Defendants operate as a single enterprise within California, as previously mentioned, their conduct is subject to California law.

To conclude, Plaintiff has sufficiently alleged that unlawful acts occurred in California and that Defendants have significant ties to the state. California law applies to conduct occurring within its borders, regardless of the plaintiff's residency. Accordingly, Defendants' Motion to Dismiss Plaintiff's California claims must be denied.

D.  **The New York Claims are Proper as Harm Occurred in New York**

Defendants claim the "FAC's only connection to this State is the New York Incident" referencing allegations of unlawful conduct that occurred in a New York City strip club," but concedes the New York claims should survive: "[Plaintiff's] New York claims should be limited to the New York incident." (Motion at p. 10).   However, Defendants ignores unequivocal allegations that Plaintiff spent a substantial amount of time working in New York— he was in New York at least once per month and sometimes spent weeks working for Defendants in New York. (FAC ¶ 32.)  Following the Ibiza incident, Plaintiff was subjected to inferior terms and conditions of employment by Defendants, since he went from working for Defendants every week and sometimes seven days per week, to working much less (including less work in New York). (*Id.* ¶¶ 82 – 84.) "This had a direct impact on Plaintiff's compensation, and failure to book Plaintiff certainly negatively impacted the terms and conditions of his employment." (*Id.* ¶ 85.)  In other words, since Plaintiff spent a substantial amount of time working in New York, Defendants' unlawful acts deprived him of opportunities to work and earn compensation in New York State and New York City.

Defendants mistakenly argue New York law does not apply "extraterritorially" and does not "protect nonresident[s]." Toward this end, Defendants misapply a myriad of cases, including

*Hoffman v. Parade Pubs*., 15 N.Y.3d 285 (2010), which established the "impact test." However, this test did not exclude nonresidents from the protection of the NYSHRL and NYCHRL. Rather, it expanded these protections to cover non-residents who work within these jurisdictions. *Id.* at 290. The *Hoffman* plaintiff was a Georgia resident who attended quarterly work meetings in New York City—which the Court held was too "tangential." *Id* at 288.

In 2024, however, the New York Court of Appeals expanded the *Hoffman* test further in *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452. The Court held, "the City and State Human Rights Laws protect nonresidents who proactively sought an actual New York City- or State-based job opportunity." In that case, the Court of Appeals, reviewed the question from the Second Circuit and expanded the definition of "inhabitants" and "individuals within this state" to include a "**prospective inhabitant or employee**," and thus more in line with the required liberal constriction of the NYSHRL and NYCHRL *Id*. at 453.

Alternatively, a nonresident may satisfy the impact requirement by showing they were working in New York, as Plaintiff did here. *Id*. at 452. In a recent application of the impact test to afford a nonresident touring actor by a New York City based production company protections under the NYSHRL and NYCHRL, the trial court recognized the need for a "more flexible 'impact' test given the expanded 'diaspora of remote workers, many of them laboring in other states for New York firms." *James v. Disney Studios Content*, 2025 NY Slip Op 30235(U), ¶ 3 (Sup. Ct.) (quoting *Pakniat v. Moor*, 2021 145 N.Y.S.3d 30, 31 (App. Div. 1st Dept.)); *see also, Diaz-Roa v. Hermes Law, P.C.*, 2024 U.S. Dist. LEXIS 212472, at *96 (S.D.N.Y. Nov. 21, 2024)(denying defendant's motion to dismiss plaintiff's claims of sexual harassment under the NYSHRL and NYCHRL when plaintiff alleged, "the impact of the harassment was felt in New York when [defendants] encouraged Plaintiff to flirt to attract potential clients or use her appearance to attract business, often while she worked remotely in New York [ ] and when [defendants] directed Plaintiff to fix her makeup and accused her of looking tired in front of other [defendants'] employees while on remote calls from her New York workspace.")(internal quotations omitted).

Here, Plaintiff must be afforded protection of the law because he satisfies the impact test in two independent ways. First, Plaintiff was a nonresident working in New York (FAC ¶¶ 32, 35) who experienced unlawful discrimination in New York (*id*. ¶ 44). This alone establishes sufficient contact with New York. *Syeed,* 41 N.Y.3d at 452.

