UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILIO GARCIA, an Individual,<br><br>                    Plaintiff,<br><br>-against-<br><br>ROC NATION LLC, a Delaware Business Organization; HOT GIRL TOURING, LLC, a Delaware Business Organization, MEGAN THEE STALLION ENTERTAINMENT, INC., a Delaware Business Organization, MEGAN THEE STALLION, an Individual, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Civil Action No. 1:24-cv-07587-GHW |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROC NATION, LLC'S MOTION TO DISMISS PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

**VALIANT LAW**
Joseph Jeziorkowski, Esq.
William Knight IV, Esq.
*Attorneys for Plaintiff*
2 Westchester Park Drive, Suite 205
White Plains, New York 10604
914-730-2422



**WEST COAST TRIAL LAWYERS, APLC**
Ronald L. Zambrano, Esq. (*pro hac vice*)
*Attorneys for Plaintiff*
1147 South Hope Street
Los Angeles, CA 90015
213-927-3700

I

**TABLE OF CONTENTS**

I.   FACTUAL SUMMARY PERTINENT TO THE COMPLAINT ............................... 1
I.   LEGAL STANDARD ON RULE 12(B)(6) MOTIONS TO DISMISS ...................... 2
II.  ARGUMENT IN OPPOSITION ................................................................................ 2
     A.  LAW OF THE CASE PRECLUDES DEFENDANT'S ARGUMENTS ALREADY MADE (AND LOST) IN BEFORE THE UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA ........................................................................ 2
     B.  CONTRACT REGARDING EMPLOYMENT STATUS IRRELAVANT ........................................................................................... 3
     C.  ROC NATION FAILS TO EVEN ARGUE ITS BURDEN UNDER THE DYNAMEX'S ABC TEST THAT PLAINTIFF WAS LEGALLY AN INDEPENDENT CONTRACTOR .............................. 4
     D.  ROC NATION WAS A JOINT EMPLOYMER UNDER THE LABOR CODE AND WAGE ORDERS.......................................................... 5
     E.  ROC NATION WAS A JOINT EMPLOYER UNDER THE FEHA .............................................................................................................. 6
     F.  AS A FEHA EMPLOYER ROC NATION IS VICARIOUSLY LIABLE FOR FEHA VIOLATIONS COMMITTED BY DEFENDANT MEGAN THE STALLION ...................................................... 7
     G.  PLAINTIFF HAS ESTABLISHED A SUFFICIENT CONNECTION TO SATISFY PLAINTIFF'S FAIR EMPLOYMENT AND HOUSING ACT CLAIMS ......................................... 8
     H.  PLAINTIFF HAS ESTABLISHED A SUFFICIENT CONNECTION TO SATISFY PLAINTIFF'S CALIFORNIA LABOR CODE CLAIMS ............................................................................ 10
III. ROC NATION WAS A JOINT EMPLOYER UNDER THE NYSHRL,

| | | |
|---|---|---|
| | NYCHRL AND NYLL............................................................................... | 12 |
| IV. | IN RESPONSE TO ROC NATION'S ARGUMENT ATTEMPTING TO INCORPORATE THE MEGAN THEE STALLION DEFENDANTS' ARGUMENTS MADE IN THEIR PURPORTED MOTION TO DISMISS, PLAINTIFF HEREBY INCORPORATED BY REFERENCE ITS OPPOSITION TO THE MEGAN THEE STALLION DEFENDANT'S MOTION....................................................................... | 13 |
| V. | IN THE ALTERNATIVE, PLAINTIFF SEEKS LEAVE TO AMEND ................... | 13 |
| VI. | CONCLUSION................................................................................................ | 13 |
| CERTIFICATION OF WORD COUNT COMPLIANCE ......................................................... | | 15 |

# TABLE OF AUTHORITIES

**Cases**

*Barker v. Riverside County Office of Ed.* (9th Cir. 2009) 584 F3d 821, 824 ................................. 6

