```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                          :
EMILIO GARCIA,                            :
                                          :
                        Plaintiff,        :          1:24-cv-7587-GHW
                                          :
              -v-                         :     MEMORANDUM OPINION &
                                          :            ORDER
ROC NATION LLC, *et al.*,                 :
                                          :
                        Defendants.       :
                                          :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Emilio Garcia worked as a cameraman in rapper Megan Thee Stallion's entourage.  Mr.

Garcia traveled with the entourage all over the world and worked long hours.  He alleges that, as

part of his duties, he was required to attend strip clubs.  He also alleges certain lewd and abusive

behavior directed at him from Megan Thee Stallion herself.  Mr. Garcia asserts nineteen claims

against Megan Thee Stallion and the corporate entities that he alleges employed him.  The claims

include wage and hour violations, hostile work environment, and retaliation under California and

New York law.

Defendants moved to dismiss Plaintiff's claims for failure to allege facts sufficient to state a

claim under the laws of California and New York.  The Court holds that Plaintiff fails to allege facts

sufficient to plausibly plead a California hostile work environment claim; overtime and notice claims

under California labor law; overtime claims under New York labor law; and aiding and abetting

claims against the corporate entities under the New York human rights laws.  Plaintiff adequately

pleads a meal and rest break claim under California law; retaliation under California and New York

law; and discrimination under the New York human rights laws.  Therefore, Defendants' motions to

dismiss are GRANTED IN PART and DENIED IN PART.

## II.    BACKGROUND

### A.  Facts[1]

#### 1.  Parties

Plaintiff is a resident of Texas.  Am. Compl. ¶ 5.  Defendant Roc Nation LLC ("Roc Nation") is a Delaware limited liability company with a principal place of business in California.  *Id.* ¶ 6.  Defendant Hot Girl Touring, LLC ("HGT") is a Delaware limited liability company with a principal place of business in Florida.  *Id.* ¶ 7.  Defendant Megan Thee Stallion Entertainment, Inc. ("MTSE" and, collectively with Roc Nation and HGT, the "Corporate Defendants") is a Delaware corporation with a principal place of business in Florida.  *Id.* ¶ 8.  Defendant Megan Pete, also known as Megan Thee Stallion, is "an owner and principal" of HGT and MTSE.  *Id.* ¶ 9.

#### 2.  Plaintiff Is Hired by Defendants and Joins Pete's Entourage

In 2019, Plaintiff was hired "to serve as Pete's personal cameraman."  *Id.* ¶ 22.  This was a "full-time" position.  *Id.* ¶ 126.  Plaintiff was classified as an "independent contractor" during his time working for Defendants, *id.* ¶ 123, but Plaintiff alleges that he "d[id] not provide Personal Cameraman services 'independently' of his relationship with Pete," *id.* ¶ 133.  "Pete specifically told Plaintiff he was not allowed to service any other client other than herself."  *Id.*  Initially, Plaintiff was paid "a monthly flat rate of $4,000."  *Id.* ¶ 134.  Because he was classified as an independent contractor, he did not receive health insurance coverage.  *Id.* ¶ 146.

Plaintiff had to travel with Pete and her entourage "as part of his duties."  *Id.* ¶ 32.  Plaintiff did work for Defendants primarily in California and New York.  *Id.*  "On average, Plaintiff was in New York at least once per month, and sometimes remained in New York for weeks at a time."  *Id.*

---

[1] All facts alleged in the Amended Complaint are accepted as true for the purposes of this Rule 12(b)(6) motion.  *See, e.g.,* *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

While traveling with Pete, "Plaintiff was required to stay at the hotel and be on standby at all times." *Id.* ¶ 138.

"Plaintiff essentially worked during all waking hours of a day," and worked "in excess of fifty hours" per week. *Id.* ¶¶ 130, 132. But Plaintiff "was denied overtime pay at an overtime rate." *Id.* ¶ 141. Defendants also maintained "inaccurate work records," which did not "properly record" Plaintiff's working hours. *Id.* ¶ 144.

Pete "control[led] and direct[ed] the work performed by Plaintiff." *Id.* ¶¶ 127. "More than once," Pete would "interrupt[] Plaintiff during dinner and demand[] that he immediately shift his focus to assist with her TikTok creative ideas." *Id.* ¶ 131. Pete "continuously contacted Plaintiff at all hours, directing him to brainstorm TikTok videos, to edit content that Plaintiff had not captured, and [to] complete various assignments." *Id.* ¶ 132. Plaintiff "was denied a meal break or rest break" and was never paid "meal or rest break premiums during his entire employment." *Id.* ¶ 139.

"Plaintiff was required to not only take photos, videos, and edit[] content—which was all done under the strict control and direct supervision of Pete—but also to accompany Pete almost anywhere she went as part of her 'entourage.'" *Id.* ¶ 23. "Th[e] entourage included Pete, Plaintiff, dancers, makeup artists, nail techs, and others." *Id.* ¶ 24. "Pete was perceived as the leader and all others subservient." *Id.* ¶ 25. Members of the entourage "were unable to spend their time for their own benefit" and were "present only to attend to the needs and demands of Pete." *Id.* ¶¶ 24–25. As a result, Plaintiff "was afraid that Pete would retaliate against him if he refused to acquiesce to her every demand." *Id.* ¶ 31.

### 3.  Pete Puts Plaintiff in "Uncomfortable" Situations

"[A]s part of Pete's entourage, [Plaintiff] was required to attend strip clubs, night clubs, and other excursions." *Id.* ¶ 30. Pete "compelled Plaintiff to go on dozens of trips to strip clubs in New York, California, Atlanta, Georgia, and overseas." *Id.* ¶ 35. "Plaintiff attended strictly out of his

duties to his employer, not for his own pleasure or benefit." *Id.*

On one occasion on or around February 15, 2022, Plaintiff and the entourage "were required to accompany Pete to a New York City strip club." *Id.* ¶ 33. Plaintiff went to the strip club only "because [Pete] required him to." *Id.* ¶ 34. At one point in the evening, "Pete began physically touching the dancer in a sexually provocative manner which made Plaintiff feel extremely uncomfortable, embarrassed, and disgusted." *Id.* ¶ 37. Plaintiff "tried to avoid" the situation "but was unable to leave." *Id.* Later in the evening, Plaintiff made a joke about being related to one of the dancers who shared his last name, and Pete "shot Plaintiff a sinister look." *Id.* ¶¶ 39–42. Eventually, "Plaintiff removed himself from the situation and proceeded to leave the strip club and wait in one of the SUVs in the convoy waiting for Pete and the entourage." *Id.* ¶ 44.

"In or about June 2022, Plaintiff traveled with Pete to Ibiza, Spain." *Id.* ¶ 47. One night during this trip, "Plaintiff was required to join Pete and the entourage to a nightclub in Ibiza." *Id.* ¶ 48. After leaving the nightclub, Plaintiff and Pete, along with three of Pete's female "best friends," got into an SUV. *Id.* ¶ 50. "Plaintiff was only present in the SUV [to] perform his duties as Pete's employee." *Id.* ¶ 64. The SUV "had two bench seats that allowed the passengers to face each other." *Id.* ¶ 51. Pete, who was allegedly intoxicated, proceeded to engage in sexual conduct with her friends in the SUV. *Id.* ¶¶ 56–59, 62–63. "Plaintiff was unable to remove himself from the situation." *Id.* ¶ 57. The sexual conduct "taking place in front of Plaintiff made him feel extremely uncomfortable." *Id.* ¶ 64.

Later that same evening, Plaintiff, Pete, her friends, and other members of the entourage were having dinner at the residence where they were staying. *Id.* ¶¶ 67, 71–72. "Suddenly, Plaintiff felt Pete was giving him a dirty look once again." *Id.* ¶ 74. "Pete shouted at Plaintiff, so everyone could [hear], 'Are you really eating that you fucking fat bitch? Spit that shit out!'" *Id.* ¶ 75. "Pete continued, 'why are you still chewing? Spit that shit out!'" *Id.* ¶ 77. Pete then "grabbed the food off

[another employee's] plate—who was sitting closer to Pete than Plaintiff was—and threw the food over her shoulder." *Id.* "[H]umiliated and ashamed," Plaintiff "excused himself and proceeded to go to sleep for the night." *Id.* ¶ 78. Plaintiff had informed Pete that he has an eating disorder and "struggles with weight." *Id.* ¶ 28.

The next morning, Plaintiff "made it clear he did not appreciate and opposed" Pete's "unlawful conduct" in the SUV. *Id.* ¶ 80. Pete responded, "don't you ever speak about what happened in the car." *Id.* ¶ 81.

