UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMILIO GARCIA,

Plaintiff,

-against-

ROC NATION LLC; HOT GIRL TOURING, LLC; MEGAN THEE STALLION ENTERTAINMENT, INC.; MEGAN THEE STALLION; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 1:24-cv-07587-GHW

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROC NATION LLC'S MOTION TO CERTIFY THE COURT'S AUGUST 7, 2026 ORDER FOR IMMEDIATE APPEAL**

**FJ LAW**
Joseph Jeziorkowski, Esq.
Daniel Folchetti, Esq.
*Attorneys for Plaintiff*
2975 Westchester Avenue, Suite 418
Purchase, New York 10577
914-730-2422

**WEST COAST TRIAL LAWYERS, APLC**
Ronald L. Zambrano, Esq. (*Pro hac vice*)
*Attorneys for Plaintiff*
1147 South Hope Street
Los Angeles, CA 90015
213-927-3700

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 6

BACKGROUND ..... 8

A. The August 7 Order ..... 8

B. The Trial Date and Roc Nation's Motion ..... 10

ARGUMENT ..... 12

I. Roc Nation's Proposed Question Mischaracterizes the Court's Ruling and Assumes Away the Disputed Facts ..... 12

II. The Order Presents No Controlling Question of Law Because it Turns on Disputed Facts ..... 13

A. Section 1292(b) permits review of pure legal questions that can be decided without examining the record ..... 13

B. A fact-bound denial of summary judgment is not certifiable. ..... 14

C. Joint-employer status requires a fact-intensive inquiry. ..... 15

D. Roc Nation's own arguments confirm that it seeks review of the Court's fact-finding, not a legal ruling. ..... 17

III. Roc Nation Identifies No "Substantial Ground For Difference Of Opinion." ..... 17

IV. An Immediate Appeal Would Not Materially Advance The Ultimate Termination Of The Litigation ..... 20

V. Roc Nation Cannot Justify a Stay Of This Trial-Ready Action ..... 22

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

## CASES

*Areu v. Fox News Network, LLC*,
No. 20-CV-8678 (RA), 2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021) .................................. 6, 20

*Barfield v. New York City Health & Hosps. Corp.*,
537 F.3d 132 (2d Cir. 2008)........................................................................................Passim

*Bayne v. NAPW, Inc.*,
No. 18-CV-3591 (MKB) (MMH), 2024 WL 633164 (E.D.N.Y. Feb. 6, 2024)......................... 15

*Bynog v. Cipriani Grp., Inc.*,
1 N.Y.3d 193 (2003)........................................................................................................ 15, 17

*Carroll v. Trump*,
687 F.Supp.3d 394 (S.D.N.Y. 2023) .......................................................................... 7, 21, 22

*Carter v. Dutchess Cmty. Coll.*,
735 F.2d 8 (2d Cir. 1984)................................................................................................ 14, 18

*Chappell & Co. v. Frankel*,
367 F.2d 197 (2d Cir. 1966)............................................................................................. 5, 14

*Chen v. St. Beat Sportswear, Inc.*,
364 F.Supp.2d 269 (E.D.N.Y. 2005)........................................................................................ 15

*Consub Del. LLC v. Schahin Engenharia Limitada*,
476 F.Supp.2d 305 (S.D.N.Y. 2007) ........................................................................................ 17

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) ................................................................................................................ 10

*Dupree v. Younger*,
598 U.S. 729 (2023)................................................................................................................. 13

*Dynamex Operations W. v. Superior Ct.*,
4 Cal. 5th 903 (2019)........................................................................................................ 17, 18

*Fernandez v. HR Parking Inc.*,
407 F.Supp.3d 445 (S.D.N.Y. 2019) ........................................................................................ 15

*Ferring B.V. v. Allergan, Inc.*,
343 F.Supp.3d 284 (S.D.N.Y. 2018) ........ 21, 22

*Freeman v. Nat'l Broadcasting Co., Inc.*,
No. 85 CIV 3302(LBS), 1993 WL 524858 (S.D.N.Y. Dec. 15, 1993) ........ 13

*Futrell v. Payday California, Inc.*,
190 Cal. App. 4th 1419 (2010) ........ 15

*Giuffre v. Dershowitz*,
No. 19-CV-3377 (LAP), 2021 WL 6052116 (S.D.N.Y. Dec. 21, 2021) ........ 11

*Gottesman v. General Motors Corp.*,
268 F.2d 194 (2d Cir. 1959) ........ 10

*Harriscom Svenska AB v. Harris Corp.*,
947 F.2d 627 (2d Cir. 1991) ........ 14

*Hart v. Rick's Cabaret Int'l, Inc.*,
967 F.Supp.2d 901 (S.D.N.Y. 2010) ........ 9, 15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
986 F.Supp.2d 524 (S.D.N.Y. 2014) ........ Passim