Second, and like the plaintiff in *Disney Studios Content*, 2025 NY Slip Op 30235(U), ¶ 3 (Sup. Ct., NY County 2025), Plaintiff satisfied the alternate avenue of the impact test because he was unlawfully deprived of future opportunities to work in New York (*id*. ¶¶ 82-85) by Defendants, who are alleged to be based in New York (*id*. ¶ 105). Thus, Plaintiff's claims should not be limited to the New York incident (FAC ¶¶32-46) because Defendants unlawful acts of discrimination and retaliation deprived him of future opportunities working in New York, which has had an impact on New York because "The State and the City [of New York] are deprived of economic and civic contributions from individuals discriminatorily denied the opportunity to work in New York, along with the more diverse workforces and communities that the individuals would advance." *Syeed* 41 N.Y.3d at 454. Plaintiff's contacts with New York are regular and frequent – monthly (FAC ¶ 32) – more than enough to be satisfy the impact test. *See Diaz-Roa,* 2024 U.S. Dist. LEXIS 212472, at *96 (where the plaintiff satisfied the impact test by alleging she occasionally or "often" worked remotely in New York).

Thus, Plaintiff's New York claims are proper as Plaintiff alleged he worked in New York, and Defendants' unlawful acts deprived him of opportunities to work in New York.

## III. PLAINTIFF WAS MISCLASSIFIED AS AN INDEPENDENT CONTRACTOR

Defendants claim Plaintiff was not an employee because a contract regarding his work vaguely stated he was an "independent contractor." Such desperate reliance on an agreement to establish independent contractor status is contrary to both New York and California Law.

### A. Extrinsic Evidence Should Not Be Considered

First, the Agreement is extrinsic evidence which the Court should not consider because Plaintiff did not rely on the Agreement in drafting the FAC, even if it was mentioned. *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153. In fact, Defendants admit "he had full knowledge of it,

signed it, and presumably retained a copy of it" (Pete Motion at n. 9), but they do not state he relied upon it. Indeed, it is not contained within the four corners of the FAC, nor is it attached. Defendants do not even know if Plaintiff has possession of the Agreement, and even so, possession is insufficient to consider the Agreement "integral" to the pleading. *Chambers*, 282 F.3d at 154 ("[W]e reiterate here that a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original).

**B. <u>Plaintiff was Misclassified Under New York Law</u>**

Further, even if the Court could consider (which it should not) it is well-settled the Agreement is not dispositive in determining whether Plaintiff was misclassified as an independent contractor. *Perez v. NES Med. Servs. of N.Y., P.C.*, 203 A.D.3d 1089, 1090; *see also Ward v. Cohen Media Publ'ns LLC*, 2023 U.S. Dist. LEXIS 147806, *17. Instead, the Court must consider the following factors to determine whether a worker is an employee or independent contractor under the NYLL: "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 79 (2d Cir. 2020) (internal quotations and citations omitted). At a minimum, the FAC (and even considering the Agreement) presents an issue of fact which is sufficient to preclude summary judgment, much less serve as the basis for dismissal under Rule 12(b)(6). *Benitez v. Valentino U.S.A., Inc*., 2024 U.S. Dist. LEXIS 58224, at *24 (S.D.N.Y. Mar. 29, 2024).

Here, the FAC sets forth claims from which the Court can reasonably infer Plaintiff was an independent contractor under the NYLL's five-part test. Plaintiff did not work for his own convenience as Defendants exercises substantial control over Plaintiff (FAC ¶¶ 10-12, 14, 23, 127-129, 133, 137, 140, 144, 187); Plaintiff was not free to engage in other employment (*id.* ¶¶ 86, 95, 111, 187); Plaintiff received fringe benefits (*id.* ¶¶ 32, 187); Plaintiff was on Defendants' payroll (*id.* ¶¶ 85, 94, 135, 187); and Plaintiff was on a fixed schedule (*id.* ¶¶ 88, 130, 131, 187), among other allegations regarding Defendants control over his work.