*Bell Atlantic Corp. v. Twombly* (2007) 550 US 544, 556 ........................................................... 6

*Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal. App. 5th 865 .................................. 14

*Braden v. Wal-Mart Stores, Inc.* (8th Cir. 2009) 588 F3d 585, 595 ............................................ 6

*Doe v. United States* (9th Cir. 2005) 419 F3d 1058, 1062 ........................................................... 6

*Dynamex Operations West, Inc. v. Sup.Ct. (Lee)* (2018) 4 C5th 903, 916-917, 956-957  10, 11, 12

*Independent Trust Corp. v. Stewart Information Services Corp.* (7th Cir. 2012) 665 F3d 930, 943
    ................................................................................................................................. 20

*Jimenez v. U.S. Cont'l Mktg., Inc.*, (2019) 41 Cal. App. 5th 189, 200 .................................. 13, 14

Matthews v. Superior Court (1995) 34 Cal.App.4th 598 ............................................................. 13

*Medina v. Equilon Enterprises, LLC*, (2021) 68 Cal. App. 5th 868, 875 ............................... 11, 12

*Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal. App. 4th 1403 ............................................. 14

*Peloza v. Capistrano Unified School Dist.* (9th Cir. 1994) 37 F3d 517, 52. ............................... 6

*Real v. Driscoll Strawberry Assocs., Inc.* (9th Cir. 1979) 603 F. 2d 748, 755 .......................... 10

*Rescuecom Corp. v. Google Inc.* (2nd Cir. 2009) 562 F3d 123, 127 ........................................... 6

*State Dept. of Health Services v. Sup.Ct. (McGinnis)* (2003) 31 Cal. 4th 1026, 1042 ............. 14

*United States v. Corinthian Colleges* (9th Cir. 2011) 655 F3d 984, 995 .................................. 19

*Vernon v. State of California* (2004) 116 Cal. App. 4th 114, 126 .................................. 12, 13, 14

**Statutes**

Cal. Gov't Code § 12926(d) ......................................................................................................... 12

Cal. Lab. Code § 1132.2 .............................................................................................................. 11

Labor Code § 2775 ........................................................................................................... 10, 11, 12

**Rules**

FRCP 15(a) .................................................................................................................................. 19

Rule 12(b)(6) .................................................................................................................................. 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I. FACTUAL SUMMARY PERTINENT TO THE COMPLAINT**

Plaintiff Emilio Garcia ("Plaintiff") worked for ROC NATION LLC ("ROC NATION" or Defendant"), Hot Girl Touring ("HGT"), MEGAN THEE STALLION ENTERTAINMENT ("MTS"), and Megan Thee Stallion ("STALLION")(all Defendants herein, "Defendants") in her role as an artist/employer directed the manner in which Plaintiff carried out his duties at his job, both ROC NATION and MEGAN THEE STALLION ENTERTAINMENT, and all other Defendants, were his employers. (Decl. Garcia at ¶ 2.) Initially, Plaintiff was paid a monthly flat rate while working for ROC NATION and STALLION ENTERTAINMENT, regardless of how many hours Plaintiff worked. Plaintiff was never told or asked to report hours worked by either ROC NATION, MTS, HGT, or STALLION. (Decl. Garcia at ¶ 5.)

On or around August 2022, Desiree Perez, ("PEREZ"), the Chief Executive Officer of ROC NATION, personally contacted Plaintiff to alter Plaintiff's compensation structure from a monthly rate to a pay-per-task system invoiced for each assignment. Despite this "change," the time expectation of Plaintiff remained the same as before ROC NATION's demand to change his pay. However, the new invoicing system resulted in Plaintiff earning significantly less, as the invoiced amounts did not accurately reflect the true time and effort dedicated to working for Defendants. (Decl. Garcia at ¶ 19; **Exh. "C."**)

After this change in pay structure by ROC NATION, where Plaintiff was reporting his hours worked to ROC NATION, to be approved and paid by ROC NATION, Plaintiff continued to be on-call, to travel to California, New York, and elsewhere, at MTS's direction, to miss meal and rest breaks while working in California and New York because Defendants would direct Plaintiff to wait at hotel rooms for their further directions to perform his duties they were paying for. (Decl. Garcia at ¶ 20.)