### 4. The Conditions of Plaintiff's Employment Change

Prior to the Ibiza trip, Defendants booked Plaintiff regularly, frequently every week and sometimes for seven days a week. *Id.* ¶ 83. After the Ibiza trip, however, Defendants began to request fewer services of Plaintiff, relying instead on other photographers. *Id.* ¶ 84. This change "had a direct impact on Plaintiff's compensation." *Id.* ¶ 85. The financial consequences notwithstanding, Pete forbade Plaintiff from working for any other celebrities or from working elsewhere. *Id.* ¶ 86.

In August 2022, Plaintiff was with Pete and the entourage in a hotel room in Portugal. *Id.* ¶ 88. While others were partying, Plaintiff sat down and placed his head on a pillow. *Id.* ¶ 89. Suddenly, a TV remote was thrown at him, hitting Plaintiff in the head. *Id.* ¶ 90. Pete was standing in the direction from which the remote came and shouted, "so what if I did throw it, then what? What are you going to do about it?" *Id.* ¶¶ 91–93.

Around August 2022, Defendants also "altered Plaintiff's compensation structure from a monthly rate to a pay-per-task system for each assignment." *Id.* ¶ 94. Plaintiff was informed of this change by Desiree Perez, the CEO of Roc Nation. *Id.* ¶ 135. Plaintiff was still "expected to provide the same level of service to Pete." *Id.* ¶ 94. Despite being expected to work for the same amount of time as before, the new invoicing system resulted in Plaintiff earning "significantly less" because "the

invoiced amounts did not accurately reflect the true time and effort dedicated to working for her." *Id.* ¶ 135.

Plaintiff's work assignments continued to taper off into 2023, but he was still "forbidden by Pete from working for anyone else." *Id.* ¶ 95; *see also id.* ¶ 98 ("[Plaintiff] was excluded from this [Europe] trip, was not compensated, yet was prohibited from working elsewhere.").

### 5. Defendants Terminate Plaintiff and Interfere with Plaintiff's Future Job Prospects

In 2023, Plaintiff confided in one of Ms. Pete's former makeup artists, Alex, about the "unlawful pay practices" associated with his work for Pete. *Id.* ¶ 97. Then, in June 2023, Plaintiff received a call from Alex's phone. *Id.* ¶ 99. Pete was on the other side with an "angry look." *Id.* ¶ 100. Pete "lashed out," saying, "Bitch! You want to fucking quit on me, hoe? You want to quit on me, bitch?!" *Id.* ¶ 101. Plaintiff explained that he did not want to quit but that he wanted "to work in a respectful environment and be paid all of the wages owed." *Id.* ¶ 102. Pete continued to yell at Plaintiff and call him "bitch" and "hoe," telling Plaintiff that his boyfriend made him "lazy." *Id.* ¶ 103. Pete "blamed the corporate Defendants" and said that "it was Roc Nation who books her people, not Pete." *Id.* ¶ 105.

Shortly after the June 2023 phone call, a "representative of Defendants contacted Plaintiff to inform him his services were no longer required under purported 'change in creative direction.'" *Id.* ¶ 109.

In August 2023, Plaintiff was hired for a three-day photoshoot in Los Angeles, California, but the day before the shoot, the production company removed Plaintiff from the project without explanation. *Id.* ¶¶ 112–14. Plaintiff subsequently learned that the shoot was for the music video of a song featuring Pete. *Id.* ¶ 115. "Upon information and belief, Pete interfered with Plaintiff's contract" and "blackballed" Plaintiff among celebrities and performers, making it "impossible for him to work in the entertainment industry ever[] again." *Id.* ¶ 116. "Plaintiff has been unable to

secure comparable employment like he had with Defendants." *Id.* ¶ 117.

### B. Procedural History

This case was removed from the Superior Court Los Angeles County to the U.S. District Court for the Central District of California on May 29, 2024. Dkt. No. 1. On June 25, 2024, HGT, MTSE, and Ms. Pete filed a motion to transfer the case to the Southern District of New York. Dkt. No. 23. Ms. Pete and Roc Nation filed separate motions to dismiss that same day. Dkt. Nos. 22, 25. On October 4, 2024, the Honorable Hernan D. Vera of the Central District of California granted the motion to transfer and denied Roc Nation's motion to dismiss. Dkt. No. 42.

The case was transferred to the Southern District of New York and assigned to this Court on October 7, 2024. Dkt. No. 43. Ms. Pete and Roc Nation filed separate answers to the complaint on October 18, 2024. Dkt. Nos. 50, 51. The Court entered a case management plan and scheduling order on November 18, 2024. Dkt. No. 64. On January 14, 2025, with leave of the Court, Plaintiff filed the Amended Complaint. Dkt. No. 88. The Amended Complaint asserts nineteen causes of action under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the New York Labor Law ("NYLL"), the California Fair Employment and Housing Act ("FEHA"), California Labor Codes, and the California Business & Professions Code.

On February 12, 2025, Roc Nation filed a motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 93. Roc Nation filed a memorandum of law in support of its motion. Dkt. No. 95. Plaintiff filed a memorandum of law in opposition on March 5, 2025. Dkt. No. 100. Roc Nation filed a reply on March 12, 2025. Dkt. No. 101.

On February 12, 2025, Ms. Pete, HGT, and MTSE (collectively, the "Pete Defendants") filed a separate motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 96. The Pete Defendants filed a memorandum of law in support of their motion to

dismiss.  Dkt. No. 97.  Plaintiff filed a memorandum of law in opposition on March 5, 2025.  Dkt.

No. 99.  The Pete Defendants filed a reply on March 12, 2025.  Dkt. No. 102.

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not

enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]"

claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S.

at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)

(per curiam).  However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice."  A complaint must therefore contain more
> than "naked assertion[s] devoid of further factual enhancement."  Pleadings that
> contain "no more than conclusions . . . are not entitled to the assumption of truth"
> otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting

*Iqbal*, 556 U.S. at 678–79).  Thus, a complaint that offers "labels and conclusions" or "naked

assertion[s]" without "further factual enhancement" will not survive a motion to dismiss.  *Iqbal*, 556

U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

## IV. DISCUSSION

### A. The Amended Complaint Does Not Rely on Impermissible Group Pleading

The Court declines to dismiss the Amended Complaint on the basis that it relies on impermissible group pleading. Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8 imposes a 'lenient standard' for pleading." *Feldman v. Comp Trading, LLC*, No. 19-cv-4452 (RPK) (RLM), 2021 WL 930222, at *3 (E.D.N.Y. Mar. 11, 2021) (quoting *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks and ellipses omitted). "Rule 8 does not necessarily require . . . that the complaint separate out claims against individual defendants." *Wynder*, 360 F.3d at 80. "That is, '[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.'" *Feldman*, 2021 WL 930222, at *3 (quoting *Manchanda v. Navient Student Loans*, No. 19-cv-5121, 2020 WL 5802238, at *2 (S.D.N.Y. Sept. 29,

2020)) (collecting cases). "The question is ultimately whether the complaint gives each party 'notice of the substance of the claims against him.'" *Id.* (quoting *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, No. 14-cv-8916, 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015)).

The Amended Complaint adequately gives Defendants notice of Plaintiff's claims and the grounds on which they rest. While Defendants identify scattered instances in Plaintiff's 54-page complaint of what they call "group pleading," which "historically [has been] confined to fraud cases," *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 117 (2d Cir. 2023), these allegations are not so imprecise as to deprive Defendants of "fair notice of the claims against [them]," *Nesbeth v. New York City Mgt. LLC*, No. 17-cv-8650 (JGK), 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019). Plaintiff specifically identifies the conduct that he alleges created a hostile work environment and constituted retaliation, and Plaintiff asserts grounds for violations of wage and hour laws. Unlike in *Nesbeth*, which Defendants cite, the Amended Complaint generally specifies "which defendant engaged in what conduct." *Id.* While Plaintiff does not specify which defendant hired him, Am. Compl. ¶ 22, or which defendant notified him of his termination, *id.* ¶ 109, Plaintiff also repeatedly alleges that Defendants—collectively or as "alter egos" of one another—all employed Plaintiff and are therefore all liable for the alleged unlawful employment actions, *see id.* ¶¶ 11–14. Therefore, there is no question "which claims pertain to which defendants." *Nesbeth*, 2019 WL 110953, at *3.

### B. Plaintiff Plausibly Alleges That He Was an Employee of Defendants

Plaintiff alleges facts sufficient to plausibly plead that, under both New York law and the California Labor Code, he was in fact an employee of Defendants, not an independent contractor.[2]

---

[2] Defendants ask the Court to consider the employment agreement that Plaintiff entered into with HGT as support for their argument that he was in fact an independent contractor. *See* Dkt. No. 94-1 ("Employment Agreement"). Plaintiff neither attached the agreement to the Amended Complaint nor explicitly referenced the agreement in the Amended Complaint, and Plaintiff asserts that he did not rely on the agreement in drafting the Amended Complaint. *See* Dkt. No. 99 at 9; *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by reference, the court may neverless [sic] consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." (internal quotation marks omitted)). Plaintiff is not asserting claims of breach of the Employment Agreement; rather, his claims are based on Defendants' conduct allegedly in violation of

### 1. New York Law

Plaintiff plausibly pleads that he was an employee of all of the defendants under the NYLL standard.  Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003).  "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id.*  "[I]t is not significant how the parties defined the employment relationship." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013).