*In re Worldcom*,
2003 WL 21498904 (S.D.N.Y. June 30, 2003) ........ 12, 15

*Isra Fruit Ltd. v. Agrexco Agr. Exp. Co.*,
804 F.2d 24 (2d Cir. 1986) ........ 19

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) ........ 10

*Koehler v. Bank of Bermuda Ltd.*,
101 F.3d 863 (2d Cir. 1996) ........ 10, 13

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) ........ 15, 17, 18

*Mills v. Everest Reins. Co.*,
771 F.Supp.2d 270 (S.D.N.Y. 2009) ........ 5

*Monaghan v. SZS 33 Assocs., L.P.*,
153 F.R.D. 60 (S.D.N.Y. 1994) ........ 5, 13, 14

*Murray v. Metro. Life Ins. Co.*,
583 F.3d 173 (2d Cir. 2009) ........................................ 11

*Smith v. Calypso Charter Cruises Inc.*,
No. 19 CIV. 7076 (PAE), 2021 WL 4084182 (S.D.N.Y. Sept. 8, 2021) ........................................ 20

*Sutherland v. Ernst & Young LLP*,
856 F.Supp.2d 638 (S.D.N.Y. 2012) ........................................ 21

*Thomas v. Meyers Assocs., L.P.*,
39 Misc. 3d 1217, 2013 WL 1777483 (N.Y. Sup. Ct. 2013) ........................................ 15

*Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*,
358 F.Supp.2d 347 (S.D.N.Y. 2005) ........................................ 11

*Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*,
964 F.2d 85 (2d Cir. 1992) ........................................ 11, 19

**STATUTES**

28 U.S.C. § 1292 ........................................ 21

28 U.S.C. § 1292(b) ........................................ Passim

N.Y. Exec. Law § 296-d ........................................ 20

N.Y.C. Admin. Code § 8-107(23) ........................................ 20

**PRELIMINARY STATEMENT**

Roc Nation's motion does not present a question of law. Rather, it assumes the answer to the factual question this Court reserved for the jury. That defect is fatal, and it recurs throughout.

Roc Nation identifies no legal standard the Court misapplied. Instead, it repackages the factual arguments the Court considered and rejected, asking the Second Circuit to reweigh the same record. In a well-reasoned, sixty-four (64) page opinion, the Court examined Roc Nation's role in negotiating Mr. Garcia's pay, controlling his schedule, reviewing his invoices, and withdrawing his final assignment, and concluded that a reasonable jury could find Roc Nation was his employer. Roc Nation now recasts that fact-bound ruling as a legal error by insisting that the "undisputed facts" compel the opposite result. That is not a basis for interlocutory review. It is a request for reconsideration disguised as an interlocutory appeal.

The August 7, 2026 Memorandum Opinion & Order (Dkt. No. 176; (the "Order")) did not decide a pure question of law. It denied summary judgment because the record contained genuine disputes of material fact on whether Roc Nation jointly employed Emilio Garcia — disputes on each factor of governing joint employment tests. (*Id.* at 28, 40). A denial of summary judgment "by definition is based on the notion that triable issues of facts remain," and the Second Circuit has long doubted "whether the denial of summary judgment when the applicable law is clear but there is a genuine issue as to a material fact can properly be certified under Section 1292(b)." *Monaghan v. SZS 33 Assocs., L.P.*, 153 F.R.D. 60, 64 (S.D.N.Y. 1994) (quoting *Chappell & Co. v. Frankel*, 367 F.2d 197, 200 n.4 (2d Cir. 1966). "The antithesis of a proper Section 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *In re Facebook, Inc., IPO Sec. &*

*Derivative Litig.*, 986 F.Supp.2d 524, 536 (S.D.N.Y. 2014) (quoting *Mills v. Everest Reins. Co.*, 771 F.Supp.2d 270, 275-76 (S.D.N.Y. 2009).

That is precisely this motion, and Roc Nation fails at every step. First, the Order presents no "controlling question of law." Joint-employer status is a fact-intensive, economic-reality inquiry that the Second Circuit "rarely" resolves as a matter of law. This Court did not resolve it as a matter of law here — it sent it to a jury. Order at 39 (citing *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008).

Second, there is no "substantial ground for difference of opinion." The governing standards are settled, and Roc Nation does not dispute them. It disputes only how the Court applied them to the facts and the inferences the Court drew.