### C.  Plaintiff was Misclassified under California Law

Now infamously, California's ABC test trumps any contractual attempt otherwise.  To determine whether a worker is an employee or instead an independent contractor for claims asserted under a California Wage Order, the California Supreme Court adopted the simplified "ABC" test. The burden is placed on the business to prove that the worker is an independent contractor rather than an employee. If the business fails to satisfy each prong of the test, the worker will be presumed to be an employee.  (*Dynamex Operations West, Inc. v. Sup.Ct. (Lee)* (2018) 4 C5th 903, 916-917, 956-957.)

Pursuant to Labor Code § 2775 et seq., Defendants must establish three factors: (A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) the worker is customarily engaged in an independently-established trade, occupation, or business of the same nature as the work performed.

The moving party does nothing to address the required burden under the ABC test that Plaintiff is legally an independent contractor under Labor Code § 2775 et seq – not even citing *Dynamex* or the pertinent statutory scheme. Based thereon, any argument Plaintiff is legally an independent contractor should by dismissed out of hand, and Motion to Dismiss should be dismissed.

Thus, Plaintiff's New York and California wage-related claims are proper, and Defendants' motion should be denied

### IV.  PLAINTIFF STATED CLAIMS UNDER THE NYSHRL and NYCHRL

Defendants posit that Plaintiff has failed to state a claim for discrimination.  This is wrong. Tellingly, Defendants cunningly rely on cases decided at the summary judgment stage, not the pleading stage. *See e.g., Shapiro v. State*, 217 A.D.3d 70 (2d Dep't 2023); *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27 (App. Div. 1st Dept.); *Uttarwar v. Lazard Asset Mgmt. LLC*, 2024 U.S. Dist. LEXIS 51499 (S.D.N.Y. Mar. 22, 2024).  In doing so, Defendants wrongly imputed a

heightened bar upon Plaintiff's claims, inappropriate at the Motion to Dismiss stage.  Rather, Plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.,* 795 F.3d 297, 316 (2d Cir. 2015).

Recently, the Second Circuit issued a clear warning about imputing a heightened burden on a plaintiff's discrimination claim at the Motion to Dismiss stage in *Buon v. Spindler*, 65 F.4th 64, 83 (2d Cir. 2023), where the Court held:

> [W]e have cautioned courts to be mindful of the elusive nature of intentional discrimination when making a plausibility determination at the motion-to-dismiss phase [b]ecause discrimination claims implicate an employer's usually unstated intent and state of mind…

(internal quotations and citations omitted).  Certainly, a plaintiff need not establish a prima facie case of discrimination to survive a motion to dismiss since this is an evidentiary standard, not a pleading requirement.  *Id.* at 79 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 997 (2002)).  Indeed, it is difficult to establish a prima facie case before the parties engage in discovery, including depositions[2]. *Swierkiewicz,* 534 U.S. at 512.

Instead, Plaintiff only needs to plead he was subject to inferior terms and conditions of employment because of his membership in one or more protected classes under the NYSHRL and that he was treated less well than others under the NYCHRL.  *Diaz-Roa,* 2024 U.S. Dist. LEXIS 212472, at *87. "Because the standard under the NYCHRL is uniquely lenient, courts analyze discrimination claims under the NYCHRL 'separately and independently' from claims under the [federal standards]. *Ward*, 2023 U.S. Dist. LEXIS 147806, 2023 WL 5353342, at *9. Similarly, the 2019 amendments to the NYSHRL relaxed a plaintiff's burden, instructing courts to construe provisions liberally to accomplish the remedial purposes of the NYSHRL. *See* N.Y. Exec. Law § 300." *Shaughnessy v. Scotiabank*, 2024 U.S. Dist. LEXIS 57840, at *24 (S.D.N.Y. Mar. 29, 2024).

Since the FAC undoubtedly meets these standards, Defendants' motion to dismiss should be denied.

---

[2]      In fact, in a deliberate effort to frustrate the prosecution of Plaintiff's claims, Pete has refused to appear for her deposition, as originally noticed to be taken on February 26, 2025, and Plaintiff has not yet received responses to his discovery requests.