On or around June 2023 ROC NATION unexpectedly informed Plaintiff that his services were no longer required. (Decl. Garcia at ¶ 22.)

1

I. **LEGAL STANDARD ON RULE 12(b)(6) MOTIONS TO DISMISS**

On a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." (*Rescuecom Corp. v. Google Inc.* (2nd Cir. 2009) 562 F3d 123, 127; *Doe v. United States* (9th Cir. 2005) 419 F3d 1058, 1062.)

The court must draw all reasonable inferences from the facts alleged in plaintiff's favor when it determines whether the complaint states a valid claim. (*Braden v. Wal-Mart Stores, Inc.* (8th Cir. 2009) 588 F3d 585, 595 ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice"); see also *Barker v. Riverside County Office of Ed.* (9th Cir. 2009) 584 F3d 821, 824.) Courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." (*Peloza v. Capistrano Unified School Dist.* (9th Cir. 1994) 37 F3d 517, 52.) The court must accept as true all material factual allegations in the complaint: Rule 12(b)(6) does not countenance "dismissals based on a judge's disbelief of a complaint's factual allegations." (*Bell Atlantic Corp. v. Twombly* (2007) 550 US 544, 556.) The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a plausible claim for relief. Thus, no matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion. (*Twombly*, *supra*, at 556.)

II. **ARGUMENT IN OPPOSITION**

Plaintiff respectfully opposes as follows:

A. **LAW OF THE CASE PRECLUDES DEFENDANT'S ARGUMENTS ALREADY MADE (AND LOST) IN BEFORE THE UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA**

As a preliminary matter, Defendant ROC NATION's Motion to Dismiss was filed in the Los Angeles case and denied after Plaintiff filed a proper opposition. (*See* Exh. "X" – *Los Angeles Court's Ruling Denying Defendant's Motion to Dismiss*). Under the law of the case doctrine, "when a court has ruled on an issue, 'that decision should generally be adhered to by that court in subsequent stages in the same case.'" *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009)

2

(quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). If the parties had full and fair opportunity to litigate the issue, the law of the case doctrine applies. *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002). "Where the moving party can point to controlling decisions or data that 'might reasonably be expected to alter the conclusion reached by the court' reconsideration of the prior decision is warranted." *Dymkowski v. Nextel Communs., Inc.*, 2021 U.S. Dist. LEXIS 109196, *7-8 (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).) Absent such a controlling decision or new evidence, reconsideration should not be granted as this the moving party is impermissibly seeking to solely relitigate an issue already decided. *Id.*

That is precisely what ROC NATION is attempting to achieve in their Motion. In the present case, the United States District Court for the Central District of California has already ruled on the Motion to Dismiss filed by Defendant ROC NATION (*see* Dkt. No. 42), denying the motion and finding that Plaintiff has sufficiently stated a claim against ROC NATION on a joint employer theory (*see* Dkt. No. 42). This ruling must be respected under the Law of the Case doctrine as the parties had full and fair opportunity to litigate the issue which was decided. ROC NATION points to no "compelling circumstances" to justify relitigating issues already decided, such as an intervening change in controlling law, new evidence, or need to correct an error of law to cure "manifest injustice." *Carr*, 557 F.3d at 102. Absent such extenuating circumstances, the Court must adhere to issues already decided.

For the reasons outlined above, Plaintiff respectfully requests that the court recognize the application of the law of the case doctrine and deny any attempt by ROC NATION to relitigate matters that have already been adjudicated in this case.