Plaintiff alleges that he did not work at his own convenience.  Rather, as part of Ms. Pete's entourage, Plaintiff was "unable to spend [his] time for [his] own benefit."  Am. Compl. ¶ 24; *see also id.* ¶ 88 ("Plaintiff was . . . forbidden from leaving the entourage").  Throughout his employment, his "constant availability" was required.  *Id.* ¶ 137.  Additionally, Plaintiff "had to travel with Pete and her entourage."  *Id.* ¶ 32.  And when doing so, he "was required to stay at [a] hotel and be on standby at all times."  *Id.* ¶ 138.

Plaintiff alleges that he was not free to engage in other employment.  Ms. Pete forbade

---

New York and California anti-discrimination and labor laws.  *See Moore v. Hadestown Broadway L.L.C.*, 722 F. Supp. 3d 229, 248 (S.D.N.Y. 2024) (holding that employment contracts were not integral to discrimination and retaliation claims when the plaintiff "did not actually rely heavily upon the terms and effect of the employment contracts to support her allegations" (cleaned up)).  In any event, the Employment Agreement would not change the Court's conclusion because under both California and New York law, "employee status . . . turns on substance, not form."  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 925 (S.D.N.Y. 2013).  Under New York law, "[t]he fact that a contract exists designating a person as an independent contractor is a factor to be considered, but is not dispositive."  *Perez v. NES Med. Servs. of New York, P.C.*, 162 N.Y.S.3d 777 (N.Y. App. Div. 2d Dept. 2022); *see also Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 599 (E.D.N.Y. 2012).  Similarly, under California law, "a business cannot unilaterally determine a worker's status simply by assigning the worker the label 'independent contractor' or by requiring the worker, as a condition of hiring, to enter into a contract that designates the worker an independent contractor."  *Dynamex Operations W. v. Super. Ct.*, 4 Cal.5th 903, 962 (2018); *see also Vendor Surveillance Corp. v. Henning*, 276 Cal. Rptr. 3d 458, 480 (Cal. App. 4th Dist. 2021) ("Courts ignore the parties' characterization if their actual conduct establishes a different relationship.").  Based on the following analysis, Plaintiff's allegations are sufficient to raise an inference that, regardless of the language of the Employment Agreement, he was an employee of all the defendants.

"Plaintiff from working with . . . anyone else," even as his work assignments tapered off.  *Id.* ¶¶ 86, 95, 111, 133, 136.  Plaintiff plausibly alleges that he was on Defendants' payroll, initially making a monthly salary of $4,000 before his compensation structure was changed.  *Id.* ¶ 134.  Plaintiff also alleges that he was on a fixed schedule, working "full-time" for Defendants at all hours of the day. *Id.* ¶¶ 126, 130–131.  Finally, Plaintiff alleges that Defendants exerted significant control and supervision over the process and results of his work.  *Id.* ¶¶ 23, 127–29, 132.  Therefore, Plaintiff alleges facts sufficient to plausibly plead that he was an employee of the Pete Defendants for purposes of the NYLL.

### a. Plaintiff Plausibly Pleads that Roc Nation Is a Joint Employer for Purposes of NYLL Liability

Plaintiff plausibly pleads that Roc Nation is a joint employer for purposes of his NYLL claims.  "The NYLL's definition of 'employer' is [] broad, focused on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Nereo v. Shleppers Holdings, LLC*, No. 22-cv-9505 (JGLC), 2025 WL 936570, at *4 (S.D.N.Y. Mar. 27, 2025) (internal quotation marks omitted).  "Even when one entity exerts 'ultimate' control over a worker, that does not preclude a finding that another entity exerts sufficient control to qualify as a joint employer."  *Id.* at *5 (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 148 (2d Cir. 2008)).  Because "[t]he statutory standard for employer status under the NYLL is nearly identical to that of the FLSA," *id.* at *4 (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 (S.D.N.Y. 2013)), "courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA," *id.* (quoting *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017) (collecting cases)).

"The qualification of a joint employer is grounded in the 'economic reality rather than technical concepts.'"  *Id.* at *5 (quoting *Barfield*, 537 F.3d at 141).  The joint employer test is a "flexible concept" that should be analyzed "on a case-by-case basis" after reviewing "the totality of

the circumstances." *Id.* An entity can be considered a joint employer if it exercises either "formal control" or "functional control" over the worker. *Barfield*, 537 F.3d at 143.

"The formal-control test asks whether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Castillo v. Albert Einstein Coll. of Med. Inc.*, No. 24-cv-984, 2025 WL 692124, at *3 (S.D.N.Y. Mar. 4, 2025) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). "No one of these factors is dispositive, nor [are] they, as a whole, exclusive." *Barfield*, 537 F.3d at 142–43.

The Second Circuit has held that determining joint employer status is "a question of fact not suitable to resolution on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *see also Castillo*, 2025 WL 692124, at *4; *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022).

Plaintiff has plausibly pleaded Roc Nation's formal control over his employment, sufficient to survive a motion to dismiss on the basis of joint employer status. Plaintiff alleges that Roc Nation had the power to terminate his employment and to determine the rate and structure of his compensation. Am. Compl. ¶¶ 6, 135, 222. Specifically, Plaintiff alleges that the CEO of Roc Nation "personally contacted [him] to alter [his] compensation structure from a monthly rate to a pay-per-task system." *Id.* ¶ 135. And Plaintiff alleges that it was Roc Nation that "reached out to [him] . . . and informed him that his services would no longer be required." *Id.* ¶ 222. While Roc Nation argues in its briefing that it "did not have any rights to terminate the engagement" and merely "communicated Ms. Pete's decision to Plaintiff on her behalf," Dkt. No. 95 at 12, that assertion is belied by the allegations of the Amended Complaint, *see* Am. Compl. ¶ 6, which the Court must accept as true at this stage of the litigation. Likewise, Roc Nation's assertion that it merely communicated Ms. Pete's decision regarding compensation is belied by Plaintiff's allegation

that when he confronted Ms. Pete about his wages, she said that "Roc Nation [] books her people." *Id.* ¶ 105. A motion to dismiss is not the proper vehicle to resolve those factual disputes. At this stage, Plaintiff has alleged enough facts that suggest that Roc Nation had formal control over his employment and therefore that Roc Nation was a joint employer.

### b. Plaintiff Plausibly Pleads that Roc Nation Is a Joint Employer for Purposes of NYSHRL and NYCHRL Liability

Plaintiff plausibly pleads that Roc Nation is a joint employer for purposes of his NYSHRL and NYCHRL discrimination claims. The New York Court of Appeals has held that when "determin[ing] who is an employer" for purposes of the human rights law, courts should consider four factors: "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct." *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174, 186 (2017) (internal citation and quotation marks omitted); *see also Fernandes v. Jadah Carroll, LLC*, 134 N.Y.S.3d 181, 182 (N.Y. App. Div. 1st Dept. 2020) (holding that in the NYCHRL context, "control over the conduct of another including selection, payment of wages, and power of dismissal . . . is the essential element of being an employer" (internal quotation marks and brackets omitted)). "[T]he really essential element of the relationship is the right of control, that is, the right of one person, the master, to order and control another, the servant, in the performance of work by the latter." *Griffin*, 29 N.Y.3d at 186.

For the same reasons discussed above, Plaintiff plausibly pleads that two of the four factors are met here. Plaintiff alleges that Roc Nation exerted significant control over his dismissal and over the payment of his salary or wages. Am. Compl. ¶¶ 6, 105, 135, 222. Therefore, Plaintiff plausibly pleads that Roc Nation was an employer for purposes of NYSHRL and NYCHRL liability.

### 2. California Law

It is not clear from the face of the Amended Complaint that Plaintiff was an independent contractor under California law. Under the applicable California law,

> a worker is properly considered an independent contractor . . . only if the hiring entity establishes: (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity.

*Dynamex Operations W. v. Super. Ct.*, 4 Cal.5th 903, 916–17 (2018) (the "ABC" test, codified by CAL. LAB. CODE § 2775(b)(1)). "[T]he burden [is] on the hiring entity to establish that the worker is an independent contractor" by "establish[ing] *each* of the three factors." *Id.* at 957. Therefore, at the motion to dismiss stage, Plaintiff's status as an independent contractor must be "clear from the face of the complaint." *Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024).