Third, an immediate appeal would not "materially advance the ultimate termination of the litigation." The surviving claims against the Pete Defendants require a trial regardless of how the proposed appeal is resolved on substantially overlapping evidence concerning Mr. Garcia's compensation, schedule, invoices, assignments, complaints, and termination, and the Court has already set that trial to begin on June 7, 2027. Dkt. No. 188 ("Trial Scheduling Order") at 1. Roc Nation has not even shown that reversal would remove it from the case. The New York City Human Rights Law ("NYCHRL") extends its protections to independent contractors, and so Mr. Garcia's surviving discrimination claim against Roc Nation would not fall with an appellate ruling on "employer" status. *Areu v. Fox News Network, LLC*, No. 20-CV-8678 (RA), 2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021). Removing one defendant (or only certain claims) from a multi-defendant trial already on the calendar would streamline nothing. Tellingly, Roc Nation filed this motion on September 4, 2026 — after the Court fixed that trial date on August 26, 2026 — and now asks to

halt a case the Court has already ordered to trial. Trial Scheduling Order at 1; Dkt. No. 193 ("Def's MOL") at 2.

Finally, Roc Nation's alternative request — a stay of a case already set for trial — should be denied for the same reasons and more. Section 1292(b) provides that a certification application "shall not stay proceedings" absent a separate order. Roc Nation cannot make the strong showing of likely success required for a discretionary stay, and the only harm it identifies — standing trial — is not irreparable, while the stay it seeks would postpone a June 7, 2027 jury trial and prejudice Mr. Garcia and the public interest in the prompt resolution of a case the Court has already scheduled. Trial Scheduling Order at 1; *Carroll v. Trump*, 687 F.Supp.3d 394 (S.D.N.Y. 2023).

As such, Plaintiff Emilio Garcia ("Mr. Garcia or "Plaintiff") submits this memorandum in opposition to Defendant Roc Nation, LLC's motion. The Court should deny the motion in its entirety.

## BACKGROUND

### A. The August 7 Order

After full discovery, the Court denied summary judgment on Mr. Garcia's California and New York wage-and-hour claims, holding that "a reasonable jury could conclude that all Defendants exercised a high degree of control over Mr. Garcia's schedule, pay, and performance of his duties such that they jointly employed him." Order at 2. It likewise denied summary judgment on Mr. Garcia's retaliation claims under the NYLL and California law, because "a reasonable jury could also conclude that each of the Defendants terminated Mr. Garcia because he raised concerns about his pay." *Id.* at 2. The Court granted summary judgment to Defendants only on the NYCHRL and NYSHRL retaliation claims and the FEHA claims. Mr. Garcia's discrimination claims under the NYCHRL and NYSHRL survived. Order at 2, 44.

Every ruling Roc Nation now seeks to appeal rests on the Court's identification of genuine factual disputes. Applying Rule 56, the Court resolved all ambiguities, drew all permissible factual inferences in favor of Mr. Garcia, and expressly reserved "[a]ssessments of credibility and choices between conflicting versions of the events" for "the jury, not for the court on summary judgment." Order at 24, 27.

The Court's joint-employer analysis was factor-by-factor and fact-by-fact. Under California law, applying the "control over the wages, hours or working conditions" definition from *Martinez v. Combs*, the Court held that "[a] reasonable jury could conclude Roc Nation had the power to negotiate and set Mr. Garcia's rate of pay," because Roc Nation managed the budget for Ms. Pete's events, "negotiated Mr. Garcia's rate of pay from June 2022 to June 2023," and "approved Mr. Garcia's proposed rate prior to requesting Ms. Pete's approval." Order at 29. The Court found that inference "bolstered" by Roc Nation CEO Desiree Perez's own emails — sent on a thread that included only Mr. Garcia, his attorney, and Roc Nation employees — telling Mr. Garcia, "we cannot pay you for time you aren't present" and "we are happy to pay for editing, it would not be the same pricing." Order at 29. The Court further held that "[a] reasonable jury could also find that Roc Nation exercised control over Mr. Garcia's hours," because Roc Nation "set the schedule for events at which Mr. Garcia worked," distributed those schedules to him, and "directed Mr. Garcia to promptly respond to their requests for work product at all hours." Order at 29-30.

Under New York law, the Court applied the Second Circuit's *Barfield* formal-control and functional-control framework and found genuine disputes on "all four formal control factors." Order at 40. On the power to hire and fire, the Court pointed to evidence that a Roc Nation representative offered Mr. Garcia the Essence New Orleans event in June 2023, then retracted the offer, after which Roc Nation never contacted him again — all without any explicit direction from

Ms. Pete to stop using him. Order at 40. On schedules, conditions, and on rate of pay, the Court incorporated its California findings. Order at 40. On employment records, the Court found that Mr. Garcia sent invoices reflecting his hours to Roc Nation and to Ms. Perez, and that "Roc Nation reviewed these invoices, used them to determine whether Mr. Garcia's rate of pay was commensurate with the agreement Roc Nation negotiated, submitted them for Ms. Pete's eventual approval, and at times double-checked those invoices." Order at 41. The Court expressly recognized that "[e]ven when one entity exerts 'ultimate' control over a worker, that does not preclude a finding that another entity exerts sufficient control to qualify as a joint employer," and that joint-employer status "is rarely appropriate to make at the summary judgment stage, 'because of the fact-intensive character of a determination of joint employment.'" Order at 39-40 (first quoting *Barfield* 537 F.3d at 148 (2d Cir. 2008); then quoting *Hart v. Rick's Cabaret Int'l, Inc.* 967 F.Supp.2d 901, 941 (S.D.N.Y. 2013).