**A.  Being Forced to Watch Megan Thee Stallion's Orgy is Sexual Harassment**

Disturbingly, Defendants go to great lengths to diminish Plaintiff's allegations and attempt to argue that **an employer having sex in front of an employee trapped against their will somehow is not severe enough to constitute sexual harassment**. Such an argument is shameful.

In fact, there is no longer a requirement to allege conduct was "severe or pervasive" to set forth a harassment claim under the NYSHRL. N.Y. Exec. Law § 296(1)(h).  In fact, "[e]ven a single incident of sexual harassment can create a hostile work environment if the alleged conduct is sufficiently severe." *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 245 (App. Div. 2nd Dept.) (quoting *Beharry v. Guzman*, 823 N.Y.S.2d 195, 197 (App. Div. 2nd Dept.)). A plaintiff must allege they were treated less well than other employees because of their protected characteristics.  148 N.Y.S.3d at 245.  The Court must examine the "totality of the circumstances" to determine whether a hostile work environment exists in the context of sexual harassment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). To survive dismissal, the FAC must plead facts to support an inference that the harassment was "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).  The Second Circuit has repeatedly warned against setting the bar too high in this context. *Id.*

Further, a plaintiff need not allege that discriminatory conduct was specifically aimed at plaintiff because of their protected characteristics, only that they suffered a hostile work environment because of same.  *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) ("discriminatory behavior not directed at plaintiff can still contribute to the creation of an overall hostile work environment") (internal quotations and citations omitted).  Plaintiff need only plead facts to allow the Court to find that the alleged conduct was offensive and intended to provoke the plaintiff's reaction as a member of that class.  *Id.* at 114-15.

Plaintiff is a gay man and not attracted to women. (FAC at ¶ 34.) Pete compelled Plaintiff to go to strip clubs and be around women, which he did out of duties to his employer, not for his pleasure or benefit. (*Id.* ¶ 35.) Pete harbored animus against Plaintiff as a gay man evidenced by

comments like calling him a "bitch" (*id.* ¶¶ 75, 101, 103, 104) and suggested that Plaintiff's relationship with his boyfriend made him a "lazy bitch." (*Id.* ¶ 103.) Pete did not accuse others who were outside of Plaintiff's protected classes of being a "lazy bitch" because of their personal relationships and sexual orientation. After Plaintiff engaged in a friendly exchange with a female stripper (FAC ¶ 41) Pete discriminated against him by eliciting a response from Plaintiff (*id.* ¶ 40) to provoke his response as a gay man, expressed a sinister look (*id.* ¶ 42) and ignored Plaintiff the remainder of the night. (*Id.* ¶¶ 43 – 44.)  This contributed to the hostile work environment (*id.* ¶ 46) because Plaintiff suffered embarrassment, humiliation, and shame, which others outside of his protected classes did not suffer.  *Patane*, 508 F.3d at 114.

This same hostile working environment permeated the employer/employee relationship and was the predicate for the unlawful acts which took place in Ibiza  (FAC ¶¶ 47 – 81) along with all subsequent acts and omissions, including depriving Plaintiff of future opportunities to work in New York.  When Pete, who is female, began to take part in group sex with other women in front of Plaintiff, who is a gay man, it made him "extremely uncomfortable, disgusted, and in disbelief." (*Id.* ¶ 64) unquestionably subjecting him to inferior terms and conditions of employment.  Pete knew Plaintiff's gender and sexuality and would not have engaged in group sex with other women in front of a heterosexual male.  In other words, Pete felt comfortable engaging in group sex with other woman in front of Plaintiff *because* of Plaintiff's sexuality and gender – unlawful conduct directed at Plaintiff *because* of his protected classes.  In the alternative, Pete engaged in group sex with other women in front of Plaintiff intending to provoke his reaction as a gay man as she had sought his reaction from the stripper in New York. (*Id.* ¶ 40.) Pete did, in fact, elicit a reaction as Plaintiff was uncomfortable and opposed the acts (*id.* ¶¶ 65, 73, 78) which resulted in further humiliation, targeted harassment, and inferior terms and conditions of employment.  (*Id.* ¶¶ 74-86.)