### B. CONTRACT REGARDING EMPLOYMENT STATUS IRRELAVANT

The moving papers are riddled with Defendant's refrain that Plaintiff can be nothing more than an independent contract because of a contract he signed stating as such. However, case law under the Fair Labor Standards Act (FLSA) and the California Labor Code/Wage Orders have long held such a contractual language does not establish the nature of the employment relationship

3

as a matter of law: "Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA." (*Real v. Driscoll Strawberry Assocs., Inc.* (9th Cir. 1979) 603 F. 2d 748, 755.)

### C. ROC NATION FAILS TO EVEN ARGUE ITS BURDEN UNDER THE DYNAMEX'S ABC TEST THAT PLAINTIFF WAS LEGALLY AN INDEPENDENT CONTRACTOR

Now infamously, California's ABC test trumps any contractual attempt otherwise. To determine whether a worker is an employee or instead an independent contractor for claims asserted under a California Wage Order, the California Supreme Court adopted the simplified "ABC" test. The burden is placed on the business to prove that the worker is an independent contractor rather than an employee. If the business fails to satisfy each prong of the test, the worker will be presumed to be an employee. (*Dynamex Operations West, Inc. v. Sup.Ct. (Lee)* (2018) 4 C5th 903, 916-917, 956-957.)

Pursuant to Labor Code § 2775 et seq., for ROC NATION, HGT, and MTS meet its burden under the "ABC test," they (not Plaintiff) must establish three factors:

- (A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and*
- (B) the worker performs work that is outside the usual course of the hiring entity's business; *and*
- (C) the worker is customarily engaged in an independently-established trade, occupation, or business of the same nature as the work performed.

The moving party does nothing to address the required burden under the ABC test that Plaintiff is legally an independent contractor under Labor Code § 2775 et seq – not even citing *Dynamex* or the pertinent statutory scheme. Based thereon, any argument Plaintiff is legally an independent contracts should by dismissed out of hand, and Motion to Dismiss should be dismissed.

To the extent ROC NATION argues the First Amended Complaint ("FAC") itself lacks facts to establish it was an employer, the FAC explicitly pleads ROC NATION, HGT and MTS were Plaintiff's joint employers. (*See* FAC ¶¶ 11 – 14) The Complaint further alleges how ROC NATION changes the terms and conditions of Plaintiff's compensation package. (*Id.* ¶¶ 6, 105, 123, 135.) It was ROC NATION that terminated Plaintiff's services. (*Id.*; *see also* Decl. Garcia.) Based thereon, there are sufficient facts to establish that ROC NATION was a joint employer of the Plaintiff. Therefore, the Motion to Dismiss should be denied.

### D. ROC NATION WAS A JOINT EMPLOYMER UNDER THE LABOR CODE AND WAGE ORDERS

"Employer" means a person, partnership, firm, corporation, association, or other entity, which employs any person or persons to perform services for a wage or salary, and includes any person, partnership, firm, corporation, limited liability company, association or other entity acting as an agent of an employer, directly or indirectly. (Cal. Lab. Code § 1132.2.) As discussed above, the business has the burden to establish a worker is legally an independent contractor if they satisfy *Dynamex's* ABC test (*see* Sec. A, supra).

As the Supreme Court noted in its subsequent *Dynamex* decision, the "suffer or permit to work" definition is extraordinarily broad, reaching "*all* individual workers who can reasonably be viewed as '*working in the* [*hiring entity's*] *business.*' " (*Medina v. Equilon Enterprises, LLC*, (2021) 68 Cal. App. 5th 868, 875.) To the extent Defendant argues Plaintiff was an independent contract, it simultaneously fails to meet the ABC Test under Labor Code § 2775 et seq., by failing to even address it.

Under the Labor Code, ***a person can be a joint employer without exercising direct control over the employee***. (*Medina, supra*, 879 (emphasis added).) If the putative joint employer instead exercises enough control to indirectly dictate the wages, hours, ***or*** working conditions of the employee, that is a sufficient showing of joint employment. (*Id* (emphasis added).)