It is not clear from the face of the complaint that Plaintiff is an independent contractor under the "ABC" test. As discussed above, Plaintiff alleges that Defendants exercised control and direction over his work. Am. Compl. ¶¶ 23, 127–29, 132. Plaintiff also alleges that he "does not provide Personal Cameraman services 'independently' of his relationship with Pete." *Id.* ¶ 133; *see Dynamex Operations W. v. Super. Ct.*, 4 Cal.5th at 962 ("When a worker has not independently decided to engage in an independently established business but instead is simply designated an independent contractor by the unilateral action of a hiring entity, there is a substantial risk . . . [of] misclassification."). Therefore, it is not clear from the face of the complaint that prongs A and C are met in this case; indeed, the allegations suggest otherwise.

However, because CAL. LAB. CODE § 226.8 does not create a private right of action, Plaintiff's thirteenth claim against Defendants for misclassification under section 226.8 must be dismissed. *See Kim v. Reins Intl. Cal., Inc.*, 459 P.3d 1123, 1132 (Cal. 2020) ("Nor can employees misclassified as independent contractors sue for relief directly under section 226.8."); *Smart v. US LBM, LLC*, No. 24-cv-04416 (KAW), 2025 WL 91178, at *3–4 (N.D. Cal. Jan. 14, 2025) (citing *Noe v. Superior Court*, 237 Cal. App. 4th 316 (2015)).

### C. Hostile Work Environment / Discrimination Claims

#### 1. Plaintiff Has Not Adequately Pleaded a Hostile Work Environment in Violation of the FEHA

Plaintiff has failed to adequately plead that Defendants created a hostile work environment under the FEHA. "California courts have adopted the [Title VII] standard for hostile work environment sexual harassment claims under the FEHA." *Lyle v. Warner Brothers TV Productions*, 38 Cal. 4th 264, 279 (2006). Therefore, under the FEHA, "a hostile work environment sexual harassment claim requires a plaintiff employee to show she was subjected to sexual advances, conduct, or comments that were (1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Id.* (citations omitted) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81 (1998)). "To plead a cause of action for hostile work environment sexual harassment, it is only necessary to show that gender [or sexual orientation] is a substantial factor in the discrimination, and that if the plaintiff had been [of the opposite gender or sexual orientation] she would not have been treated in the same manner." *Id.* at 280 (internal quotation marks omitted); *see also Franks v. City of Santa Ana*, 735 F. App'x 305, 307 (9th Cir. 2018) (unpublished) (applied to harassment on the basis of sexual orientation); *Hope v. California Youth Auth.*, 36 Cal. Rptr. 3d 154, 163 (Cal. App. 2d Dist. 2005) (same). "Accordingly, it is the disparate treatment of an employee on the basis of [gender or sexual orientation]—not the mere discussion of sex or use of vulgar language—that is the essence of a sexual harassment claim." *Lyle*, 38 Cal. 4th at 280.

"The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 283 (cleaned up) (quoting *Oncale*, 523 U.S. at 81–82). "That inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Id.* (quoting *Oncale*, 523 U.S. at 81–82). "The real social impact of workplace behavior often depends on a constellation of

surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* (quoting *Oncale*, 523 U.S. at 81–82).

Plaintiff concedes that FEHA does not protect non-residents when the tortious conduct takes place outside California. *See* Dkt. No. 99 at 4; *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (1996) (holding that FEHA "should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California"); *Tetrault v. Capital Group Companies Glob.*, No. 2:23-cv-5144 (WLH), 2024 WL 3468903, at *5 (C.D. Cal. Jan. 17, 2024) (collecting cases) ("The California Court of Appeal in *Campbell v. Arco Marine, Inc.* . . . is the highest California court to address FEHA's presumption against extraterritoriality."); *Gonsalves v. Infosys Techs., LTD.*, No. 09-04112 (MHP), 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010) (holding that a plaintiff "fail[ed] to state a claim for relief under FEHA" because he "failed to allege facts from which the court could conclude that [the defendant] discriminated against him in California").[3] Therefore, for purposes of Plaintiff's FEHA claim, the Court considers only the three allegations that Plaintiff asserts are related to California: that "Plaintiff was required to accompany Defendant Pete to multiple strip clubs in California"; that Plaintiff "suffered harm in the state"; and that "Plaintiff lost work opportunities in Los Angeles due to interference by Defendants." Dkt. No. 99 at 4.

First, Plaintiff has failed to adequately plead that the excursions to strip clubs in California constituted harassment on the basis of his sexual orientation. He alleges that the entire entourage was brought to these events. Am. Compl. ¶¶ 30–35. He does not allege that he, as a gay man, was singled out for participation in any way or that Ms. Pete was targeting him by planning these events.

---

[3] The cases cited by Plaintiff in his opposition to Roc Nation's motion, Dkt. No. 100 at 9, do not address the FEHA, but instead address provisions of California's wage and hour laws. *Sullivan v. Oracle Corp.*, 254 P.3d 237 (Cal. 2011); *Bernstein v. Virgin Am., Inc.*, 227 F. Supp. 3d 1049 (N.D. Cal. 2017), *aff'd*, 3 F.4th 1127 (9th Cir. 2021). These cases are therefore uninstructive.

*See Kelley v. The Conco Companies*, 126 Cal. Rptr. 3d 651, 664 (Cal. App. 1st Dist. 2011) ("No evidence . . . was presented from which a reasonable trier of fact could conclude that they were an expression of actual sexual desire or intent by Seaman, or that they resulted from Kelley's actual or perceived sexual orientation."). He therefore does not allege any "disparate treatment" on account of his sexual orientation. *Lyle*, 38 Cal. 4th at 280.[4] Plaintiff merely alleges that as a gay man, he is "not attracted to women," Dkt. No. 99 at 13, and therefore, he attended the strip clubs "strictly out of his duties to his employer." Am. Compl. ¶ 35. Plaintiff fails to state a claim of hostile work environment under FEHA merely by alleging that he was forced to attend a club against his wishes, with no allegation that the requirement was because of his sexual orientation. *See Lyle*, 38 Cal. 4th at 282 ("[A] hostile work environment sexual harassment claim is not established where a supervisor or coworker simply uses crude or inappropriate language in front of employees or draws a vulgar picture, without directing sexual innuendos or gender-related language toward a plaintiff or toward [the protected class] in general.").[5]

Second, Plaintiff's vague and conclusory argument that he suffered unspecified "harm" in California is not sufficient to allege severe and pervasive harassment for a FEHA claim. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1047 (2005) ("[C]omplaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct.").

Third, as for Plaintiff's allegation that he lost work opportunities in California, he was no

---

[4] While none of the alleged statements were made in California, Plaintiff also points to Ms. Pete's derogatory language on two occasions—separate from the strip clubs—as evidence of her animus toward Plaintiff's sexual orientation. Dkt. No. 99 (citing Am. Compl. ¶¶ 75, 101, 103, 104). However, "it has been cautioned the term 'bitch' is not so sex-specific and derogatory that its mere use necessarily constitutes harassment because of sex," or in this case sexual orientation. *Lyle*, 38 Cal. 4th at 282.

[5] While the Court need not reach the issue of whether the alleged harassment is sufficiently severe, the Court would consider Plaintiff's allegations in light of the "social context" and "surrounding circumstances [and] expectations"—specifically, a context in which Plaintiff's job was as a photographer in an entourage for an artist like Megan Thee Stallion. *Lyle*, 38 Cal. 4th at 280.

longer employed by Defendants at the time of this alleged occurrence.  *See Bailey v. San Francisco Dist. Attorney's Off.,* 16 Cal. 5th 611, 627 (2024) (holding that, under FEHA, an "employee must show she was subjected to harassing conduct that was . . . sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment").  In any event, his one allegation that he was removed from a photoshoot is not enough to demonstrate "severe" or "pervasive" hostile conduct.  Am. Compl. ¶ 115; *see Herberg v. California Inst. of the Arts*, 101 Cal. App. 4th 142, 151 (2002) ("[For] a single incident . . . to be sufficient to establish liability by an employer [under FEHA] . . . such a single incident must be severe in the extreme and generally must include either physical violence or the threat thereof."); *Bailey*, 16 Cal. 5th 611, 630 ("[I]solated incidents (unless extremely serious) are not sufficient to create an actionable claim of harassment." (internal quotation marks omitted)).  Plaintiff's allegations therefore fail to state a hostile work environment claim under FEHA.[6]

Because Plaintiff fails to state a FEHA claim against Ms. Pete, Plaintiff's twelfth claim against the Corporate Defendants for failure to prevent or remedy harassment under FEHA also fails.  *See Tran v. Cnty. of Orange*, No. 8:23-cv-00681 (RGK) (KES), 2024 WL 5440864, at *8 (C.D. Cal. Aug. 1, 2024) ("Because [Plaintiff's racial harassment claim] fails, Plaintiff has no basis for her failure to prevent and remedy harassment claim, as she cannot show that Defendant failed to prevent harassment where there has been no finding of harassment."); *Carter v. Cal. Dept. of Veterans Affairs*, 38 Cal. 4th 914, 925 n.4 (2006) ("[C]ourts have required a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k).").