The Court applied the same record to Mr. Garcia's surviving Human Rights Law discrimination claims, holding that "there remain genuine disputes of fact concerning whether Mr. Garcia was an employee of Roc Nation within the meaning of the Human Rights Laws," including "genuine disputes of fact concerning their power to control his schedule, decide his rate of pay, and to terminate his services." Order at 45.

**B. <u>The Trial Date and Roc Nation's Motion</u>**

On August 26, 2026, the Court entered a scheduling order fixing this case for trial. A jury trial "will begin on Monday, June 7, 2027," preceded by a final pretrial conference on May 19, 2027, with the joint pretrial order and related submissions due March 29, 2027. Trial Scheduling Order at 1.

On September 4, 2026 — after the Court set the trial date — Roc Nation moved to certify the Order for interlocutory appeal. Def's MOL at 2. The motion frames a single asserted "controlling question of law": whether an agent acting for a disclosed principal "may be deemed" a joint employer under the California Labor Code, the NYLL, the NYSHRL, and the NYCHRL. Def's MOL at 6. Roc Nation contends this is a "pure question of law" the Second Circuit could resolve "without having to study the record," that its resolution would terminate the claims against Roc Nation, and that agency-law and *Erie* principles supply a substantial ground for difference of opinion. Def's MOL at 9, 11-12.

Roc Nation also requests a stay of the entire litigation pending the Second Circuit's resolution of a petition for leave to appeal. Def's MOL at 20. Notably, Roc Nation concedes that the underlying question of Mr. Garcia's employee vs. independent contractor status vis-à-vis the Pete Defendants remains "to be determined at trial." *Id.* at 7.

## LEGAL STANDARD

Interlocutory appeal under 28 U.S.C. § 1292(b) is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). The power to certify "must be strictly limited to the precise conditions stated in the law," and "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21 (2d Cir. 1990) (first quoting *Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959); then quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

28 U.S.C. § 1292(b) provides a narrow exception to the final judgement rule by allowing a district court to certify a question for interlocutory appeal if (1) the issue involves a controlling

question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Giuffre v. Dershowitz,* No. 19-CV-3377 (LAP), 2021 WL 6052116, at *1 (S.D.N.Y. Dec. 21, 2021) (citing *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 176 (2d Cir. 2009).

The movant bears the burden of establishing all three statutory prerequisites — a controlling question of law, a substantial ground for difference of opinion, and material advancement of the ultimate termination of the litigation. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d 524; *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85 (2d Cir. 1992). Those "three prerequisites create a significant hurdle to certification," and courts have emphasized that "interlocutory appeals are strongly disfavored in federal practice," that the statute must "be strictly construed," and that § 1292(b) cannot be invoked "as a vehicle to provide early review [even] of difficult rulings in hard cases." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 529-530. Even where all three criteria appear to be met, "district courts retain 'unfettered discretion to deny certification' if other factors counsel against it." *Id.* at 530 (quoting *Transp. Workers Union of Am., Local 100 v. NYC Transit Auth.*, 358 F.Supp.2d 347, 351 (S.D.N.Y. 2005). Roc Nation's motion does not clear this hurdle on any prong.

## ARGUMENT

### I. Roc Nation's Proposed Question Mischaracterizes the Court's Ruling and Assumes Away the Disputed Facts

Roc Nation's certification request begins from a false premise. It casts the Order as holding that an agent acting "solely" as a "conduit" for a disclosed principal may be deemed a joint employer. Def's MOL at 6. That is not what the Court held, and the gap between Roc Nation's question and the Court's ruling is fatal to the motion at the threshold.

The Court did not hold that ordinary agency activity establishes joint-employer liability, or that a management company becomes a joint employer merely by performing routine tasks for a client. It identified evidence from which a reasonable jury could conclude that Roc Nation negotiated and set Mr. Garcia's pay, controlled aspects of his schedule, reviewed and challenged his invoices, withdrew an assignment, and participated in ending his services. Order at 29, 41. Whether Roc Nation acted "only as a conduit" and "nothing more" is therefore not a legal premise the Court adopted—it is Roc Nation's characterization of a disputed record, which the Court was not required, and expressly declined, to accept on summary judgment.