The FAC, which must be construed as true and liberally, undoubtedly established Pete harbored animus against Plaintiff as a gay man and engaged in unlawful sexual harassment.

**B.  Plaintiff was Subjected to Disability and Weight Discrimination**

Plaintiff suffers from eating disorders and struggles with his weight. (FAC at ¶ 28.)  Under the NYCHRL, it is unlawful to discriminate against an employee because of their weight.  N.Y.C. Admin. Code § 8-107. Like the NYSHRL, unequal treatment and discriminatory comments are sufficient to prove discrimination under NYCHRL. *See Ramos v Metro-N. Commuter R.R.*, 194 AD3d 433, 434 (1st Dep't 2021).  Additionally, both the NYCHRL and NYSHRL provide extremely broad definitions of "disability." *See, e.g., Hazeldine v Beverage Media, Ltd.*, 954 F.Supp. 697 (S.D.N.Y 1997); N.Y.C. Admin. Code § 8-107(20). As such, Plaintiff was considered "disabled" under all applicable law because of his eating disorder.  Not unlike a sexual harassment claim where "unwanted comments about an employee's attractiveness and appearance have an exclusionary effect in the workplace and constitute unequal treatment," *Ibrahim v. Fid. Brokerage Servs. LLC*, 2020 U.S. Dist. LEXIS 4264, at *14 (S.D.N.Y. Jan. 9, 2020), fatphobic comments can have an exclusionary effect on employees and constitute unlawful harassment.

Plaintiff properly pled claims for disability discrimination under the NYSHRL and NYCHRL and also discrimination based on weight under the City law.  Plaintiff suffered from eating disorders and struggles with his weight (FAC at ¶ 28), Defendants knew, as Plaintiff disclosed his condition to Pete (*id.*) and Plaintiff was subject to inferior terms and conditions of employment because of his disability by not being able to eat in Pete's presence. (*Id.* at ¶¶ 26-27.) Pete further discriminated against Plaintiff by openly shaming him for eating with comments such as, "***Are you really eating that you fucking fat bitch? Spit that shit out!***" (*id.* at ¶ 75) and "***why are you still chewing? Spit that shit out***" (*id.* at ¶ 77) and then leaving Plaintiff no choice but to leave the dinner party in shame and humiliation. (*Id.* at ¶ 78.)  Pete knew about Plaintiff's eating disorder and insecurity about his weight (*id.* at ¶ 28) yet unlawfully used this against him by openly berating him. Pete's unlawful animus permeated the employment relationship with Plaintiff subjecting him to inferior terms and conditions of employment in New York by prohibiting him to eat in her presence (*id.* at ¶¶ 26-27) as Plaintiff spent a substantial amount of time working in New York, on at least a monthly basis and sometimes staying for weeks at a time. (*Id.* at ¶ 32.)

Additionally, even the comments made in Spain support an inference of discrimination based on weight/disability as Plaintiff's work assignments significantly fell off immediately afterwards (*id.* at ¶¶ 82 – 85) thus depriving him of the ability to continue earning compensation for work performed in New York.

Thus, Pete harbored animus against Plaintiff based on his actual and/or perceived disabilities and/or weight.  Based on this unlawful animus, Defendants subjected Plaintiff to inferior terms and conditions of employment and deprived him of the opportunities to continue to work in New York.

## C.  Defendants' Aided and Abetted the Discriminatory and Unlawful Conduct

In passing, Defendants briefly argue for dismissal of the aiding and abetting claims in reliance on dismissal of the underlying discrimination claims. (Pete Motion at pp.17 – 18). Defendants' argument fails, however, they concede some claims should survive: "[Plaintiff's] New York claims should be limited to the New York incident." (*id.* at p. 10)

Moreover, any person or entity who is aware of discriminatory conduct and does nothing to stop it is liable for aiding and abetting discrimination under the NYSHRL. *See McRedmond v Sutton Place Bar & Rest Inc*. 95 A.D.3d. 671, 673 (1st Dep't 2021). Stated differently, "A plaintiff states a cause of action for aiding and abetting under the NYSHRL…by sufficiently stating an underlying claim for discrimination under the statute (*see La Porta v Alacra, Inc*., 142 A.D.3d 851, 853, 38 N.Y.S.3d 20 [1st Dept 2016]) and by sufficiently alleging that the individual was aware of and condoned discriminatory conduct (*see Ajoku v New York State Off. of Temporary & Disability Assistance*, 198 A.D.3d 437, 438, 152 N.Y.S.3d 566 [1st Dept 2021]." *Hunter v. Barnes & Noble, Inc*., 2023 NY Slip Op 30638(U), ¶ 8 (Sup. Ct.) (citations in original).