As discussed above, ROC NATION dictated how Plaintiff was paid, the amount of Money Plaintiff was paid, and terminated Plaintiff's employment. (FAC ¶¶ 6, 105, 123, 135.) The facts

5

plausibly establish that ROC NATION itself was a joint employer with the other Defendants over the Plaintiff. The Motion to Dismiss should be denied to the extent ROC NATION claims the same on the erroneous position it was not an employer or at least a joint employer of the Plaintiff.

### E. ROC NATION WAS A JOINT EMPLOYER UNDER THE FEHA

Under the FEHA, an "Employer" includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities. (Cal. Gov't Code § 12926(d) (West).). There is no magic formula for determining whether an organization is a joint employer. Rather, the court must analyze 'myriad facts surrounding the employment relationship in question.' No one factor is decisive. (*Vernon v. State of California* (2004) 116 Cal. App. 4th 114, 126.) "[T]he precise contours of an employment relationship can only be established by a careful factual inquiry." Vernon v. State of California, 116 Cal. App. 4th 114, 124–25 (2004) In determining liability under the FEHA, we look " 'to the degree an entity or person significantly affects access to employment' ...." (*Vernon v. State of California* (2004) 116 Cal. App. 4th 114, 126 (Matthews v. Superior Court (1995) 34 Cal.App.4th 598).)

> Factors to be taken into account in assessing [an employment] relationship of the parties include payment of salary . . . the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee . . . the duration of the relationship of the parties, and the duration of the plaintiff's employment. (Vernon, supra, at 125.)

But **FEHA does not require that a claimant present evidence related to every possible factor** that might bear on the question of an employment relationship. (*Jimenez v. U.S. Cont'l Mktg., Inc.*, (2019) 41 Cal. App. 5th 189, 200 (emphasis added).) Where a FEHA claimant presents substantial evidence of an employment relationship that is rebutted only by direction and control evidence outside the bounds of the contractual context (such as in a temporary-staffing situation

6

where hiring, payment, benefits, and time-tracking are handled by a temporary-staffing agency), the claimant has demonstrated an employment relationship for FEHA purposes. (*Jimenez,* supra, 201.) The termination of employment may be considered, but only within the specific employment relationship at issue. (*Id*. at 199.)

Here, ROC NATION dictated the terms and conditions of Plaintiff's compensation package starting in August 2022, and onward for the next 11 months of his employment. The change was drastic, from flat monthly rate to a pay-by-task structure leading to a drastic reduction in income despite the same amount of work. (FAC ¶¶ 134, 135, 237, 238, 270.) Then, it was ROC NATION that effectuated/communicated the termination of Plaintiff (*Id.* ¶ 6) .

That ROC NATION did not control the day-to-day manner Plaintiff performed his job duties as a camera, under *Jimenez* and *Vernon*, is not dispositive. Rather, ROC NATION substantially controlled how Plaintiff was paid and his access to continued employment to such an extent it was legally a joint employer under the FEHA. Based thereon, the Court should deny the ROC NATION's Motion to Dismiss on the basis there is sufficient facts for a plausible claim that it is a joint employer of the Plaintiff.

### F. AS A FEHA EMPLOYER ROC NATION IS VICARIOUSLY LIABLE FOR FEHA VIOLATIONS COMMITTED BY DEFENDANT MEGAN THE STALLION

Under the FEHA, the employer itself is strictly liable for workplace harassment by a supervisor. There is no need to rely on agency concepts. (*State Dept. of Health Services v. Sup.Ct. (McGinnis)* (2003) 31 Cal. 4th 1026, 1042; *Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal. App. 4th 1403; *Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal. App. 5th 865; *Myers v. Trendwest Resorts, Inc.* (2007) 148 Cal. App. 4th 1403, 1420.)

As established above, ROC NATION is a joint employer of the Plaintiff. Ergo, the harassment by Plaintiff's supervisor, undisputed to be international artist Megan the Stallion (MTS), ROC NATION is vicariously under the FEHA for the harassment she commits against the Plaintiff. (FAC ¶¶ 13-17.) Therefore, Plaintiff has sufficiently pled claims against ROC NATION

7

as a joint employer that is vicariously liable for Plaintiff's claims.