### 2. Plaintiff Plausibly Pleads Discrimination Under the NYSHRL and the NYCHRL

Plaintiff plausibly pleads that he faced a hostile work environment on account of his sexual

---

[6] The Court need not and does not decide whether or not the allegations of Ms. Pete's conduct in California raise claims under the New York anti-discrimination laws.

orientation, sufficient for his NYSHRL and NYCHRL claims to survive at this stage.  The NYSHRL prohibits an employer from "discharg[ing] . . . or [] discriminat[ing] against [an] individual in compensation or in terms, conditions or privileges of employment" "because of [the] individual's . . . sexual orientation, . . . sex, [or] disability."  N.Y. EXEC. LAW § 296(a).  To establish a hostile work environment claim under the NYCHRL, "the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her [gender, disability, or sexual orientation]."  *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal quotation marks omitted); *see* N.Y.C. ADMIN. CODE § 8-107(1)(a)(3). Under both the NYSHRL and the NYCHRL, "[t]he plaintiff [] bears the burden of showing that the conduct is caused by a discriminatory motive."  *Mihalik*, 715 F.3d at 110.  "It is not enough that a plaintiff has an overbearing or obnoxious boss[;] [s]he must show that she has been treated less well at least in part *because of* her [protected characteristic]."  *Id.* (emphasis in original).

Because Plaintiff worked in New York, Plaintiff's allegations of conduct outside of New York can form the basis for state and city human rights law claims.  The New York Court of Appeals "established an 'impact' test for nonresidents seeking to assert claims under the State and City Human Rights Laws."  *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024) (citing *Hoffman v. Parade Publications*, 15 N.Y.3d 285 (2010)).  There are "two ways in which a nonresident may satisfy the impact requirement:  (1) working in New York or (2) establishing that the challenged conduct had some impact on the plaintiff within the respective New York geographic boundaries."  *Id.* at 452.  "[T]he impact test [thus] 'expands' the protections of the Human Rights Laws 'to nonresidents who work in the' state or city and to those who 'state a claim that the alleged discriminatory conduct had any impact in either of those locations.'"  *Id.* at 451–52 (internal citations omitted) (quoting

*Hoffman*, 15 N.Y.3d at 290, 292).[7]

Here, Plaintiff alleges that he "spent a substantial amount of time" working in New York state and New York City. Am. Compl. ¶ 32. He worked in New York "at least once per month, and sometimes remained in New York for weeks at a time." *Id.* The Court finds that these allegations are sufficient to plausibly plead that Plaintiff "work[ed] in the state or city." *Syeed*, 41 N.Y.3d at 451 (quoting *Hoffman*, 15 N.Y.3d at 290). Thus, his allegations of hostile work environment abroad had an impact in New York state and city. *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 558 (S.D.N.Y. 2024) (holding that where "the alleged discriminatory act [took] place outside of New York City," the impact requirement was satisfied because the "[p]laintiff's alleged place of employment is New York City").

The cases cited by Defendants are distinguishable. In *King v. Aramark Services Inc.*, which was issued only days after *Syeed* and does not cite to *Syeed*, the Second Circuit held that the plaintiff could not prove an impact felt in New York because she spent only "intermittent" time working in New York. 96 F.4th 546, 558 (2d Cir. 2024) (distinguishing cases in which "the plaintiff's primary site of work was her home office in New York"). By contrast, Plaintiff alleges more than an "intermittent" work schedule in New York; he alleges regular work each month, sometimes for most of the month. *Compare Hoffman*, 15 N.Y.3d at 288 (where the plaintiff's only relationship to New York was attending quarterly meetings in the city). And in *Hardwick v. Auriemma*, which was issued by the First Department a decade before *Syeed*, the court held that the plaintiff failed to allege an impact in New York because her work for USA Basketball, Inc. at the London Olympics did not have "any impact on the terms, conditions or extent of her employment with the NBA" in New York. 983 N.Y.S.2d

---

[7] The New York Court of Appeals in *Syeed* did not clarify what it means to be "working in New York" or how much time a nonresident must spend in New York to be considered "working in New York" for NYSHRL and NYCHRL purposes. *Syeed*, 41 N.Y.3d at 452. The *Syeed* court did, however, impress that the statutes "require[] [a] liberal construction of 'inhabitants' and 'individual within this state.'" *Id.* at 453.

509, 512 (N.Y. App. Div. 1st Dept. 2014). By contrast, Plaintiff's work for Ms. Pete abroad was part and parcel of his employment for Ms. Pete as a personal cameraman in New York.

At this early stage in the litigation, Plaintiff plausibly pleads that the alleged sexual encounter in the SUV in Ibiza created a hostile work environment based on Plaintiff's sexual orientation. Defendants do not dispute Plaintiff's contention that the alleged SUV incident would constitute a hostile work environment as defined under the NYSHRL and NYCHRL; Defendants merely dispute whether Plaintiff has alleged facts from which one may infer a causal relationship between Plaintiff's sexual orientation and his being subjected to the incident. *See* Dkt. No. 102 at 9. Plaintiff asks the Court to draw the inference that "Pete would not have engaged in group sex with other women in front of a heterosexual male"; that "Pete felt comfortable engaging in group sex with other women in front of Plaintiff *because* of Plaintiff's sexuality and gender." Dkt. No. 99 at 14. This is not an unreasonable inference to draw from the facts alleged.[8] Therefore, Plaintiff has plausibly pleaded that he experienced the alleged inferior conditions of his employment on account of his sexual orientation.[9]

### D. Overtime and Wage Statement Claims

#### 1. Plaintiff Has Not Adequately Pleaded Violations of California's Overtime Wage Law

Plaintiff has not adequately pleaded a violation of the California Labor Code's overtime provisions. A plaintiff asserting violations of the overtime provisions "must allege that she worked

---

[8] Defendants cite *Bliss v. MXK Restaurant Corp.* for the proposition that being "subjected to nudity, prostitution, and people performing sexual acts in her presence" does not necessarily state a claim for hostile work environment "on the basis of gender." 220 F. Supp. 3d 419, 424 (S.D.N.Y. 2016). However, in that case, the plaintiff "[did] not claim that she was subjected to these sights because she is a woman." *Id.* Here, Plaintiff argues that he was subjected to it only because of his sexual orientation.

[9] Because the Court holds that Plaintiff states a NYSHRL and NYCHRL claim based on sexual orientation, the Court need not address Plaintiff's allegations of discrimination on the basis of disability and weight. The court simply notes that under the NYCHRL, "weight" is a protected characteristic for purposes of § 8-107(1)(a) discrimination. And Plaintiff's allegations—specifically that Ms. Pete singled Plaintiff out to shout expletives at him while calling him "fat" and telling him to spit out his food in front of others—plausibly constitutes being treated "less well" on the basis of his weight and eating disorder. *See* Am. Compl. ¶¶ 75, 77.

more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Landers v. Quality Commun., Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *as amended* (Jan. 26, 2015). A plaintiff need not allege "with mathematical precision the amount of overtime compensation owed by the employer." *Id.* at 646. Instead, she "should be able to allege facts demonstrating there was at least one workweek in which [she] worked in excess of forty hours and [was] not paid overtime wages." *Id.* (citing *Dejesus v. HF Mgt. Services, LLC*, 726 F.3d 85, 90 (2d Cir. 2013)).

The Supreme Court of California has held that the Labor Code's provisions apply to nonresidents for work performed in California. *See Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1196–202 (2011). Courts must "apply California's overtime law to full days and weeks of work performed [there] by nonresidents." *Sullivan*, 51 Cal.4th at 1201; *see also Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 751 (2020) ("[W]e held that California's overtime laws applied to nonresident employees of a California corporation who worked in California for 'full days and weeks' at a time." (quoting *Sullivan*, 51 Cal.4th at 1201)).

Plaintiff has failed to allege that he worked overtime hours for a given day or week of work in California. Plaintiff merely alleges that he spent a "substantial amount of time working in [] California," Am. Compl. ¶ 32, and separately alleges that during his employment, he worked "sometimes 16+ hours a day" and "in excess of fifty (50) hours" per week, *id.* ¶¶ 27, 132. Plaintiff does not allege that any of these 16-hour days occurred in California. And even if the Court were to interpret Plaintiff's allegation to mean that he worked in excess of fifty hours every week, he does not allege than any of these weeks were full weeks in California. Plaintiff does not allege that there was at least one full workweek *in California* in which he worked overtime hours. *Cf. Sherman v. Schneider Natl. Carriers, Inc.*, No. 18-cv-8609 (AB) (JCX), 2019 WL 3220585, at *3 (C.D. Cal. Mar. 6, 2019) (holding that while the plaintiff "allege[d] that he worked approximately 10–12 hours per day

23

each day he worked, . . . he [did] not establish that he worked 40 hours in any week"); *Ward*, 9 Cal.5th at 751(declining to hold "that California's employment laws *always* apply to every minute or hour of work performed in this state" (emphasis in original)).  Therefore, Plaintiff has failed to adequately plead that Defendants violated the California Labor Code's overtime provisions.