Roc Nation's repeated invocation of the "undisputed facts" cannot cure the defect. That particular events occurred may be undisputed, while the inferences to be drawn from them remain sharply contested —and here the parties dispute what Roc Nation's pay negotiations, compensation emails, scheduling directives, invoice review, and withdrawal of the Essence assignment reveal about the authority it exercised. The Court held a jury could draw employer-status inferences from that evidence. Order at 40. Roc Nation's proposed question eliminates those competing inferences by writing its preferred conclusion into the question itself. A question that assumes away the factual disputes underlying the challenged ruling is not a controlling question of law, is not the question this Court decided, and is not a proper subject for certification. *See generally, In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d (discussing the qualifications for a controlling question and the duty of the district judge in reviewing a challenged ruling).

## II. <u>The Order Presents No Controlling Question of Law Because it Turns on Disputed Facts</u>

### A. ***Section 1292(b) permits review of pure legal questions that can be decided without examining the record.***

A § 1292(b) appeal "requires a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'" *In re Facebook, Inc., IPO Sec. &*

*Derivative Litig.*, 986 F.Supp.2d at 536 (quoting *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003). The corollary is decisive here: "[q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)," and "mixed questions of law and fact are not appropriate for certification" either. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 536 (quoting *Freeman v. Nat'l Broadcasting Co., Inc.*, No. 85 CIV 3302(LBS), 1993 WL 524858, at *1-*2 (S.D.N.Y. Dec. 15, 1993). As Judge Sweet put it, "[t]he antithesis of a proper Section 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 536. The Supreme Court has confirmed the point Roc Nation's own motion invokes: a purely legal question is one "whose answer is independent of disputed facts." *Dupree v. Younger*, 598 U.S. 729, 737 (2023); Def's MOL at 10.

The Second Circuit applies this principle to refuse certification of fact-dependent rulings. In *Koehler*, the court vacated a certification because the issue "turns on a thorough examination of the facts," declining to "rely on what may turn out to be an incomplete record" and to decide issues that "might vanish upon full development of the factual record." *Koehler*, 101 F.3d at 866. Section 1292(b), the court held, "was not meant to substitute an appellate court's judgment for that of the trial court." *Id*.

### ***B. A fact-bound denial of summary judgment is not certifiable.***

The rule is longstanding and directly on point. "A denial of summary judgment by definition is based on the notion that triable issues of facts remain," and it is "doubtful whether the denial of summary judgment when the applicable law is clear but there is a genuine issue as to a material fact can properly be certified under Section 1292(b)." *Monaghan*, 153 F.R.D. at 64. The Second Circuit stated the governing rule decades ago, "a garden variety denial of a summary

judgment motion on the ground that there is a genuine issue as to a material fact" is not a candidate for extraordinary interlocutory review. *Chappell & Co. v. Frankel*, 367 F.2d 197 (2d Cir. 1966). "Where . . . the controlling issues are questions of fact, or more precisely, questions as to whether genuine issues of material fact remain to be tried, the federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court." *Monaghan*, 153 F.R.D. at 64 (quoting *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991).

*Monaghan* is squarely analogous. There, the court held certification "inappropriate when the denial of summary judgment . . . was rooted in the conclusion that triable issues of fact remain unresolved," and rejected the notion that a legal question becomes certifiable merely because it carries a legal label, since "the answer is inevitably tied to factual questions regarding the circumstances and conditions at issue." *Monaghan*, 153 F.R.D. at 64. The August 7 Order is the same kind of ruling. This Court denied summary judgment because "there are disputes of fact concerning" whether Roc Nation exercised control over Mr. Garcia's wages and hours (Order at 28), and because "[t]here are genuine disputes of fact concerning all four formal control factors." Order at 40. That is not a pure question of law. It is the paradigmatic non-certifiable ruling.

### *C. Joint-employer status requires a fact-intensive inquiry.*

Roc Nation's premise — that whether it is a joint employer is an abstract legal question — is wrong. Under the FLSA and the coextensive NYLL, employer status is grounded in "economic reality rather than technical concepts" and is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield*, 537 F.3d at 141 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 n. 1 (2d Cir. 1984). The Second Circuit has expressly held that, "[b]ecause of the fact-intensive character of a determination of joint employment, we rarely

have occasion to review determinations made as a matter of law on an award of summary judgment." *Id*. at 143-144. Courts in this Circuit accordingly hold that "[i]t is 'rarely appropriate' to determine joint employer status at the summary judgment stage . . . 'because of the inquiry's fact-intensive character,'" and that whether a defendant is an "employer" is "a mixed question of law and fact, . . . 'especially well-suited for jury determination' and 'rarely suitable for summary judgment.'" *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 633164 (E.D.N.Y. Feb. 6, 2024); see also, *Hart*, 967 F.Supp.2d at 941. The NYLL "embodies the same standards for joint employment as the FLSA." *Fernandez v. HR Parking Inc.*, 407 F.Supp.3d 445, 452 (S.D.N.Y. 2019) (quoting *Chen v. St. Beat Sportswear, Inc.*, 364 F.Supp.2d 269, 278 (E.D.N.Y. 2005)).