In the alternative, Defendants argue for dismissal because a party cannot aid and abet their own behavior.  (*Id.* at pp. 17-18.)  While this may be true, the argument is inapplicable as Plaintiff does not allege any Defendant aided and abetted their own behavior, but rather, Defendants were aware of each other's unlawful acts and ratified same, constituting aiding and abetting. (FAC ¶ 105.)

## V. **PLAINTIFF'S RETALIATION CLAIMS ARE PROPER**

Defendants argue that the retaliation claims under the NYSHRL, NYCHRL, and NYLL §§ 740 and 215 should all be dismissed. However, Defendants misconstrue the law, conflate old standards with present ones, and confuse the minimal burden Plaintiff must overcome at the pleadings stage with a heightened standard more appropriate for summary judgment. None of Defendants' attempts at a sleight of hand should persuade the Court.

### A. **The Retaliation Claims Must Be Liberally Construed**

Defendants cite bad case law to claim the NYSHRL required "but-for" causation (Motion at p. 18). They intentionally ignored this standard was abandoned when the NYSHRL was amended in 2019 to align with the NYCHRL's more liberal standard. *Qorrolli v. Metro. Dental Assocs., D.D.S.- 255 Broadway, P.C.,* 124 F.4th 115, 122 (2d Cir. 2024). Thus, the appropriate standard to state a claim of retaliation under the NYSHRL or NYCHRL, "a plaintiff claiming retaliation must demonstrate 'that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'" *Id. (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 112 (2d Cir. 2013)). Plaintiff easily met this burden, and especially at the pleading stage, discrimination plaintiffs are afforded deference and held to a lenient notice pleading standard. *Herskowitz v. State of N.Y.,* 1, 222 A.D.3d 587, 588 (1st Dep't 2023).

To establish an adverse employment action, a Plaintiff must show that a reasonable employee would have been "dissuaded . . . from making or supporting a charge of discrimination." *Rackley v. Constellis, LLC*, 2024 U.S. Dist. LEXIS 107433, *91 (S.D.N.Y. 2024). Examples include many of the same facts alleged here in the FAC, such as termination of employment, decrease in wage or salary, material loss of benefits, diminution of responsibilities, amongst others. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). Indeed, the standard for proving a retaliation claim is "substantially lower than discrimination claims." *Rackley*, at *91 (quoting *Carpenter v. City of Mount Vernon*, 198 F. Supp.3d 272, 283 (S.D.N.Y. 2016)).

17

Moreover, even if the Court finds that Plaintiff was not an "employee" of Defendants (which he was), he is nevertheless entitled to protection under the NYSHRL which covers "non-employees" and "contractor[s]" (N.Y. Exec. Law § 296-d) as well as the NYCHRL which covers "independent contractors." (N.Y.C. Admin. Code § 8-109(23)) *see also, Shaughnessy v. Scotiabank*, 2024 U.S. Dist. LEXIS 57840, at \*24 (S.D.N.Y. Mar. 29, 2024).

As described below, Plaintiff objected to violations of the NYSHRL and NYCHRL when he complained to Defendants about unlawful discrimination and harassment to which they were subjecting Plaintiff based on his status as a gay man, and/or based on his weight, disability, and/or perceived disability, and thus the retaliation claims are proper.

### B. NYLL §§ 740 and 215 Provide Expansive Employee Protections

Defendants scarcely mention the NYLL retaliation laws, but feebly requested dismissal. In fact, each reference to the NYLL in this regard is only found parenthetical citations or footnotes. Defendants argue Plaintiff's claims are "conclusory," yet in contradiction, fail to provide any meaningful support, much less a good faith argument for dismissal of these claims. Indeed, Defendants failed to provide any analysis or legal authority on the NYLL retaliation claims, much less provide a basis for dismissal (likely due to the expansive protections and remedial nature of the recently amended NYLL § 740).