## G. PLAINTIFF HAS ESTABLISHED A SUFFICIENT CONNECTION TO SATISFY PLAINTIFF'S FAIR EMPLOYMENT AND HOUSING ACT CLAIMS

Defendant's claim that the California Fair Employment and Housing Act (FEHA) does not apply to the present case is misplaced. Plaintiff's claims are intrinsically connected to California, and the facts of the case support the application of FEHA, which is designed to protect individuals from discrimination within the state's workforce, regardless of the location where the conduct occurs. While FEHA generally does not apply extraterritorially, exceptions exist where the conduct has a substantial effect on California's interests. Plaintiff's employment was directly tied to the defendant's operations in California, and the impact of the alleged discriminatory conduct is felt within California's workforce, justifying the application of FEHA.

Plaintiff's claims are deeply connected to California for several key reasons. First, Plaintiff was employed by Defendant ROC NATION, a company with significant business operations in California. (FAC ¶ 6). Plaintiff's employment responsibilities were closely aligned with Defendant's business interests in California, establishing a substantial nexus with the state. This direct connection to California's business activities is sufficient to bring Plaintiff's claims under the purview of FEHA. Second, although the alleged discriminatory actions occurred outside of California, the impact of those actions on Defendant's California-based workforce is undeniable. FEHA is intended to protect California's labor market, and when discriminatory practices affect a company's operations and employees in California, the statute's protections should apply, regardless of where the conduct took place.

Furthermore, the defendant's extensive presence in California reinforces the applicability of FEHA. The defendant operates significant portions of its business in California, including maintaining offices, employing individuals, and generating revenue in the state. This established presence subjects the defendant to California's jurisdiction and legal standards, including compliance with FEHA. California courts have consistently ruled that businesses operating within

the state must adhere to California laws, including its employment laws, even if some conduct occurs outside the state. The defendant's operations within California ensure that it must comply with the protections afforded by FEHA.

Defendant's reliance on several cases, including *Campbell v. Arco Marine, Inc.*, *Anderson v. CRST Int'l, Inc.*, and *North Alaska Salmon Co.*, is unpersuasive, as these cases are distinguishable from the present case. In *Campbell*, the court found no substantial connection to California, as Plaintiff's employment was not closely linked to the state's business interests. However, in this case, Plaintiff's employment is directly connected to Defendant's California operations, which creates a strong nexus with the state. Similarly, in *Anderson v. CRST Int'l, Inc.*, the conduct had minimal ties to California, and the court found no sufficient connection to the state. In contrast, Defendant ROC NATION operates significant business activities in California, and Plaintiff's employment was tied to those activities, establishing a much clearer connection. Lastly, the *North Alaska Salmon Co.* decision is based on conduct occurring entirely outside California, with no impact on the state's interests. In the present case, Plaintiff's claims affect Defendant's operations within California, which justifies the application of California law.

Several key cases further support Plaintiff's position that FEHA applies to non-residents when their employment is connected to California. In *Sullivan v. Oracle Corp.*, the California Supreme Court held that non-residents can be protected by California's labor laws in certain circumstances, even if they do not presumptively enjoy these protections. One of the factors considered by the court was the employer's residency. (*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)). Here, the plaintiff's employment was closely tied to Defendant's California operations, making the protections of FEHA applicable regardless of the plaintiff's residency. Similarly, in *Bernstein v. Virgin America, Inc.*, the court rejected a simplistic test based solely on job situs and adopted a more nuanced approach that considers factors like the employer's residency and the nature of the employee's work in California (*Bernstein v. Virgin America, Inc.*, 227 F. Supp. 3d 1049, 1058 (N.D. Cal. 2017)). This multi-faceted approach is particularly relevant here, where the plaintiff's employment responsibilities were linked to the defendant's operations in

9

California, and the impact of the alleged discrimination affected California's workforce.