### 2. Plaintiff Has Not Adequately Pleaded Violations of California's Wage Statement Law

Because Plaintiff has failed to plausibly plead that he performed a majority of his work in California or that he is based in California for work purposes, Plaintiff fails to state a claim under section 226(a) of the California Labor Code.  "Section 226 requires an employer to supply each employee, 'semimonthly or at the time of each payment,' a written wage statement listing the employer's name and address; identifying the pay period; itemizing the total hours worked, applicable hourly rates, hours worked at each rate, gross and net wages earned, and any deductions taken; and disclosing other prescribed information."  *Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 743 (2020) (citing CAL. LAB. CODE § 226(a)).  "[T]o determine whether section 226 applies, courts should consider in the first instance whether the employee works the majority of the time in California, or in another state."  *Id.* at 760.  "For employees . . . who do not work principally in any one state, a court should consider secondarily whether the employee has a definite base of operations in California, in addition to performing at least some work in the state for the employer."  *Id.*  An employee is "based in California" if "California serves as the physical location where the worker presents himself or herself to begin work."  *Id.* at 755.  The employer's location is "not pertinent."  *Id.* at 760.

Plaintiff fails to allege either that he worked principally in California or that he had a definite base of operations in California.  Plaintiff only pleads he "spent a substantial amount of time

working in both California [and] New York." Am. Compl. ¶ 32.[10]  Pleading that he spent a

substantial amount of time in California is not equivalent to pleading that he spent a *majority* of his

work time in California.  *See Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1142 (9th Cir. 2021) (holding

that "[t]here is [] no evidence that the class members performed the majority of their work in

[California]" because the "class members collectively worked only 31.5% of their time in

California").  Further, Plaintiff does not allege that California served as the base of operations for his

work for Defendants.  Therefore, Plaintiff has failed to adequately plead a claim under section 226(a)

of the California Labor Code.

### 3.  Plaintiff Fails to Adequately Plead a Violation of the NYLL Overtime Provision

Plaintiff's NYLL claim for failure to pay overtime is pleaded with insufficient detail to cross

the line to plausibility.  In 2013, the Second Circuit decided a trilogy of cases which set the contours

of pleading a case for failure to pay overtime wages under the Fair Labor Standards Act (the

"FLSA"):  *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106 (2d Cir. 2013); *Nakahata v New

York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192 (2d Cir. 2013); and *Dejesus v. HF Management

Services, LLC*, 726 F.3d 85 (2d Cir. 2013).  While these cases focused on the pleading standards for a

claim under the FLSA, the Second Circuit applied the same pleading standard to the NYLL claims

pleaded in those cases.  *See, e.g.*, *Nakahata*, 723 F.3d at 201; *Dejesus*, 726 F.3d at 89 n.5.  In *Dejesus*, the

Second Circuit held that "an approximation of overtime hours" is not "a necessity in all cases."

*Dejesus*, 726 F.3d at 88.  However, "an approximation 'may help draw a plaintiff's claim closer to

plausibility.'"  *Id.* (quoting *Lundy*, 711 F.3d at 114 n.7).  In *Dejesus*, the Second Circuit affirmed

dismissal of a complaint because the plaintiff "did not estimate her hours in any or all weeks or

provide any other factual context or content."  *Dejesus*, 726 F.3d at 89.  Instead, the plaintiff "alleged

---

[10] Indeed, Plaintiff's opposition brief only argues that California law applies because Plaintiff "worked in California on multiple occasions and was required to perform duties within the state."  Dkt. No. 99 at 5.

only that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation." *Id.*

The Amended Complaint suffers from the same deficiency identified in *Dejesus*. Plaintiff simply alleges that during an unspecified period, "Plaintiff worked in excess of fifty (50) hours," Am. Compl. ¶ 132,[11] and was not compensated "at the statutory minimum wage and overtime rate," *id.* ¶ 188. Plaintiff simply added ten hours to the very same threadbare allegation that the Second Circuit deemed a "rephrasing of the [statutory] formulation." *Dejesus*, 726 F.3d at 89. Plaintiff therefore fails to "nudge [his] claim from conceivable to plausible." *Id.* at 90 (internal quotation marks omitted).

While the Court need not reach the issue, the Court also notes that, as with Plaintiff's California overtime claim, the Amended Complaint fails to delineate which weeks and hours of overtime Plaintiff worked in New York. *See Mendoza v. Cornell U.*, 189 N.Y.S.3d 159 (N.Y. App. Div. 1st Dept. 2023) ("[W]ithout sufficient detail about the length and frequency of her unpaid work to support a reasonable inference that she worked more than forty hours in a given week, plaintiff fails to state a claim for overtime pay under the Labor Law." (internal brackets and quotation marks omitted)). "Courts in this Circuit have held that the New York Labor Law does not apply extraterritorially to work performed outside of New York." *Belanger v. New York U.*, No. 21-cv-1644 (LAP), 2025 WL 963308, at *14 (S.D.N.Y. Mar. 31, 2025) (quoting *Smith v. Vera Inst. of J., Inc.*, No. 21-cv-6430 (DG) (CLP), 2023 WL 11879682, at *15–16 (E.D.N.Y. Aug. 11, 2023) (collecting cases)) (brackets omitted); *see also In re Stage Presence, Inc.*, No. 12-cv-10525 (MEW), 2019 WL 2004030, at *10 (S.D.N.Y. May 7, 2019) (collecting cases).

---

[11] Note that the Amended Complaint also states that Plaintiff "worked forty (40) hours per week, sometimes more." Am. Compl. ¶ 245.

### 4. Defendants Provide No Basis on Which to Dismiss Plaintiff's NYLL Wage Notice and Wage Statement Claims

Defendants offer no arguments, beyond those already addressed elsewhere in this opinion, why the Court should dismiss Plaintiff's NYLL claim for failure to provide accurate wage notices and wage statements. NYLL § 198(1) provides a private right of action for violations of sections 195(1) and 195(3)—failure to provide wage notices and wage statements. Defendants fail to address Plaintiff's section 198 claim separate from the arguments that Plaintiff was not an employee. *See* Dkt. No. 95 at 10. Therefore, the Court declines to dismiss that claim. *See Marchiano v. Berlamino*, No. 10-cv-7819 (LBS), 2012 WL 4215767, at *7 (S.D.N.Y. Sept. 20, 2012) (collecting cases) (declining to dismiss a claim without parties' briefing on the issue).

### E. Meal and Rest Break Claim

The Court declines to dismiss Plaintiff's claim that Defendants violated the meal and rest break provisions of the California Labor Code § 226.7. Defendants' only argument for why Plaintiff fails to state a claim under section 226.7 is that Plaintiff does not allege "the reason his meal and rest periods were denied." Dkt. No. 102 at 3. However, the case on which Defendants rely, *Bunkley v. Cole Haan, LLC*, does not require that a plaintiff allege the "reason" his meal and rest breaks were denied; the case only held that it was insufficient for the plaintiff to allege that he "skipped them by his choice." No. 2:24-cv-245 (DAD) (AC), 2025 WL 50688, at *6 (E.D. Cal. Jan. 8, 2025). However, in this case, unlike in *Bunkley*, Plaintiff has alleged that Defendants "impermissibly denied those breaks," *id.*, during the "entirety of his employment," Am. Compl. ¶ 249, which one can reasonably infer includes his time in California. Therefore, Defendants' motion to dismiss the thirteenth claim of the Amended Complaint is denied.[12]

---

[12] Because Plaintiff states a claim for unpaid meal and rest break wages, Plaintiff's seventeenth claim for violation of California Labor Code §§ 200–04 may proceed. Defendants make no argument why Plaintiff's seventeenth claim should be dismissed otherwise.

### F. Retaliation Claims

#### 1. Plaintiff Adequately Pleads Retaliation Under the NYSHRL, NYCHRL, and NYLL

Plaintiff sufficiently pleads claims for retaliation under the NYSHRL, the NYCHRL, and the NYLL. The NYSHRL prohibits retaliation "against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. EXEC. LAW § 296(7). The NYCHRL is materially identical: "Section 8-107(7) of the NYCHRL prohibits employers from 'retaliating or discriminating in any manner against any person because such person has opposed any practice forbidden under this chapter.'" *Mihalik*, 715 F.3d at 112 (quoting N.Y.C. ADMIN. CODE § 8-107(7)) (alterations omitted). After the 2019 amendments to the NYSHRL, "the standard for claims [under the NYSHRL] [is] closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 284 (S.D.N.Y. 2024); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). Accordingly, Plaintiff must plead that "(1) [he] engaged in a protected activity as that term is defined under the NYCHRL, (2) [his] employer was aware that [he] participated in such activity, (3) [his] employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 246 (N.Y. App. Div. 2d Dept. 2021).