New York's employee versus independent contractor inquiry is equally factual. "[T]he critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer," assessed through a multi-factor test. *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (Ct. Appeals 2003). That inquiry "is fact sensitive and often presents a question for the trier of fact." *Thomas v. Meyers Assocs., L.P.*, 39 Misc. 3d 1217, 2013 WL 1777483 at *3 (N.Y. Sup. Ct. 2013). California law is no different: "[t]o employ" means, among other things, "to exercise control over the wages, hours or working conditions…" *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), a determination decided on summary judgment review only where there is "no triable issue as to any material fact," with the evidence "view[ed] . . . in the light most favorable to plaintiffs." *Id*. at 68; *see also*, *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1437 (2010).

This is not, in short, an area where the Second Circuit can "decide quickly and cleanly without having to study the record." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 536 (quoting *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).

To rule for Roc Nation, the Court of Appeals would have to comb the very record this Court has already combed — Ms. Perez's emails, the invoices, the event schedules, the Essence retraction — and reweigh the inferences this Court drew in Mr. Garcia's favor. That is fact review, not legal review, and it is exactly what interlocutory appeal is not for.

***D. Roc Nation's own arguments confirm that it seeks review of the Court's fact-finding, not a legal ruling.***

Roc Nation's papers give the game away. Its central complaint is that "the inferences that the August 7 Order relied on . . . are both unreasonable and directly contradicted by the undisputed facts," and it asks the Second Circuit to hold that the Court committed "an incorrect application of the summary judgment standard." Def's MOL at 18. That is not a legal question — it is an accusation that this Court misread its own record and misapplied Rule 56, aimed at a fifty-plus-page analysis the Court has already set down in writing. An argument that the Court drew the wrong inferences from the evidence is not a controlling question of law at all. It is a request for appellate reweighing of a summary-judgment record, which is precisely the type of fact-bound dispute that § 1292(b) does not permit.

Roc Nation does not identify any legal standard the Court got wrong. It accepts the *Martinez*, *Dynamex*, *Bynog*, and *Barfield* frameworks and quarrels only with their application to this record. Stripped of its packaging, the motion asks the Court of Appeals to reassess the factual inferences drawn from this record — the one thing a Section 1292(b) certification does not permit. That is an appeal for the end of the case, not the middle.

**III. <u>Roc Nation Identifies No "Substantial Ground For Difference Of Opinion."</u>**

A "substantial ground for difference of opinion" exists only when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second

Circuit," and it is met only where the movant shows "genuine doubt as to whether the district court applied the correct legal standard in its order." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 539-540 (internal citations omitted). Roc Nation does not come close.

The legal standards governing employer status are settled and undisputed. California's "wages, hours, or working conditions" test comes from the California Supreme Court in *Martinez* and *Dynamex*. See, *Martinez*, 49 Cal. 4th 35; *Dynamex Operations W. v. Superior Ct.*, 4 Cal. 5th 903 (2018). New York's control test comes from the New York Court of Appeals in *Bynog*. See, *Bynog*, 1 N.Y.3d 193. The formal-and functional-control framework comes from the Second Circuit in *Barfield*. See, *Barfield*, 537 F.3d 132. Roc Nation does not contend that this Court applied the wrong standard, it contends the Court reached the wrong result under the right standard. That is not "genuine doubt as to whether the district court applied the correct legal standard" — it is ordinary disagreement, which the cases uniformly hold is not enough. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 540 (quoting *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F.Supp.2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008).

Roc Nation's agency-law and *Erie* theory does not manufacture a substantial ground for difference of opinion, because it answers a question the Order did not decide. Mr. Garcia does not contend that Roc Nation is liable merely because it served as Ms. Pete's agent or is vicariously responsible for her conduct. He contends that Roc Nation's own exercise of control over his pay, hours, assignments, records, and termination satisfies the statutory definition of "employer." The principle that an agent is not vicariously liable for its principal's conduct does not answer whether the agent's own conduct makes it an employer — those are distinct questions. The controlling wage-and-hour authority confirms as much, as the Supreme Court held that the FLSA's definition of "employ" has a "striking breadth" that "stretches the meaning of 'employee' to cover some

parties who might not qualify as such under a strict application of traditional agency law principles." *Barfield*, 537 F.3d at 141 (internal citations omitted). California's wage-order definition was "specifically intended" to reach "situations in which multiple entities control different aspects of the employment relationship, as when one entity, which hires and pays workers, places them with other entities that supervise the work." *Martinez*, 49 Cal. 4th at 59; see also, *Dynamex Operations W.*, 4 Cal. 5th at 937. Further, the Second Circuit has squarely "rejected 'ultimate control' as the determinative factor of an entity's status as an employer," holding that another entity's "'ultimate' authority does not alter the fact that [the putative joint employer] also exercised some authority which helps establish the economic reality of its status as a joint employer." *Barfield*, 537 F.3d at 141 (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 n. 1 (2d Cir. 1984).