In January 2022, New York's legislature amended NYLL § 740 to expand coverage for both employees, independent contractors, and other non-employees. NYLL § 740(1)(a). It prohibits retaliation when plaintiff "discloses or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation…" NYLL § 740(2)(a) (emphasis added); *See also, DiNome v. Cordis US Corp*., 2024 U.S. Dist. LEXIS 149377, \*13 ("Courts in this District have suggested that to state a plausible a claim, the plaintiff is only required to demonstrate she had a good faith, reasonable belief that the employer was engaging in a practice that was unlawful."). Further, a plaintiff does not require an actual violation to have occurred. *Komorek v. Conflict Int'l, Inc*., 2024 U.S. Dist. LEXIS 641274 at \*18 (S.D.N.Y. 2024) (internal quotations omitted). The 2022

amendment also expanded the scope to include both actual adverse actions as well as the threat of same. NYLL § 740(1)(e). As described below, and in the FAC, Plaintiff made several complaints about Defendants' acts and omissions which he reasonably believed violated laws, rules, and regulations.

Similarly, NYLL § 215(1)(a) prohibits an employer from retaliating against an employee for making a complaint they reasonably believe to be a violation of the labor law. *See* NYLL § 215(1)(a). A plaintiff need not cite to a specific statute but rather, the complaint must be of a "colorable violation" of the law. *Detweiler v. Robert Bump Constr., LLC*, 2024 U.S. Dist. LEXIS 42588, at *14 (S.D.N.Y. 2024). As alleged in his FAC, Plaintiff repeatedly objected to Defendants' unlawful withholding of his wages—compensation which Plaintiff was entitled to receive. (*see e.g.,* NYLL §§ 190, 193 which protect rights involving compensation); (FAC ¶¶ 102, 179).

### C. A Causal Connection Existed as the Unlawful Acts Were Motivated by Defendants' Discriminatory and Unlawful Conduct

As established in the FAC, a causal connection is found when there is close temporal proximity between complaints and the adverse employment action(s).[3] In *Callahan v. HSBC Sec. (USA) Inc.*, 2024 U.S. Dist. LEXIS 47106, *3 (S.D.N.Y. 2024), the plaintiff made complaints under NYLL § 740 between September 2021 and February 2022 and suffered adverse employment actions in the form of a failure to promote in December 2021, withholding of bonus in March 2022, and termination of his employment in April 2022. The Court found there was temporal proximity sufficient to establish a causal connection. *Id*. at *19-20. Additionally, allegations of adverse acts "shortly thereafter" or "several weeks" following protected complaints establish a causal connection. *Mitchell v. Ceros, Inc.*, 2022 U.S. Dist. LEXIS 43262, *25 (S.D.N.Y. 2022). Even a period of months is not too far removed to establish a causal connection. *Wooding v. Winthrop*

---

[3]     "Plaintiffs are not required to allege that they have suffered an adverse employment action or but-for causation. *Doolittle v. Bloomberg L.P.*, No. 22-CV-09136 (JLR), 2023 U.S. Dist. LEXIS 194764, 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023). Instead, plaintiffs must only show that they were 'treated less well at least in part because of' their age. *Id*. (quotation omitted). Thus, to survive a motion to dismiss, a plaintiff must plausibly allege that he experienced differential treatment that is 'more than trivial, insubstantial, or petty' and which was a motivating factor, not the motivating factor. *Id*." *Shaughnessy v. Scotiabank*, 2024 U.S. Dist. LEXIS 57840, at *24 (S.D.N.Y. Mar. 29, 2024).

*University Hospital*, 2017 WL 2559942, at *15 (E.D.N.Y. 2017) (denying Defendant's motion to dismiss § 740 claim because "a period of four months is sufficient temporal proximity to plausibly find a causal connection" with respect to a § 740 claim) (emphasis added).