For those reasons, Plaintiff's claims are sufficiently connected to California to warrant the application of FEHA. Defendant's significant business operations within California, coupled with the impact on the state's workforce, provide a compelling basis for applying California law. Defendant's reliance on case law is unpersuasive, as the facts in those cases are distinguishable from the present matter. Given Plaintiff's employment relationship with Defendant and the direct effect of the alleged discriminatory conduct on California's workforce, FEHA should apply in this case. Defendant should not be allowed to evade the protections provided by FEHA based on an overly narrow interpretation of the law.

## H. PLAINTIFF HAS ESTABLISHED A SUFFICIENT CONNECTION TO SATISFY PLAINTIFF'S CALIFORNIA LABOR CODE CLAIMS

Similar to the arguments made above, Plaintiff has established a sufficient connection to satisfy Plaintiff's California Labor Code claims, and Defendant's claim that the California Labor Code does not apply to the present case is misplaced.

Defendant's reliance on *Sullivan v. Oracle Corp.* (51 Cal. 4th 1191, 1207 (2011)) is misplaced. While it is true that California courts generally presume that statutes do not apply extraterritorially unless there is clear legislative intent, this presumption is not an absolute bar to claims brought under the California Labor Code. The presumption only applies when there is no significant connection between the employee's work and California. In this case, Plaintiff's employment is sufficiently tied to California to warrant the application of California labor laws. California courts have recognized that the California Labor Code applies to employees who are engaged in work that substantially connects to California, ***even if the employee is not a California resident***. In *Sullivan v. Oracle Corp.*, the California Supreme Court clarified that non-residents are protected by California labor laws if the employee's work is sufficiently linked to California (*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)). Here, Plaintiff's work was directly tied to the defendant's operations in California, and the conduct that forms the basis for Plaintiff's claims has a direct impact on California's labor market. Therefore, Plaintiff's claims fall within the

scope of California labor protections.

Defendant's reliance on *Weinberg v. Valeant Pharmaceuticals International* (2017 WL 6543822 (C.D. Cal. 2017)) is distinguishable. In *Weinberg*, the court dismissed claims because the plaintiff did not work in California and was not a California resident. However, in the present case, Plaintiff's employment is substantially tied to California through Defendant's significant business operations in the state. Even if Plaintiff was not a California resident, California courts have long recognized that employees whose work is connected to California can bring claims under the California Labor Code. As established in *Ward v. United Airlines, Inc.* (9 Cal. 5th 732, 760 (2020)), non-residents who perform the majority of their work in California, or who are based for work purposes in California, are covered by California's labor laws. Plaintiff's employment responsibilities and Defendant's business operations were all linked to Defendant's California operations, and any alleged discriminatory conduct occurred in the context of these operations.

Plaintiff's case is not merely based on incidental or occasional contact with California. Rather, Plaintiff's work directly affected Defendant's California-based operations. Defendant is a significant business entity in California, and Plaintiff's role was closely aligned with these operations. As such, the alleged unlawful employment practices had a direct impact on the workforce and business operations within the state. This connection strengthens the application of California Labor Code provisions to Plaintiff's claims, irrespective of where the alleged violations took place.

Moreover, California Labor Code § 12940, which prohibits employment discrimination, has been interpreted broadly to protect employees who are connected to California's labor market, even if they are not residents or are located outside the state at the time of the alleged violations. This is consistent with the statute's remedial purpose, which aims to protect California workers and address discrimination and retaliation practices affecting California's workforce.

For those reasons, Plaintiff's claims under the California Labor Code should not be dismissed merely because Plaintiff is not a California resident or did not perform all of his work in California. Defendant's operations in California, Plaintiff's work responsibilities ties to those

11

operations, and the impact of the alleged discriminatory conduct on California's workforce all support the application of California's labor laws. Therefore, Plaintiff's counts under the California Labor Code should proceed as they are consistent with the statute's broad protective purpose.