Similarly, NYLL § 215 provides, in pertinent part, that no employer "shall discharge, threaten, penalize, or in any other manner discriminate against any employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the NYLL]." N.Y. LAB. LAW § 215(1)(a); *see also Schmidt-Sarosi v. Offs. For Fertility & Reprod. Med., P.C.*, 150

N.Y.S.3d 75, 78 (App. Div. 1st Dept. 2021).  "[T]he elements of FLSA and NYLL retaliation claims overlap in all material respects."  *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 470 (S.D.N.Y. 2021).  Plaintiff must plead "(1) participation in protected activity known to the defendant . . . ; (2) adverse employment action [a]ffecting the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Id.* (quoting *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).

NYLL § 740, often referred to as New York's 'whistleblower law,' prohibits "[a]n employer" from taking "any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation."  N.Y. LAB. LAW § 740(2).  Under the statute, a plaintiff must first allege that she disclosed or threatened to disclose to a supervisor an activity, policy, or practice of the employer that the employee at least reasonably believed was illegal.  *Id.*  The plaintiff must then point to a retaliatory, adverse action taken by the employer in response to that complaint.  *See* N.Y. LAB. LAW § 740(1)(e).  As a result, for an employer "[t]o fall afoul of the [whistleblower] statute," "the adverse action must [have been] taken 'because' the employee engaged in protected activity.  In other words, the whistleblower statute . . . requires some causal connection between an adverse personnel action and a report of [illegal] activity."  *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 354 (S.D.N.Y. 2017) (quoting *Varughese v. Mount Sinai Med. Ctr.*, No. 12-cv-8812, 2015 WL 1499618, at *68 (S.D.N.Y. Mar. 27, 2015)).

### a.  Protected Activities

Plaintiff adequately alleges that he engaged in protected activity when he confronted Ms. Pete about her treatment of him during the Ibiza incident and about her failure to pay Plaintiff the wages he is owed.  The Court is sympathetic to Defendants' argument that Plaintiff's allegations that

he "opposed [Ms. Pete's] unlawful conduct" and "opposed Defendants' unlawful wage practices" are rather vague and nearly threadbare recitals of the elements of the claim. But Defendants are incorrect that Plaintiff must allege that he specifically identified the "unlawful conduct" to be discrimination. Rather, "[t]he New York Court of Appeals has held that 'opposing any practice' can include situations where a person, before the retaliatory conduct occurred, merely 'made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong." *Mihalik*, 715 F.3d at 112 (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011)) (alterations omitted). While Plaintiff "did not say in so many words" that the Ibiza incident was "discriminatory," he made clear to Ms. Pete that the conduct was unlawful and wrong. *Albunio*, 16 N.Y.3d at 479. At the pleading stage, the Court finds this allegation sufficient to constitute a plausible protected activity.

Likewise, Plaintiff's allegations regarding his opposition to alleged improper pay adequately "put [his] employer on notice that [he] is asserting statutory rights." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015). Plaintiff alleges not that he told Ms. Pete his "pay was too low." *Compare Mestizo v. H2 Candy & Nuts, Inc.*, No. 17-cv-8519 (NSR) (LMS), 2019 WL 2212153, at *6 (S.D.N.Y. Apr. 8, 2019) (holding that "complaints that . . . pay was too low were not sufficiently clear . . . in light of both content and context, as an assertion of rights protected by the statute"). Rather, he alleges that he told Ms. Pete that he was not "be[ing] paid all of the wages owed" to him, Am. Compl. ¶ 102, which plausibly implies "an assertion of [statutory] rights," *Mestizo*, 2019 WL 2212153, at *6. Additionally, he alleges that he challenged her purported "unlawful" wage practices. *Compare Watkins v. First Student, Inc.*, No. 17-cv-1519 (CS), 2018 WL 1135480, at *10 (S.D.N.Y. Feb. 28, 2018) ("Plaintiff has not alleged that she made a 'clear articulation of facts indicative of illegality.'"). The Court therefore finds that Plaintiff has adequately pleaded that he engaged in protected activity in opposing violations of the NYSHRL, NYCHRL, and NYLL.

### b. Causal Connection to Retaliatory Conduct

Plaintiff has alleged facts sufficient to infer a retaliatory motive for the adverse employment actions at the pleading stage. Plaintiff alleges that after he complained to Ms. Pete about the allegedly harassing incident in Ibiza, and after she threatened Plaintiff to never speak about it, he was booked less frequently than prior to the incident. Am. Compl. ¶¶ 82–84. And only two months after complaining about the Ibiza incident, Defendants changed his compensation structure such that he earned less for the same amount of work. Am. Compl. ¶¶ 94, 135. These facts raise a reasonable inference that material terms and conditions of Plaintiff's employment were altered in retaliation for speaking up about the Ibiza incident. *See Wooding v. Winthrop U. Hosp.*, No. 16-cv-4477 (ADS) (ARL), 2017 WL 2559942, at *12 (E.D.N.Y. June 12, 2017) (holding that at the motion-to-dismiss stage, "five months is not too long to [infer] the causal relationship" between an informal complaint and adverse employment action for a NYSHRL claim (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010))); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities."). And Plaintiff's allegation that he was fired within weeks after complaining to Ms. Pete about alleged wage violations is sufficient to infer a causal relationship for purposes of his NYLL retaliation claims. Am. Compl. ¶¶ 108–12; *see Mitchell v. Ceros, Inc.*, No. 21-cv-1570 (KPF), 2022 WL 748247, at *8 (S.D.N.Y. Mar. 10, 2022) (holding that a NYLL retaliation claim was sufficiently pleaded when the plaintiff was fired "'several weeks' after her final complaint").

### 2. Extraterritorial Application of the NYLL's Retaliation Provision

Defendants cannot at this stage defeat Plaintiff's NYLL retaliation claim by arguing that the conduct occurred outside "New York state's geographical boundaries." Dkt. No. 97 at 10. "[T]he

presumption against extraterritorial application of the NYLL does not control in all circumstances." *Solouk v. European Copper Specialties, Inc.*, No. 14-cv-8954 (DF), 2019 WL 2181910, at *16 (S.D.N.Y. May 2, 2019); *see also Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*, No. 13-cv-6789 (CBA) (LB), 2015 WL 5567073, at *8–9 (E.D.N.Y. Sept. 21, 2015). In *Padula v. Lilarn Properties Corp.*, the New York Court of Appeals applied New York choice-of-law analysis to a NYLL claim brought by a New York worker for a tort occurring in a different state. 84 N.Y.2d 519, 521–23 (1994). The Court of Appeals rejected the position taken by the concurring judge that the NYLL is "inapplicable to conduct occurring outside the state." *Id.* at 523–24 (Titone, J., concurring).

The potential choice-of-law question in determining whether Plaintiff may invoke the NYLL's retaliation protection is "fact-intensive" and "premature to resolve at the motion to dismiss stage." *Bristol–Myers Squibb Co. v. Matrix Laboratories Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (unpublished) (collecting cases). At this stage, Plaintiff has alleged that he worked in New York consistently, and as a result of his termination, which he alleges was retaliatory, he lost this New York employment. *See Smith v. Vera Inst. of J., Inc.*, No. 21-cv-6430 (DG) (CLP), 2023 WL 11879682, at *16 (E.D.N.Y. Aug. 11, 2023) (analyzing whether the allegations "plac[ed] plaintiff in New York during th[e] months" he faced "acts of retaliation" in violation of the NYLL). The Court declines to hold that Plaintiff is barred from invoking the retaliation protections of the NYLL at this stage.

### 3. Plaintiff Plausibly Pleads that Defendants' Retaliatory Conduct Occurred in California, Sufficient to State a Claim Under the California Labor Code

Because Plaintiff alleges that the decision to terminate him was made in California, the Court declines to dismiss his retaliation claim under CAL. LAB. CODE §§ 98.6, 1102.5 on this basis.

California Labor Code section 1102.5 forbids an employer from retaliating against an employee for disclosing information to a manager or other employee with power to investigate a violation or noncompliance if the employee has reasonable cause to believe that the information discloses a violation of law. Similarly, California Labor Code section 98.6 prohibits an employer from retaliating against an employee for engaging in any conduct delineated in Chapter 5 of the Labor Code, which includes

section 1102.5.