Roc Nation's cited cases do not establish a conflict. They are, in the main, out-of-circuit decisions and district-court rulings applying fact-specific records at different procedural postures — the *Jean-Louis* cable-technician case, the *Jacobson* Comcast quality-control case, the Fifth Circuit's *Gray*, the First Circuit's *Baystate*, and the California *Fiol* supervisory-liability decision. Def's MOL at 15-16. None are binding in this Circuit, and none hold that an entity that negotiates a worker's pay, sets his schedule, reviews his hours, and can retract his assignments is a non-employer as a matter of law. Decisions from other jurisdictions applying settled law to different facts do not create the "conflicting authority" or novel question of first impression that § 1292(b) requires. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 540. At most, Roc Nation shows that joint-employer cases are fact-specific — which is an argument against certification, not for it.

## IV. An Immediate Appeal Would Not Materially Advance The Ultimate Termination Of The Litigation

The third criterion asks whether an immediate appeal "may materially advance the ultimate determination of the litigation." 28 U.S.C. § 1292(b); *Westwood Pharms., Inc.*, 964 F.2d at 88. An appeal materially advances a case only when it may avoid a trial or materially shorten the proceedings. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F.Supp.2d at 531. This appeal would do neither, and the Court's trial schedule confirms it. The surviving claims against the Pete Defendants require a trial regardless of how the proposed appeal is resolved, and the Court has set that trial to begin on June 7, 2027. Trial Scheduling Order at 1.

The Order denied summary judgment to the Pete Defendants on the same California and New York wage-and-hour claims and the same NYLL and California retaliation claims. Order at 2. Those claims will be tried whether or not Roc Nation remains a party, on the same core evidence the Court relied on in denying summary judgment — Mr. Garcia's schedule and hours, his compensation negotiations, the invoices, the Essence retraction, and the circumstances of his termination. Where certified claims are closely related to the claims that will proceed, and the trial of those claims would not be shortened, an immediate appeal does not materially advance the litigation. *Isra Fruit Ltd. v. Agrexco Agr. Exp. Co.*, 804 F.2d 24, 25-26 (2d Cir. 1986). Here, Roc Nation personnel and their communications are part of the evidence concerning the Pete Defendants' own control, so the same witnesses and documents remain in the case regardless. Even where an issue is controlling and debatable, certification fails this prong when "the same factual issues" would "still have to be litigated" no matter how the appeal comes out. *Westwood Pharms., Inc.*, 964 F.2d at 88.

Roc Nation has not established that reversal would necessarily eliminate all claims against it. The NYCHRL extends its employment protections beyond employees. Effective January 2020, the NYCHRL was amended to cover "interns, freelancers, and independent contractors." N.Y.C. Admin. Code § 8-107(23); *Smith v. Calypso Charter Cruises Inc.*, No. 19 CIV. 7076 (PAE), 2021 WL 4084182 at *7 (S.D.N.Y. Sept. 8, 2021); see also, *Areu*, 2021 WL 4124226 at *10 (recognizing that the NYCHRL "covers some non-employees," including "interns, freelancers and independent contractors"). Similarly, the NYSHRL extends protections non-employees who are "a contractor, subcontractor, vendor, consultant or other person providing services pursuant to a contract in the workplace." N.Y. Exec. Law § 296-d. That coverage reaches Mr. Garcia's surviving discrimination claim, which arises from conduct in 2022 and 2023. Order at 12.

Accordingly, even if the Second Circuit held that Mr. Garcia was not Roc Nation's "employee" for wage-and-hour purposes, Roc Nation has not shown that his surviving NYCHRL discrimination claim would necessarily be extinguished. The Court had no need to reach that independent statutory basis, because it found a triable dispute over whether Roc Nation was Mr. Garcia's employer. Order at 45. That unresolved ground for continued liability means a favorable appeal would not remove from the case — which independently defeats the materially-advance prong.

The practical effect of certification would be the opposite of advancement. With trial set for June 7, 2027, the joint pretrial order due March 29, 2027, and a final pretrial conference on May 19, 2027, the parties are already preparing to try this case. Trial Scheduling Order at 1. Certification would suspend that schedule for the months required for the Second Circuit to decide whether to hear the appeal and, if it agreed, to resolve it — only to return the case to the same trial against the Pete Defendants. That is delay, not efficiency. Roc Nation's own concession

underscores the point—it acknowledges that Mr. Garcia's employment status with the Pete Defendants "[is] to be determined at trial." Def's MOL at 7.