Here, Plaintiff engaged in protected activity when he: disclosed his disability to Pete (FAC ¶ 27); left the strip club in February 2022 to oppose Pete's unlawful behavior (*id.* ¶ 44); ignored Pete in opposition to her trapping him in an SUV and forced him to witness her participate in group sex in June 2022 (*id.* ¶ 65); opposed being forced to witness group sex the night prior (*id.* ¶ 80); confided in "Alex" in 2023 to oppose Pete's unlawful pay practices and other unlawful acts (*id.* ¶ 97); and opposed Pete's unlawful pay practices and unlawful practices in June 2023 (*id.* ¶¶ 102, 104); among other acts detailed in the FAC. (*e.g., Id.* ¶ 118.) Plaintiff reasonably believed each of these complaints concerned Defendants' violations of laws, rules, and/or regulations to which they were bound. (*Id.* ¶¶ 173, 175, 178, 179.)

Plaintiff's protected activities were followed by both specific instances and series of continuous adverse employment actions in retaliation. For example, the February 2022 strip club incident, was followed by a series of adverse actions during the trip to Spain only four months later. Then when in Spain, Plaintiff opposed Defendants' unlawful acts and immediately was met with retaliation. (*Id.* ¶ 75.) As soon as Plaintiff returned from Spain, he noticed a clear shift in the terms and conditions of his employment as Defendants cut his hours in retaliation. (*id.* ¶¶ 82 – 85.) Whereas prior to these acts Plaintiff worked for Defendants in New York monthly (*id.* ¶ 32) now his work assigned began to taper off until the termination of his employment, which constituted continuous acts of retaliation. Each and every time Pete went to New York without Plaintiff, Defendants committed acts of retaliation against Plaintiff and deprived him of the opportunity to earn compensation in New York. In June 2023, Plaintiff complained to Pete directly and had his employment swiftly terminated in retaliation in August 2023, not one month following his protected activity. (*Id.* ¶¶ 82 – 85.) The causal connection is undeniable based on temporal proximity alone. Accordingly, Plaintiff properly pled claims for retaliation under the NYLL.

## VI. <u>ALTERNATIVELY, PLAINTIFF SHOULD BE AFFORDED LEAVE TO AMEND</u>

When a complaint is dismissed under Rule 12(b)(6), the Second Circuit strongly favors granting plaintiff leave to amend the complaint unless doing so would clearly be futile. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). This is consistent with Rule 15(a) which provides leave to amend "shall be freely given with justice so requires." Fed. R. Civ. P. 15(a).

Should the Court grant Defendants' motion in whole or in part, Plaintiff respectfully requests that the Court follow the pervasive, liberal policy permitting Plaintiff to amend the pleadings to add facts regarding the discriminatory acts, such as harassment, abuse, forced appearances at strip clubs, excessive alcohol consumption by Pete in front of employees, and the impact the adverse actions had on New York, and facts regarding Plaintiff's misclassification as an independent contractor.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss Plaintiff's First Amended Complaint in its entirety, along with such other and further relief the Honorable Court deems just and proper.


Dated:  March 5, 2025
White Plains, New York

Respectfully submitted,

VALIANT LAW

By:    */s/ William Knight*
Joseph Jeziorkowski, Esq.
William Knight IV, Esq.
*Attorneys for Plaintiff*
*Emilio Garcia*
2 Westchester Park Dr., Suite 205
White Plains, New York 10604
914-730-2422
jjj@valiantlaw.com
wfk@valiantlaw.com

WEST COAST TRIAL LAWYERS, APLC

By:    */s/ Ronald L. Zambrano*
Ronald L. Zambrano, Esq. (*pro hac vice*)
*Attorneys for Plaintiff*
*Emilio Garcia*
1147 South Hope Street
Los Angeles, CA 90015
213-927-3700
ron@westcoasttriallawyers.com

## <u>CERTIFICATION OF WORD COUNT COMPLIANCE</u>

I, William Knight, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 3(A) of Judge Gregory H. Woods' Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 7,473 words as calculated by the application's Word counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 3(A) of Judge Gregory H. Woods' Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on the fifth day of March 5, 2025 in White Plains, New York.

*s/ William Knight*

William Knight IV