### III. ROC NATION WAS A JOINT EMPLOYER UNDER THE NYSHRL, NYCHRL AND NYLL

When more than one entities or person are involved with the employment of an individual, courts may find liability under either the single employer doctrine, or the joint employer doctrine. The joint employer doctrine applies when "two or more entities, according to common law principles, share significant control of the same employee." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022). Both the single employer doctrine as well as the joint employer doctrine are fact-specific and not appropriate to decide at the motion to dismiss stage. *Ward v. Cohen Media Publ'ns LLC*, 2023 U.S. Dist. LEXIS 147806, at *19 (S.D.N.Y. Aug. 21, 2023)(*see also, Brown v. Daikin Am., Inc.*, 756 F.3d 219, 222 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss"); *Bautista v. PR Gramercy Square Condo.*, 2022 U.S. Dist. LEXIS 211742, at *4 (S.D.N.Y. Nov. 22, 2022) ("Consequently, determining joint employment status is 'essentially a factual issue,' that, like determining single employer status, 'is not suitable to resolution on a motion to dismiss.'" (internal citation omitted).

Simply put, it would be inappropriate to grant Defendant's Motion based on their arguments that ROC NATION was not a joint employer due to the fact intensive inquiry necessary to make a determination on the issue.

IV. **IN RESPONSE TO ROC NATION'S ARGUMENT ATTEMPTING TO INCORPORATE THE MEGAN THEE STALLION DEFENDANTS' ARGUMENTS MADE IN THEIR PURPORTED MOTION TO DISMISS, <u>PLAINTIFF HEREBY INCORPORATED BY REFERENCE ITS OPPOSITION TO THE MEGAN THEE STALLION DEFENDANT'S MOTION</u>**

Without any substance, the Roc Nation Defendants attempt to incorporate MTS Defendants arguments from a separate motion to dismiss into their instant motion. Even if the Court could consider this a proper argument, in opposition Plaintiff incorporates and references Plaintiff's arguments in response to MTS's motion to dismiss as against Roc Nation Defendants.

V. <u>**IN THE ALTERNATIVE, PLAINTIFF SEEKS LEAVE TO AMEND**</u>

As a practical matter, leave to amend is almost always granted by the court, at least once. FRCP 15(a) expressly states the court "should freely give leave when justice so requires." (FRCP 15(a)(2); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991*); see also, United States v. Corinthian Colleges* (9th Cir. 2011) 655 F3d 984, 995 (standard for granting leave to amend is "generous").

Therefore, should the Court grant Defendant's motion, or any part thereof, Plaintiff respectfully requests that the court follow the pervasive, liberal policy permitting amendments that grant Plaintiff leave to amend the Complaint to add facts regarding how ROC NATION determined many factors of Plaintiff's employment.

VI. <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety. Alternatively, should this instant motion be granted, Plaintiff respectfully requests leave of Court to amend the Complaint to add facts described above.

Dated:  March 5, 2025
         White Plains, New York

13

Respectfully submitted,

VALIANT LAW

By:   *s/ William Knight*
     Joseph Jeziorkowski, Esq.
     William Knight IV, Esq.
*Attorneys for Plaintiff*
*Emilio Garcia*
2 Westchester Park Dr., Suite 205
White Plains, New York 10604
914-730-2422
jjj@valiantlaw.com
wfk@valiantlaw.com

WEST COAST TRIAL LAWYERS, APLC

By:   */s/ Ronald L. Zambrano*
     Ronald L. Zambrano, Esq. (*pro hac vice*)
*Attorneys for Plaintiff*
*Emilio Garcia*
1147 South Hope Street
Los Angeles, CA 90015
213-927-3700
ron@westcoasttriallawyers.com

## **CERTIFICATION OF WORD COUNT COMPLIANCE**

I, William Knight, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 3(A) of Judge Gregory H. Woods' Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 4,380 words as calculated by the application's Word counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 3(A) of Judge Gregory H. Woods' Individual Rules.

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on the fifth day of March 5, 2025 in White Plains, New York.

*s/ William Knight*
William Knight IV