*Wilson v. Wavestream Corp.*, No. 2:24-cv-61 (MCS) (BFM), 2024 WL 3914475, at *2 (C.D. Cal. May 13, 2024) (citations omitted).  "In evaluating the extraterritorial application of California Labor Code sections 1102.5 and 98.6, the Court must evaluate whether the alleged conduct giving rise to liability—that is, the action that created the litigation—occurred in California."  *Id.* at *3 (collecting cases).

Plaintiff alleges that the decision to wrongfully terminate him after he complained about wage and hour violations was made by "senior management, supervisors, and human resources officers . . . physically located in California."  Am. Compl. ¶ 6.  He has therefore plausibly pleaded that sections 1102.5 and 98.6 apply in this case.  *See Tetrault v. Capital Group Companies Glob.*, No. 2:23-cv-5144 (WLH), 2024 WL 3468903, at *7 (C.D. Cal. Jan. 17, 2024) (holding that a section 1102.5 claim was sufficiently pleaded because the plaintiff "sufficiently alleged the identity of the individuals in California directly involved in the alleged discrimination, retaliation, and wrongful termination of Plaintiff"); *Wilson*, 2024 WL 3914475, at *3 ("[T]he conduct giving rise to liability . . . is Wavestream's decision to terminate his employment after he disclosed information of alleged wrongdoing, and Wilson alleges that decision came from Wavestream and Wavestream's human resources personnel, both located in California . . . meaning the application of sections 1102.5 and 98.6 are not extraterritorial."); *Leibman v. Prupes*, No. 2:14-cv-09003 (CAS), 2015 WL 3823954, at *8 (C.D. Cal. June 18, 2015).[13]

---

[13] Because Plaintiff plausibly pleads a violation of CAL. LAB. CODE §§ 98.6, 1102.5, the Court has been offered no basis to dismiss Plaintiff's claim for violation of the California Business & Professions Code §§ 17200, *et seq.*  Defendants concede that the Business & Professions Code claim is predicated on violations of the FEHA and Labor Code," and thus only argue that it "fails for the same reasons" that they contend his other claims fail. Dkt. No. 97 at 8 n.5.  Because at least one of Plaintiff's California Labor Code claims survives, so too does his Business & Professions Code claim.

### G. Aiding and Abetting Claims

#### 1. Plaintiff Fails to Adequately Plead New York Aiding and Abetting Claims Against the Corporate Defendants

Because Plaintiff fails to allege that the Corporate Defendants shared Ms. Pete's alleged discriminatory and retaliatory intent, Plaintiff fails to state New York state and city aiding and abetting claims against the Corporate Defendants. Both the NYSHRL and the NYCHRL make it unlawful "to aid, abet, incite, compel or coerce the doing of" any discriminatory or retaliatory acts under the statutes. N.Y. EXEC. LAW § 296(6); N.Y. ADMIN. CODE § 8-107(6). "The same standard governs aiding and abetting claims under the NYSHRL and NYCHRL 'because the language of the two laws is virtually identical.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)). "[A]iding and abetting 'liability requires that the aider and abettor share the intent or purpose of the principal actor.'" *Id.* (quoting *Fried v. LVI Servs., Inc.*, No. 10-cv-9308 (JSR), 2011 WL 2119748, at *8 (S.D.N.Y. May 23, 2011)). "'A supervisor's failure to take adequate remedial measures in response to a complaint of discrimination' can, with proper factual allegations, constitute actual participation." *Id.* (quoting *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 555 (S.D.N.Y. 2014)).

The Amended Complaint is devoid of any allegations that the Corporate Defendants had any knowledge of or intent to aid or abet the discriminatory and retaliatory acts alleged. Plaintiff does not allege that he reported any of the discriminatory or hostile conduct to the Corporate Defendants. Rather, he alleges that, until he finally confronted Ms. Pete about his wage complaints during the June 2023 phone call, he "remain[ed] silent" about the "unlawful pay practices and acts of retaliation." Am. Compl. ¶¶ 95–97. *See McHenry*, 510 F. Supp. 3d at 78 (holding that the plaintiff failed to allege that the defendant "knew about harassment and failed to stop it" where "the Amended Complaint does not plead that [plaintiff] made any complaint to [defendant]" during the alleged harassment). He alleges that he "lack[ed] a human resources representative to whom he

could complain." Am. Compl. ¶ 96. Prior to the June 2023 phone call, he alleges that he confided only in Alex. *Id.* ¶ 97. And Plaintiff does not allege that he reported any of his complaints to the Corporate Defendants after the June 2023 phone call.

That Roc Nation and the other corporate defendants were allegedly involved in the termination does not support a claim for aiding and abetting where there are no allegations that they were aware of or shared Ms. Pete's discriminatory or retaliatory intent. Plaintiff offers nothing more than conclusory recitations of the legal standard that would suggest that the Corporate Defendants were aware of Ms. Pete's conduct or otherwise had an intent to discriminate or retaliate against Plaintiff. *See McHenry*, 510 F. Supp. 3d at 85 ("The Amended Complaint's remaining allegations relating to its claim that Fox Corp. aided and abetted harassment or retaliation by Murdoch or Fox News are either conclusory . . . or do not allege concrete involvement." (citations omitted)); *Fried*, 2011 WL 2119748, at *8 (dismissing an aiding and abetting claim where the plaintiff "provides *no* allegations . . . that go to [the defendant's] state of mind, much less that [the defendant] shared some allegedly discriminatory animus with other defendants"). Therefore, Plaintiff fails to state aiding and abetting claims against the Corporate Defendants.

### 2. Plaintiff Adequately Pleads Aiding and Abetting Claims Against Ms. Pete

Plaintiff's allegations are sufficient to state a claim for aiding and abetting liability against Ms. Pete. While generally "a person cannot aid and abet his own wrongful conduct," the NYSHRL and NYCHRL extend "personal liability 'for aiding and abetting allegedly unlawful discrimination by an employer even where an individual defendant's actions serve as the predicate for the employer's vicarious liability,' so long as the employer's conduct has also been found to be discriminatory under the NYSHRL." *McHenry*, 510 F. Supp. 3d at 73 (emphasis omitted) (internal brackets omitted) (quoting *Xiang v. Eagle Enterprises, LLC*, No. 19-cv-1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020)). "In this regard, the individual defendant, who may have personally committed the

discrimination, is not held liable for aiding and abetting his own actions, but instead, is deemed liable for aiding and abetting the primary violation by the employer." *Parra*, 48 F. Supp. 3d at 555.[14] Because Plaintiff has alleged that Ms. Pete committed acts of unlawful discrimination and retaliation, liability for which is imputed to the Corporate Defendants, Plaintiff adequately states a claim against Ms. Pete for aiding and abetting.

## V.    LEAVE TO AMEND

Defendants' motions to dismiss are granted in part with leave to amend as described below. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

Plaintiff fails to adequately allege facts sufficient to plausibly plead FEHA claims; overtime and notice claims under the California Labor Code; overtime claims under the NYLL; and aiding and abetting claims under the New York human rights laws. The Court cannot conclude that further amendment would not cure these deficiencies in the Amended Complaint. The Court therefore grants Plaintiff leave to file a second amended complaint solely to cure the deficiencies identified with respect to these claims no later than 30 days from the date of this order. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015).

---

[14] Courts have recognized that the Second Circuit's decision in *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), which first articulated this rule, is "not without controversy." *See, e.g., Tully-Boone v. N. Shore-Long Island Jewish Hosp. System*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008). The rule "erase[s] any distinction the legislature sought to draw by using the word employer." *Perks v. Town of Huntington*, 96 F. Supp. 2d 222, 228 (E.D.N.Y. 2000) (quoting *Lippold v. Duggal Color Projects, Inc.*, No. 96-cv-5869, 1998 WL 13854, at *3 (S.D.N.Y. Jan.15, 1998)). And it "creates a strange and confusing circularity where the person who has directly perpetrated the harassment only becomes liable through the employer whose liability in turn hinges on the conduct of the direct perpetrator." *Id.* (quoting *Lippold*, 1998 WL 13854, at *3). "Nevertheless, 'until the Second Circuit revisits the issue, *Tomka* is the law in this circuit.'" *Tully-Boone*, 588 F. Supp. 2d at 427 (quoting *Perks*, 96 F. Supp. 2d at 228).

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.  The following of Plaintiff's claims are dismissed without prejudice, with leave to amend as described above:  claims three and six (NYSHRL and NYCHRL aiding and abetting) as to the Corporate Defendants, claim nine (NYLL wages and overtime), claims eleven and twelve (FEHA), claim fifteen (California Labor Code overtime), and claim sixteen (California Labor Code wage statement).  Plaintiff's thirteenth claim for misclassification under California Labor Code sections 226.8 and 2750.3 is dismissed with prejudice.  The motions to dismiss are denied with respect to Plaintiff's remaining claims.

SO ORDERED.

Dated:  July 2, 2025

_____
GREGORY H. WOODS
United States District Judge