**V. <u>Roc Nation Cannot Justify a Stay Of This Trial-Ready Action</u>**

Roc Nation's fallback request for a stay fails independently. By statute, a § 1292(b) application "shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292. A stay is therefore discretionary and, as the proponent, Roc Nation "bears the burden of establishing its need." *Carroll*, 687 F.Supp.3d at 399.

Courts in this Circuit weigh four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 400 (internal citations omitted). "The first two questions — addressing likely success and irreparable harm to the movant — are the most salient concerns." *Ferring B.V. v. Allergan, Inc.*, 343 F.Supp.3d 284 (S.D.N.Y. 2018) (quoting *Sutherland v. Ernst & Young LLP*, 856 F.Supp.2d 638, 640 (S.D.N.Y. 2012). Roc Nation cannot satisfy them.

As to likelihood of success, and for the reasons set out above, Roc Nation cannot make a strong showing — or even raise a serious question — that it will succeed in obtaining leave to appeal, let alone in reversing a fact-bound denial of summary judgment. A stay motion built on an insupportable certification request necessarily fails the most salient factor.

As to irreparable harm, the only harm Roc Nation identifies is having to participate in a trial. But litigation burden is not irreparable injury. Where "the only purported harm" a movant "reasonably may claim . . . would be having to stand trial," that showing does not satisfy the

irreparable-harm requirement, particularly in a case where discovery is complete and trial is near. *Carroll*, 687 F.Supp.3d at 402. That description fits this case precisely: summary judgment has been decided and the Court has set trial for June 7, 2027. Trial Scheduling Order at 1. Roc Nation's asserted harm is the ordinary burden every litigant bears.

Finally, a stay would substantially prejudice Mr. Garcia and disserve the public interest. Delay of a case already set for trial injures the plaintiff and the public interest in the prompt resolution of disputes. *Carroll*, 687 F.Supp.3d at 402. Mr. Garcia has litigated this matter through the close of discovery, a fully briefed summary-judgment record, and now to the threshold of a scheduled trial; a stay would postpone the June 7, 2027 trial date and further delay his day in court on wage claims for work performed years ago. Trial Scheduling Order at 1.

The equities that supported a stay in cases like *Ferring* — where a genuinely "case-dispositive issue" was pending and a stay would prolong the matter only "a few months" without harming the opposing party (*Ferring B.V.*, 343 F.Supp.3d at 291) — are absent here, where the appeal would not dispose of the case and the delay would fall on a plaintiff whose trial is already on the Court's calendar. On this record, the balance of harms tips decidedly against a stay.

## **CONCLUSION**

This Court has already given Roc Nation's joint-employer arguments the full and careful consideration they were due and explained in detail why they raise questions for a jury rather than answers for an appellate court. Roc Nation's motion offers no controlling question of law, no substantial ground for difference of opinion, and no path to a faster resolution of a case already set for trial.

For the foregoing reasons, Plaintiff Emilio Garcia respectfully requests that the Court deny Roc Nation's motion to certify the August 7, 2026 Order for interlocutory appeal and deny its

request to stay this litigation and grant such other and further relief as the Court deems just and proper.

Dated: October 9, 2026
Purchase, New York

Respectfully submitted,

FJ LAW

By: */s/ Joseph Jeziorkowski*
Joseph Jeziorkowski, Esq.
Daniel Folchetti, Esq.
*Attorneys for Plaintiff*
*Emilio Garcia*
2975 Westchester Ave, Suite 418
Purchase, New York 10577
(914) 730-2422
joe@fjlglaw.com
dfolchetti@fjlglaw.com

WEST COAST TRIAL LAWYERS APLC

By: */s/ Ronald L. Zambrano*
Ronald L. Zambrano, Esq. *(pro hac vice)*
*Attorneys for Plaintiff*
*Emilio Garcia*
1147 South Hope Street
Los Angeles, CA 90015
Tel.: (213) 927-3700
ron@westcoasttriallawyers.com

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Joseph Jeziorkowski, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1 and Rule 3(A) of Judge Gregory H. Woods' Individual Practices in Civil Cases (the "Individual Rules"), that the annexed Memorandum of Law in Opposition was prepared using Microsoft Word and the document contains 5,854 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c) and Rule 3(A) of Judge Gregory H. Woods' Individual Rules.

I certify the forgoing statements are true and correct. Executed on this 9th day of October, 2026 in Purchase, New York.

By: *_/s/ Joseph Jeziorkowski_*
Joseph Jeziorkowski, Esq.